# EXHIBIT 1

Cause No. CR-0956-03-B

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 93rd JUDICIAL DISTRICT |
| | § | |
| JUAN RAUL NAVARRO RAMIREZ | § | HIDALGO COUNTY, TEXAS |

## FUNDING MOTION FOR MITIGATION SPECIALIST

FILED
___ O'CLOCK ___ M

MAY 2 4 2004

OMAR GUERRERO, CLERK
District Court, Hidalgo County
_____ Deputy

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the indigent Defendant, **JUAN RAUL NAVARRO RAMIREZ**, by counsel, and pursuant to Tex. R. Crim. P. Art. 26.05(a) and 26.052(g), the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Sections 10, 13 & 19 of Article I of the Texas Constitution and other authority cited herein, moves this Court to enter a finding that there is a reasonable necessity for expert assistance and funding in support of the Defendant's right to defend against the penalty of death sought by the State of Texas. In support thereof, this Defendant would show.

I.

(a) Juan Raul Navarro Ramirez has been indicted by the Hidalgo County Grand Jury for Capital Murder. The State is seeking the death penalty. The accused's background, record and the circumstances of the offense, including his general mental status, prior to and at the time of the offense, will be significant factors at trial and relevant to issues that will be decided by the jury.

(b) Expert assistance will be necessary to prepare and present this evidence in Juan Raul Navarro Ramirez's defense and to mitigate against the imposition of the death penalty.

243

(c) This Court has determined that the Defendant is indigent. His counsel is unable to retain any expert assistance due to Juan Raul Navarro Ramirez's indigent status.

II

(a) The funding that is requested will provide Counsel with essential tools to defend against the indictment returned and the penalty sought by the State of Texas. The Defendant is entitled to such expert assistance upon a threshold showing that the assistance sought is relevant to a significant factor at trial. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087 (1985). This holding of the U.S. Supreme Court has been followed by the Texas Court of Criminal Appeals. *De Freece v. State,* 848 S.W.2d 150 (Tex.Crim. App.1993).

Appointment for expert assistance should be made regardless of the expert's field of expertise as there is no principled way to distinguish between psychiatric and non-psychiatric experts. The denial of the appointment of an expert under *Ake* amounts to "structural error which cannot be evaluated for harm. *Rey v. State,* 897 S.W.2d 333 (Tex. Crim. App. 1995).

The failure to grant funding for this assistance will call into question the fundamental fairness of the Defendant's trial, his right to confront and cross-examine witnesses and will deny him his 6th Amendment right to the effective assistance of this counsel.

(b) Counsel would be ineffective for failing to adequately investigate and present mitigating evidence. *Williams (Terry) v. Taylor,* 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000). Counsel's strategic choices concerning what mitigating evidence to present at trial must be informed choices. *Strickland v. Washington,* 466 U.S. 668 (1984) and in

2

*Wiggins v. Smith*, 509 U.S. _____ (2003) where a trial judge was quoted in the Wiggins state habeas proceeding held in 1994 as saying "[n]ot to do a social history, at least to see what you have got, to me is absolute error. I would be flabbergasted if the Court of Appeals said anything else". The United States Supreme Court has agreed.

(c) *The American Bar Association's Guidelines in Death Penalty Representation (ABA Guidelines)* provide in part;

> Counsel should conduct independent investigations relating to
> the guilt/innocence phase and the penalty phase of a capital trial.
> Both investigations should begin immediately upon counsel's
> entry into the case and should be pursued expeditiously.
>
> *Guideline* 11.4.1(A) "Investigation"

Just as a thorough guilt/innocence investigation is necessary for proper capital representation, so too is a complete mitigation investigation required. The investigation for preparation of the sentencing phase should be conducted regardless of any initial assertion by the client that mitigation is not to be offered. This investigation should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor. *Guideline* 11.4.1(B) "Investigation"

Without the tools necessary for effective assistance of counsel, defendant could not announce that he is ready to proceed when this case is called for trial.

### III

(1) Counsel moves the Court for funding to hire a mitigation specialist. A mitigation specialist is also an indispensable member of the defense team throughout all

3

245

capital proceedings. Mitigation specialists possess clinical and information-gathering skills and training that most lawyers simply do not have. Dwight H. Sullivan et al, "Raising the Bar: Mitigation Specialists in Military Capital Litigation", 12 *Civ. Rts. L.J.* 199, 206-11 (2002) and American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Revised Edition*, February, 2003 at 33. Perhaps most critically, having a qualified mitigation specialist assigned to every capital case as an integral part of the defense team insures that the presentation to be made at the penalty phase is integrated into the overall preparation of the case rather than being hurriedly thrown together by defense counsel still in shock at the guilty verdict. See Vivian Berger, "The Chiropractor as Brains Surgeon: Defense Lawyering in Capital Cases", 18 *N.Y.U Rev. Law & Soc. Change* 245,250 (1990/1991) " The mitigation specialist will:

(a) investigate Juan Raul Navarro Ramirez's background, assess and evaluate the dynamics of his family;

(b) obtain necessary releases for securing confidential records relating to any of the relevant histories;

(c) identify, obtain and evaluate all of those records that will establish and describe Juan Raul Navarro Ramirez's contact with public and private institutions prior to the time of trial;

(d) assist counsel in locating, documenting and obtaining any evidence that would bear on the personal moral culpability of the defendant or would reduce his moral blameworthiness in the eyes of a jury;

4

246

(e) assist counsel in the preparation and presentation of the mitigation evidence that will be presented to the jury at trial so that jurors will have the information needed to determine if a life verdict should be returned.

(2) The evidence and records the mitigation investigator will collect and that are relevant to the sentencing phase of the trial will consist of:

(a) MENTAL AND PHYSICAL HEALTH: history of mental or physical illness or injury, alcohol and drug use, birth trauma, including fetal alcohol or drug syndrome, and developmental delays;

(b) EDUCATIONAL HISTORY: achievement, performance and behavior, special education needs, cognitive limitations, and learning disability;

(c) MILITARY HISTORY: including type and length of service, conduct while in service, special training and conditions of discharge;

(d) EMPLOYMENT: Employment and training history, including skills, performance and barriers to employability;

(e) FAMILY AND SOCIAL HISTORY: (i) physical, sexual or emotional abuse; (ii) prior adult and juvenile records; (iii) prior correctional experience including conduct in the institution and clinical services; (iv) religious and cultural influences; (v) verification, explanation and expansion of material through contact with collateral sources.

The evidence that is to be collected by the mitigation investigator is made relevant by C.C.P. 37.071 (2)(e)(1) & (f)(3) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) and *Hitchock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

5

847

IV.

(1) In order to accomplish the required mitigation investigation, the mitigation specialists should have the following credentials and abilities:

(a) A social worker with a Masters Degree in Social Work and licensed by the State of Texas (LMSW);

(b) experience in working with those with mental health problems,

(c) the ability to obtain a psychological/social history from the accused, or supplement one that has already been prepared in anticipation of and in support of this funding request;

(d) perform the activities that are describe in III above.

(2) Attached is an affidavit of Ms. Gilda Bowen, LMSW, a licensed social worker with a Master's Degree in her field.

(3) Ms. Bowen is prepared to immediately complete an initial psychological and social history which could raise issues related to the mental health of the accused, the offense, his character, background and record.

These issues, and others that are raised during the course of her investigation, will be developed for presentation to the jury as a part of the defendant's penalty phase mitigation. She will also assist counsel in determining what additional experts will be needed as essential tools in the presentation of evidence at trial.

V

(1) Attached is an estimate by Ms. Bowen of the cost to conduct the initial phase of her mitigation investigation. Her customary rate, which counsel has determined is a reasonable rate in this county for similar services required of someone with Ms. Bowen's qualifications, is $45.00 per

6

248

hour, plus out of pocket expenses as outlined in the attached estimate. The mitigation specialist anticipates that the initial mitigation investigation will require a minimum of 100 hours. Counsel seeks initial funding of $4,500.00.

(2) It is anticipated that additional funding will be needed for further investigation. Prior to the request for additional funding, counsel will inform the Court of the extent of the mitigation investigation performed to that time and an estimate of the hours that will be required to complete the investigation, preparation and implementation of the defense's mitigation plan.

(3) Prior to submitting any statement to the County Auditor for payment to Ms. Bowen, or for reimbursement of amounts advanced by counsel, counsel will review the work of Ms. Bowen to determine that the time devoted to the case was (i) reasonable and necessary and (ii) consistent with this Court's authorization.

## VI

1) This motion is made *ex parte* pursuant to Tex. C. Crim.P. Art. 26.052(f). It would be fundamentally unfair to require this indigent Defendant to divulge to the prosecution the nature of this motion for funding which will necessarily inform the State of defensive theories of mitigation. *Williams v. State*, 958 S.W. 2d 186 (Tex.Crim.App. 1997). If the undersigned counsel were retained by the accused, there would be no requirement that the State be notified of the retention of expert assistance. Accordingly, counsel moves that the Court's Order, finding that a threshold showing of necessity has been made, also contain the following language:

**THIS ORDER, AND THE DEFENDANT'S *EX PARTE* MOTION FOR FUNDING, SHALL BE SEALED IN THE RECORD AND PLACED IN AN ENVELOPE IN THE RECORD AND SHALL BE SEEN BY AND DISTRIBUTED TO DEFENSE COUNSEL AND THIS COURT ONLY.**

7

WHEREFORE PREMISES CONSIDERED, Movant prays that upon evidentiary hearing, this Court:

(1) Find that a threshold showing has been made that a mitigation specialist is an essential tool in the presentation of a defense against the indictment returned and the penalty sought;

(2) approve initial funding in the amount of $4,500.00 for 100 hours of Ms. Bowen's work, in addition to out of pocket expenses;

(3) Order that this motion and the Court's Order be sealed as prayed for herein; and

(4) that the Movant have such other and further relief as he may show himself to be justly entitled.

Respectfully Submitted,

**LAW OFFICE OF ALMA R. GARZA, P.C.**
**A PROFESSIONAL CORPORATION**
400 E. Cano
Edinburg, Texas 78539
(956) 383-8131 Telephone
(956) 383-6603 Facsimile
Argarzalaw2@aol.com

By: _____

Alma R. Garza
State Bar Number: 07727900

Before me, the undersigned authority on this day did personally appear Alma R. Garza who, after being duly sworn, stated upon his oath that the information contained in the foregoing motion was true and correct.

SWORN TO AND SUBSCRIBED before me by Alma R. Garza on May 24, 2004.

_____
Notary Public, State of Texas

8

250

## CERTIFICATE AS TO NON-SERVICE

I certify that this motion has been presented, *ex parte*, to the Court on May 24, 2004. A copy has not been furnished to counsel for the State.

Alma R. Garza

9

251

## AFFIDAVIT

**THE STATE OF TEXAS**
**COUNT OF HIDALGO**

BEFORE ME, the undersigned authority, a Notary Pubic in and for Hidalgo County, on this date personally appeared GILDA BOWEN who after being duly sworn, upon her oath and states:

My name is GILDA BOWEN (LMSW), I am prepared to immediately complete an initial psychological and social history which could raise issues related to the mental health of the accused, the offense, his character, background and record. These issues, and others that are raised during the course of my investigation, will be developed for presentation to the jury as a part of the Defendant's penalty phase mitigation. I will also assist counsel in determining what additional experts will be needed as essential tools in the presentation of evidence at trial.

_____
Gilda Bowen, Affiant

SWORN TO AND SUBSCRIBED BEFORE ME ON May 24, 2004.

NATALIA C PEÑA
NOTARY PUBLIC
State of Texas
Comm. Exp.05-09-2005

_____
Notary Public, State of Texas

252

# EXHIBIT 2

REPORTER'S RECORD
VOLUME 001 OF 001 VOLUME
TRIAL COURT CAUSE NO. CR-0956-03-B

THE STATE OF TEXAS            *     IN THE DISTRICT COURT OF
                             *
VS.                          *     93RD JUDICIAL DISTRICT
                             *
JUAN RAUL NAVARRO RAMIREZ     *     HIDALGO COUNTY, TEXAS
_____


PRETRIAL PROCEEDINGS


_____

On the 28th day of August, A.D., 2003, the

foregoing proceedings came on to be heard outside the

presence of a jury, in the above-entitled and enumerated

cause; and the following proceedings were had before the

Honorable Rodolfo Delgado, Judge Presiding, held in

Edinburg, Hidalgo County, Texas, USA;

     Proceedings reported by computerized integrated

courtroom realtime, stenotype machine; Reporter's Record

produced by computer-assisted transcription.

JACQUELINE INKS, Texas CSR #5162
Official Court Reporter - 93rd District Court
Hidalgo County courthouse
100 North Closner, Second Floor
Edinburg, Texas  78539 USA
956.318.2255

2

1                     A-P-P-E-A-R-A-N-C-E-S

2       MR. CREGG THOMPSON
        SBOT NO. 19898100
3       MS. ROXANNA SALINAS
        SBOT NO. 50511582
4       Assistant District Attorneys
        District Attorney's Office
5       Hidalgo County Courthouse
        100 N. Closner
6       Edinburg, Texas  78539
        Telephone:  956.318.2300
7       Facsimile:  956.318.2301

8            ATTORNEYS FOR THE STATE OF TEXAS

9


10      MS. ALMA R. GARZA
        SBOT NO. 07727900
11      Law Office of Alma R. Garza
        320 W. McIntyre, Ste. 3
12      Edinburg, Texas  78541-8715
        Telephone:  956.383.8131
13      Facsimile:  956.383.6603
        E-Mail:  argarzalaw@sbcglobal.net
14
             ATTORNEY FOR THE DEFENDANT
15

16

17

18

19

20

21

22

23

24

25

1                        VOLUME 1

2                   CHRONOLOGICAL INDEX

3   AUGUST 28, 2003                      PAGE    VOL

4   Appearances                           2      1

5   Case called                           4      1

6   Announcements                         4      1

7   Adjourn                               6      1

8   Certificate of Court Reporter         7      1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    AUGUST 28, 2003

2                      P-R-O-C-E-E-D-I-N-G-S

3              THE COURT:  Case No. CR-0956-03-B, *State of*

4    *Texas versus Juan Raul Ramirez Navarro.*

5              MS. GARZA:  Good afternoon, Your Honor.  Alma

6    Garza for the defendant.  My client's present, Your Honor.

7    Your Honor, we do have a couple of pretrials.  One would be

8    for appointment of co-counsel.  We have filed that, and

9    we're requesting Rolando Garza.

10             MR. GARZA:  Good afternoon, Your Honor.

11             THE COURT:  Okay.  Mr. Navarro -- is it

12   Navarro or Ramirez?

13             THE DEFENDANT:  Ramirez.

14             THE COURT:  That's your father's last name?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Okay.  The record reflects also

17   that your lawyer, Ms. Alma Garza, has been in court

18   throughout the previous proceedings of the co-defendants in

19   this case, and you've been here as well.  The State of Texas

20   has filed all the same motions in each of these cases, and

21   most of them are not ripe at this time.  What that means is

22   that they'll not be heard at this time as they are premature

23   due to the fact that discovery has not been completed in

24   this case and due to the complexity of this case.  Also,

25   your lawyer on your behalf has filed many of the same

1    motions that have been filed by the other lawyers in the

2    other cases.  Are there any of these that need to be

3    addressed by the Court at this time, Ms. Garza?

4                    MS. GARZA:  Your Honor, there was --

5                    THE COURT:  Other than the appointment of

6    co-counsel obviously.

7                    MS. GARZA:  Yes, Your Honor.  There was one

8    where I had asked for the appointment of an investigator.

9    You told me the same investigator as the other one.  We

10   believe that would be a conflict of interest because, you

11   know, informing the defense team, you know, if this

12   investigator investigates and, you know, has something in

13   favor of one, he might use it against my client, or vice

14   versa and that's why we're asking that we have an

15   independent investigator assigned to Mr. Ramirez' case.

16                    THE COURT:  Okay.  Both of your motions for

17   the appointment of additional counsel and also for the

18   appointment of an investigator are granted.  Your point's

19   well-taken.

20                    MS. GARZA:  Thank you, Your Honor.  As far as

21   evidence, I've consulted with the D.A. this morning -- with

22   Mr. Thompson this morning.  I believe he had a recorded

23   statement of my client, and he just got that from the P.D.

24   recently.  He'll be furnishing me a copy of that.  The

25   photographs are being made this morning.  He's making me

1  copies of that.  We've been reviewing the file, Judge, but

2  it is an extensive file.

3          THE COURT:  November 13th.

4          MS. GARZA:  Thank you, Your Honor.  There is

5  one other thing, Judge, from the D.A.  If he as any deals

6  with the co-defendants at this time, we're requesting that

7  he notify us.

8          MR. THOMPSON:  We have nothing to notify them

9  of, Your Honor.

10         THE COURT:  That's fine.

11         MS. GARZA:  Or at any time that they make a

12  deal with any of the co-defendants, that he notify me on

13  behalf of my client so that we will know, you know, what the

14  deal is and who the person is.

15         THE COURT:  You-all follow the rules.

16         MS. GARZA:  Thank you, Your Honor.

17         THE COURT:  Okay.  You're excused.

18         (Proceedings concluded.)

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF HIDALGO:

3                   CERTIFICATE OF COURT REPORTER

4        I, JACQUELINE INKS, Official Court Reporter in and for

5   the 93rd Judicial District Court of Hidalgo County, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13       I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16       I further certify that the total cost for the

17  preparation of this Reporter's Record is $35.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19       WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21        /s/ Jacqueline Inks_____
          JACQUELINE INKS, CSR
22        Official Court Reporter
          93rd District Court
23        100 N. Closner
          Edinburg, Texas 78539
24        (956) 318-2255
          Cert. No. 5162; Expires: 12/31/14

25

# EXHIBIT 3

```
1               REPORTER'S RECORD
             VOLUME 001 OF 001 VOLUME
2          TRIAL COURT CAUSE NO. CR-0956-03-B

3   THE STATE OF TEXAS        *    IN THE DISTRICT COURT OF
                              *
4   VS.                       *    93RD JUDICIAL DISTRICT
                              *
5   JUAN RAUL NAVARRO RAMIREZ    *    HIDALGO COUNTY, TEXAS
    _____

6

7

8                        ARRAIGNMENT

9

10

11

12  _____

13          On the 10th day of April, A.D., 2003, the

14  foregoing proceedings came on to be heard outside the

15  presence of a jury, in the above-entitled and enumerated

16  cause; and the following proceedings were had before the

17  Honorable Rodolfo Delgado, Judge Presiding, held in

18  Edinburg, Hidalgo County, Texas, USA;

19      Proceedings reported by computerized integrated

20  courtroom realtime, stenotype machine; Reporter's Record

21  produced by computer-assisted transcription.

22              JACQUELINE INKS, Texas CSR #5162
23       Official Court Reporter - 93rd District Court
                  Hidalgo County courthouse
24          100 North Closner, Second Floor
                Edinburg, Texas  78539 USA
25                   956.318.2255
```

2

1                          A-P-P-E-A-R-A-N-C-E-S

2        MR. CREGG THOMPSON
         SBOT NO. 19898100
3        MS. ROXANNA SALINAS
         SBOT NO. 50511582
4        Assistant District Attorneys
         District Attorney's Office
5        Hidalgo County Courthouse
         100 N. Closner
6        Edinburg, Texas  78539
         Telephone:  956.318.2300
7        Facsimile:  956.318.2301

8             ATTORNEYS FOR THE STATE OF TEXAS

9

10       MS. ALMA R. GARZA
         SBOT NO. 07727900
11       Law Office of Alma R. Garza
         320 W. McIntyre, Ste. 3
12       Edinburg, Texas  78541-8715
         Telephone:  956.383.8131
13       Facsimile:  956.383.6603
         E-Mail:  argarzalaw@sbcglobal.net
14
              ATTORNEY FOR THE DEFENDANT
15

16

17

18

19

20

21

22

23

24

25

1                          VOLUME 1

2                      CHRONOLOGICAL INDEX

3   APRIL 10, 2003                            PAGE     VOL

4   Appearances                                2       1

5   Case called                                4       1

6   Announcements                              4       1

7   Adjourn                                    8       1

8   Certificate of Court Reporter             9        1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    APRIL 10, 2003
2                    P-R-O-C-E-E-D-I-N-G-S
3              THE COURT:  CR-0956-03-B, State of Texas
4    versus Juan Raul Navarro Ramirez.
5              MS. GARZA:  Your Honor, we're present and
6    ready for arraignment this morning.
7              MR. THOMPSON:  State's ready.
8              THE COURT:  Mr. Ramirez, do you speak English?
9              THE DEFENDANT:  Yes, sir.
10             THE COURT:  Standing next to you is the
11   Honorable Alma Garza.  She was appointed by the Court to
12   represent you on the 31st day of January, 2003.  Are you
13   satisfied with the services and the advice of your
14   court-appointed attorney so far?
15             THE DEFENDANT:  Yes, sir.
16             THE COURT:  Okay.  You have been indicted by a
17   grand jury of Hidalgo County for the offense of capital
18   murder.  For this degree of felony, the punishment is either
19   life in the Institutional Division of the Texas Department
20   of Criminal Justice -- that is the penitentiary -- or the
21   death penalty.  Do you understand that?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  All right.  Now, you should have
24   received a copy of the indictment in this case.  I'm sure
25   that Ms. Garza has discussed it with you.  However, let the

1    record reflect that the Court is tendering to Ms. Garza your

2    copy of the indictment.

3              MS. GARZA:  Your Honor, for the record, I

4    received a copy of the indictment yesterday, and my client

5    had not received a copy of the indictment as of today.

6              THE COURT:  Okay.  Listen carefully.

7              Mr. Thompson, on behalf of the State of Texas,

8    arraign the Defendant.

9              MR. THOMPSON:  In the name and by the

10   authority of the State of Texas, the grand jury for the

11   County of Hidalgo, State of Texas, duly selected, impaneled,

12   sworn, charged and organized as such at the January term,

13   A.D., 2003, of the 275th Judicial District Court for said

14   county, upon their oaths present in and to said court at

15   said term that Juan Raul Navarro Ramirez, hereinafter styled

16   defendant, on or about the 5th day of January, A.D., 2003,

17   and before the presentment of this indictment in Hidalgo

18   County, Texas, did then and there intentionally and

19   knowingly cause the deaths of Jimmy Almendarez; Juan

20   Delgado, III; Jerry Eugene Hidalgo; Juan Delgado, Jr.; Ruben

21   Castillo; and Ray Hidalgo by shooting them with a firearm.

22   And said murders were committed during the same criminal

23   transaction.  Against the peace and dignity of the state.

24   Signed by the foreperson of the grand jury.

25              THE COURT:  To which the defendant pleads?

1          MS. GARZA:  Not guilty, Your Honor.  At this
2     time, Judge, we ask for pretrial and trial dates on this
3     case.
4          THE COURT:  That's fine.  I'm going to give
5     you an initial pretrial date of May 8th.  This being a
6     capital case, more than likely there will be further
7     requirement for other pretrial matters.  So, you'll receive
8     the actual trial date and other pretrial dates on May the
9     8th.  You have been in the county jail on a bond of $5
10    million per each of these deaths for a total of a $30
11    million bond.  Obviously, you've not made that.  Have you
12    ever been declared to be mentally ill or incompetent?
13         THE DEFENDANT:  No, sir.
14         THE COURT:  Are you now claiming to be
15    mentally ill or incompetent?
16         THE DEFENDANT:  No, sir.
17         THE COURT:  You are in the county jail, and so
18    you ought not be under the influence of any drugs, alcohol,
19    or medication.  Are you?
20         THE DEFENDANT:  No, sir.
21         THE COURT:  Okay.  Ms. Garza, May the 8th.
22    What else do you have?
23         MS. GARZA:  Your Honor, at this time, we'd
24    make an oral motion for -- asking the State to elect as to
25    punishment.  We will be filing that in writing, because I

1  think there are some requirements that if it is going to be

2  the death penalty, he is entitled to another attorney to,

3  you know, have two attorneys, that I have co-counsel.

4              THE COURT:  Before that announcement from the

5  State, let me ask you if you do find that your client's

6  competent to stand trial?

7              MS. GARZA:  I do, Your Honor.

8              THE COURT:  Has he assisted in his defense?

9              MS. GARZA:  Yes, he has, Your Honor.

10             THE COURT:  Mr. Thompson, what's the State

11  going to do?

12             MR. THOMPSON:  The State's going to seek the

13  death penalty in this case also, Your Honor.  Judge, the

14  defendant's legally entitled to two days of service of his

15  indictment before being arraigned.  We'd ask if the Court's

16  going to accept a written waiver of arraignment or if you'll

17  bring him back on another day to arraign him after service

18  with the indictment?

19             THE COURT:  We have a form here if you wish to

20  waive the two days.

21             Here you go, Ms. Garza.

22             MS. GARZA:  Judge, if they could remove his

23  gloves so he can sign this.

24             (Pause in proceedings.)

25             MS. GARZA:  For the record, we're tendering

8

1   the two-day waiver, Your Honor.

2                 THE COURT:  The record reflects that two days

3   for service of indictment before arraignment is waived.  The

4   record further reflects that -- is it Navarro or Ramirez?

5   What's your father's last name?

6                 THE DEFENDANT:  Ramirez.

7                 THE COURT:  Ramirez.  Mr. Ramirez has been

8   served with a copy of his indictment.  Pretrial, as I

9   stated, is May the 8th.

10                 Is that all you have, Ms. Garza?

11                 MS. GARZA:  That's all, Your Honor.  Thank

12   you.

13                 THE COURT:  All right.  Deputy, Thank you.

14   You can take him away.

15                 (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF HIDALGO:

3              CERTIFICATE OF COURT REPORTER

4      I, JACQUELINE INKS, Official Court Reporter in and for

5   the 93rd Judicial District Court of Hidalgo County, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13     I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16     I further certify that the total cost for the

17  preparation of this Reporter's Record is $45.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19     WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21          /s/ Jacqueline Inks
            JACQUELINE INKS, CSR

22          Official Court Reporter
            93rd District Court

23          100 N. Closner
            Edinburg, Texas 78539

24          (956) 318-2255
            Cert. No. 5162; Expires: 12/31/14

25

# EXHIBIT 4

1            *REPORTER'S RECORD*
             *VOLUME 001 OF 001 VOLUME*
2            *TRIAL COURT CAUSE NO. CR-0956-03-B*

3    *THE STATE OF TEXAS        *   IN THE DISTRICT COURT OF*
                               *
4    *VS.                       *   93RD JUDICIAL DISTRICT*
                               *
5    *JUAN RAUL NAVARRO RAMIREZ   *   HIDALGO COUNTY, TEXAS*
     _____

6

7

8                      *PRETRIAL PROCEEDINGS*

9

10

11

12   _____

13          *On the 13th day of November, A.D., 2003, the*

14   *foregoing proceedings came on to be heard outside the*

15   *presence of a jury, in the above-entitled and enumerated*

16   *cause; and the following proceedings were had before the*

17   *Honorable Rodolfo Delgado, Judge Presiding, held in*

18   *Edinburg, Hidalgo County, Texas, USA;*

19      *Proceedings reported by computerized integrated*

20   *courtroom realtime, stenotype machine; Reporter's Record*

21   *produced by computer-assisted transcription.*

22
                  *JACQUELINE INKS, Texas CSR #5162*
23        *Official Court Reporter - 93rd District Court*
                     *Hidalgo County courthouse*
24            *100 North Closner, Second Floor*
                   *Edinburg, Texas  78539 USA*
25                      *956.318.2255*

2

1                        A-P-P-E-A-R-A-N-C-E-S

2       MR. CREGG THOMPSON
        SBOT NO. 19898100
3       MS. ROXANNA SALINAS
        SBOT NO. 50511582
4       Assistant District Attorneys
        District Attorney's Office
5       Hidalgo County Courthouse
        100 N. Closner
6       Edinburg, Texas  78539
        Telephone:  956.318.2300
7       Facsimile:  956.318.2301

8            ATTORNEYS FOR THE STATE OF TEXAS

9

        MS. ALMA R. GARZA
10      SBOT NO. 07727900
        Law Office of Alma R. Garza
11      320 W. McIntyre, Ste. 3
        Edinburg, Texas  78541-8715
12      Telephone:  956.383.8131
        Facsimile:  956.383.6603
13      E-Mail:  argarzalaw@sbcglobal.net

14           ATTORNEY FOR THE DEFENDANT

15

16

17

18

19

20

21

22

23

24

25

```
 1                          VOLUME 1

 2                    CHRONOLOGICAL INDEX

 3    NOVEMBER 13, 2003                    PAGE    VOL

 4    Appearances                           2      1

 5    Case called                           4      1

 6    Adjourn                              14      1

 7    Certificate of Court Reporter        15      1

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   NOVEMBER 13, 2003

2                    P-R-O-C-E-E-D-I-N-G-S

3              THE COURT:  Court calls Case No. CR-0956-03-B,

4   *State versus Juan Raul Ramirez.*

5              MS. GARZA:  Your Honor, we're present, me and

6   my co-counsel, Rolando Garza.  Your Honor, my client is

7   ready to go to trial, so he says.  I've advised him against

8   it because I believe our DNA is not back.

9              Is that correct, Mr. Thompson?

10             MR. THOMPSON:  I believe that's correct.

11             MS. GARZA:  It's still in Austin.  He says he

12  wants this case tried now, that he doesn't believe that

13  we're doing anything on his case.  I do have several

14  pretrial motions that I'd like to urge, and I've been

15  speaking to the D.A. on that.

16             THE COURT:  Okay.  Mr. Ramirez, go ahead and

17  have a seat.  You'll be in a different situation.

18             (Pause in proceedings.)

19             THE COURT:  CR-0956-03-B, *State versus Juan*

20  *Raul Navarro Ramirez.*

21             Mr. Ramirez, the Court has afforded you

22  counsel.  They are here and you heard what Ms. Garza told

23  me.  You do have the right to remain silent and not say

24  anything that would incriminate you.  If you choose to say

25  something, however -- because it appeared that you were

1  getting ready to tell the Court something -- understand that

2  it may not be in your best interest to do so.  But only you

3  know what it is you have to say.  So, you make that

4  determination.  Otherwise, your lawyers are here to speak in

5  your behalf.

6          THE DEFENDANT:  Yes, Your Honor, I would like

7  to ask the Court if I could get another counsel appointed to

8  me due to the fact that I don't feel that we're having the

9  right communication between us.  I feel there's a conflict

10 of interest if she keeps being in my case.

11         MS. GARZA:  Judge, the problem is he wants his

12 case tried now.  Like I told him, that's ineffective

13 assistance of counsel because the DNA is not back.  That may

14 be in his favor when the DNA comes back.  And it doesn't

15 matter if I try the case or if anyone else tries the case.

16 It's going to be the same problem.  It's ineffective

17 assistance of counsel to try the case without all the

18 evidence being reviewed.

19         THE COURT:  Well, Mr. Ramirez, I certainly

20 tend to agree with Ms. Garza with respect to that issue.

21 Now, when you mentioned the conflict of interest, I believe

22 that if Ms. Garza was aware of any conflict, for example,

23 that she would be related to any of the witnesses, she

24 herself would make the motion to be withdrawn from this

25 case.  If she was related to any of the victims in this

1    case, she herself would make the motion to withdraw from

2    this case and it would be looked upon favorably by this

3    Court.  So, I'm not sure what you mean by "conflict of

4    interest" in this scenario.

5                    THE DEFENDANT:  I feel that she's not going to

6    be able to work to her fullest on my case due to the fact

7    that we don't see each other eye to eye.  So, I would

8    appreciate it if I could get another appointed -- another

9    counsel.

10                   THE COURT:  I don't know what I'll do,

11   Mr. Ramirez.  I'll certainly consider your request.  I have

12   to consider what happens if you don't connect with the next

13   lawyer, if there's a next lawyer.  What if it's not

14   Ms. Garza that's failing to connect but it's you?  Then at

15   some point, it would be conceivable that one could go

16   through a good many of the Hidalgo County bar and yet you're

17   not able to connect with your lawyer, but I'll certainly

18   consider your request.  Do you have anything else?

19                   THE DEFENDANT:  No.  I appreciate it, Your

20   Honor, if you would grant me that.

21                   THE COURT:  Now, see, what you're telling me

22   about you and Ms. Garza having a personality conflict, maybe

23   that's what you meant?

24                   THE DEFENDANT:  I just don't agree with

25   whatever she has to say.

1           THE COURT:  Well --

2           MS. GARZA:  The problem is he wants to try his

3  case now, right now.

4           THE DEFENDANT:  The problem is that I feel

5  there's something going on here, something wrong here; and I

6  just want her to open up to me.  I want her to come up

7  straight.  That's it.  I want -- I want justice.  I don't

8  want no one covering up for someone else.

9           THE COURT:  Well, the lawyers -- both the

10  lawyers for the State and the lawyers for the defense,

11  they're the ones that know about what evidence is out there.

12  They're the ones that know who's saying what, who did what,

13  who saw what.  And the Court is only dealing with the law at

14  this time and with some issues of discovery which

15  Ms. Garza's already pointed out create a problem because all

16  of the evidence is not yet in.  Now, it should be in.

17  There's been sufficient time in my belief.  But these are

18  the most serious of cases, certainly for you and for the

19  victims and the family of the victims.

20           So, when it's the most serious of cases, yes,

21  the wheels of justice do move slower, because there's not

22  going to be a rush to justice.  There's going to be justice

23  consistent with due process.  And that's what is my belief

24  that Ms. Garza's trying to afford you.  Now, you may

25  disagree with that; and that is your right as well.

1   However, it may not be in your best interest to disagree.

2   But one thing is a matter of having a conflict of

3   personalities with your attorney; another one is a rush to

4   justice, and it is my belief that that's not in your best

5   interest.  So, as far as the Court's scheduling is

6   concerned, it is your case that will, likewise, be set for

7   pretrial on January 29th, 2004.  And I will consider what

8   you've requested as far as Ms. Garza's continued work on

9   your case.

10                  THE DEFENDANT:  I appreciate it, Your Honor.

11                  THE COURT:  All right.

12                  MS. GARZA:  Judge, do we have any setting for

13  trial any time soon?

14                  THE COURT:  You'll get the trial setting on

15  January 29th once we deal with all the pretrial issues.

16  Hopefully, I will deal with these pretrial issues, make

17  dispositive rulings; and then that tells you how much time

18  you'll need for your case, what the State's going to do, and

19  go forward.  To set a case right now without these

20  dispositive rulings I don't think would be in anyone's best

21  interest.

22                  MS. GARZA:  Judge, as far as pretrials, one of

23  the things that we needed to know is when does the State

24  anticipate the DNA evidence coming in from Austin?

25                  THE COURT:  The reason that I've given them

1    more than 60 days, allowing for some time off during the

2    holidays, is so that that be the deadline for the discovery

3    to be concluded.

4                    MS. GARZA:  Does that mean the DNA needs to be

5    in by then?

6                    THE COURT:  Yes.

7                    MR. GARZA:  By the 29th of January?

8                    THE COURT:  Yes.

9                    MS. GARZA:  Okay.  One of my other motions

10   that I filed will be called the reveal the deal motion.  We

11   wanted to know if there's any kind of deals he's made with

12   the co-defendants as of today's date.

13                   MR. THOMPSON:  And we haven't, Your Honor.  We

14   haven't made any deals with the co-defendants as of today.

15                   THE COURT:  Ms. Garza, now you know; and,

16   Mr. Ramirez, now you know.

17                   MS. GARZA:  And the other one was on a motion

18   for discovery.  I think I've marked your file as to the

19   order that needs to be signed in case you decide to grant

20   that particular motion.  And that's the motion to -- for us

21   to have all the convictions -- prior convictions of all the

22   co-defendants and state's witnesses.

23                   MR. THOMPSON:  I'd be willing to provide that

24   to them before any of the witnesses testify, Your Honor.  We

25   have 223 witnesses listed, Your Honor, plus some 14

1    co-defendants.  For us to do -- to go through all that,

2    record check, fishing expedition, we don't think that's the

3    appropriate ruling at this time.

4             MR. GARZA:  Well, Judge, if I don't know what

5    kind of convictions these people have, you know, how can I

6    prepare to cross-examine them?  I'd like to be able to go to

7    the D.A.'s file and look at the file and find out, you know,

8    whether some of these people have prior convictions.  I need

9    to know so that I can investigate these particular witnesses

10    and know what I'm going to cross-examine them on.

11             MR. THOMPSON:  That's fine.  I don't think the

12    law requires that I provide her with a criminal history of

13    every witness that I have.  And she doesn't have the luxury

14    of going through and looking through the personal histories

15    of all the witnesses in our case file.

16             MR. GARZA:  Well, Judge, I think I do because

17    if there's a question as to their veracity, you know, for

18    being truthful, they're going to testify and my client's

19    life is at stake.  I think I should be able to know that

20    these people are known for being liars, basically.

21             MR. THOMPSON:  She'll have to go out and look

22    at their reputations in the community.  But as far as my

23    providing her with a criminal history of 223 witnesses that

24    are listed in my file, the co-defendants, the defense

25    attorneys, all their family members, you know, the

1    courthouse staff, I don't think that that's appropriate at

2    this time to make us do that, especially if, in fact,

3    they've complained about the statement of accused in this

4    case.  They've said that they haven't completed discovery in

5    this case.

6               THE COURT:  You tabbed two places.

7               MR. GARZA:  One is the motion.  The second one

8    is the order, Judge.

9               THE COURT:  Okay.  So, you're only dealing

10    with one issue, the same one?

11               MR. GARZA:  Right.  Judge, if these people

12    have like theft charges, fraud charges, those kind of

13    charges, I think that goes to the veracity of the

14    individual's testimony on the witness stand.

15               THE COURT:  It may very well, and I may very

16    well give you a ruling, but you need to be more specific,

17    not as to all the 200 and -- well, however many it is.

18               MR. GARZA:  The ones that are going to

19    testify.

20               THE COURT:  Well, do you really need the

21    criminal record of one of the police officers?  It would be

22    a stretch that they would somehow make it to the police

23    department without having gone through an extensive

24    background check.  Mr. Thompson also tells me about court

25    staff, investigators and whatnot.  If there's people that

1    are lay witnesses, fact witnesses, and you tell me that this

2    person, he is crucial because of something that you suspect,

3    I'll certainly entertain your motion.

4                  MR. GARZA:  Okay.  If it's just lay witnesses

5    other than, you know, officers or, you know, people that --

6    or investigators.

7                  THE COURT:  Your motion would be relevant

8    certainly to some of these witnesses -- I can see that --

9    and greatly burdensome on the state and largely irrelevant

10   with respect to a great many of these witnesses.  So, I'm

11   saying just tailor your motion for the ones that you really

12   want --

13                 MR. GARZA:  Okay.

14                 THE COURT:  -- and I'll deal with those.

15                 MR. GARZA:  Okay.  My other motion has to do

16   with the motion for discovery, and I know there's several

17   witnesses or co-defendants that made recorded statements and

18   they're not in my client's file because they're in the other

19   individuals' files and we'd like to have access to those

20   recorded statements made by co-defendants, whether they be

21   audio or video.

22                 MR. THOMPSON:  And we've agreed that we'll

23   give them access to those and that we'll provide a

24   transcript or let them read a transcript as we move along in

25   the case.

```
 1                 MS. GARZA:  Okay.  Then the only other
 2   motion --
 3                 THE COURT:  Are you talking about motion for
 4   grand jury transcripts?  That's the one I found.
 5                 MR. GARZA:  No.  Just your standard motion for
 6   discovery.  Also, my client made an oral statement, and they
 7   did give us a copy of that oral statement.  The tapes are
 8   inaudible.  I can't make out hardly anything that's being
 9   said.  I talked to Mr. Thompson about it and he's agreed to
10   give us a copy of that transcription.
11                 MR. THOMPSON:  We'll make a transcription and
12   provide another copy of what we say is on that tape.
13                 THE COURT:  Right.  With respect to the second
14   motion for discovery that Ms. Garza's bringing up, I can't
15   find it.  You're not objecting --
16                 MR. THOMPSON:  We have it on the record what
17   we've agreed to and we'll go back and tailor an order to the
18   Court if that's what's best.
19                 THE COURT:  Okay.  That's fine.
20                 MR. GARZA:  Okay.  How many days for them to
21   transcribe?
22                 MR. THOMPSON:  Judge, if you could give us to
23   the 29th of January, that would complete our discovery.
24   And, again, we have the holidays coming up.  Somebody's
25   going to have to sit down and listen to that.  That's going
```

14

1   to tie up the whole staff for however long.

2                   THE COURT:  Who's got next year's calendar?

3                   (Pause in proceedings.)

4                   THE COURT:  They've got to be transcribed by

5   the 16th of January.  That way it gives Ms. Garza time to

6   file an appropriate motion if need be.  Is that it?

7                   MS. GARZA:  Yes.  I'll get you orders on all

8   of those for your signature, and I'll send them to the

9   D.A.'s office first.

10                  (Proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF HIDALGO:

3                    CERTIFICATE OF COURT REPORTER

4        I, JACQUELINE INKS, Official Court Reporter in and for

5   the 93rd Judicial District Court of Hidalgo County, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13       I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16       I further certify that the total cost for the

17  preparation of this Reporter's Record is $75.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19       WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21                    /s/ Jacqueline Inks
                     JACQUELINE INKS, CSR
22                   Official Court Reporter
                     93rd District Court
23                   100 N. Closner
                     Edinburg, Texas 78539
24                   (956) 318-2255
                     Cert. No. 5162; Expires: 12/31/14
25

# EXHIBIT 5

*REPORTER'S RECORD*
*VOLUME 001 OF 001 VOLUME*
*TRIAL COURT CAUSE NO. CR-0956-03-G*

*THE STATE OF TEXAS          *     IN THE DISTRICT COURT OF*
                            *
*VS.                         *     93RD JUDICIAL DISTRICT*
                            *
*JUAN RAUL NAVARRO RAMIREZ    *     HIDALGO COUNTY, TEXAS*
_____

*PRETRIAL PROCEEDINGS*

_____

   *On the 15th day of April, A.D., 2004, the*

*foregoing proceedings came on to be heard outside the*

*presence of a jury, in the above-entitled and enumerated*

*cause; and the following proceedings were had before the*

*Honorable Rodolfo Delgado, Judge Presiding, held in*

*Edinburg, Hidalgo County, Texas, USA;*

   *Proceedings reported by computerized integrated*

*courtroom realtime, stenotype machine; Reporter's Record*

*produced by computer-assisted transcription.*

*JACQUELINE INKS, Texas CSR #5162*
*Official Court Reporter - 93rd District Court*
*Hidalgo County courthouse*
*100 North Closner, Second Floor*
*Edinburg, Texas  78539 USA*
*956.318.2255*

2

1                    *A-P-P-E-A-R-A-N-C-E-S*

2        *MR. CREGG THOMPSON*
         *SBOT NO. 19898100*
3        *MS. ROXANNA SALINAS*
         *SBOT NO. 50511582*
4        *Assistant District Attorneys*
         *District Attorney's Office*
5        *Hidalgo County Courthouse*
         *100 N. Closner*
6        *Edinburg, Texas  78539*
         *Telephone:  956.318.2300*
7        *Facsimile:  956.318.2301*

8            *ATTORNEYS FOR THE STATE OF TEXAS*

9
         *MS. ALMA R. GARZA*
10       *SBOT NO. 07727900*
         *Law Office of Alma R. Garza*
11       *320 W. McIntyre, Ste. 3*
         *Edinburg, Texas  78541-8715*
12       *Telephone:  956.383.8131*
         *Facsimile:  956.383.6603*
13       *E-Mail:  argarzalaw@sbcglobal.net*

14           *ATTORNEY FOR THE DEFENDANT*

15

16

17

18

19

20

21

22

23

24

25

3

```
1                         VOLUME 1

2                     CHRONOLOGICAL INDEX

3   APRIL 14, 2004                      PAGE    VOL

4   Appearances                          2      1

5   Case called                          4      1

6   Announcements                        4      1

7   Adjourn                              7      1

8   Certificate of Court Reporter        8      1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    APRIL 15, 2004
2                        P-R-O-C-E-E-D-I-N-G-S
3                    THE COURT:  Case No. CR-0551-04-B, State of
4    Texas versus Juan Ramirez.
5                    MS. GARZA:  Your Honor, Alma Garza for
6    Mr. Ramirez.
7                    THE COURT:  And CR-0956-03-B, State of Texas
8    versus Juan Raul Ramirez.
9                    MS. GARZA:  Your Honor, we're here on that
10   case, too, Your Honor.
11                   MR. THOMPSON:  The State's present.
12                   THE COURT:  All right.  Your announcement?
13                   MR. THOMPSON:  I think this is just a
14   continuing pretrial and a status.  I think the defense filed
15   a motion for another appointment of expert.  I don't know if
16   that was ex parte or not, but --
17                   MS. GARZA:  Well, we're here on status, first
18   of all.  We will be filing a motion.  I'm trying to locate
19   mitigating specialists, Your Honor.  Those are not, you
20   know, easy to come by.  They're difficult to locate.  And
21   I'll be filing for one of those in this particular case.
22   I'd like a status hearing probably in about two weeks on
23   that.
24                   And the other thing is we're here on the DNA
25   results.  You had asked the D.A.'s office to have that or

1    try to see if they could have that by March 15th.  And

2    then on March 15th, you extended it to today.  And as of

3    today, Mr. Thompson has informed me that they don't have any

4    kind of results.

5            MR. THOMPSON:  We do have some results, but

6    they're not DNA results, Your Honor.  The evidence in

7    question was sent to Austin and Austin has done an analysis

8    and has come up with some samples that will be tested in the

9    future for, you know, biological constituents, or whatever

10    they do.  But we don't have DNA results to give the defense

11    or the Court at this time.

12            MS. GARZA:  Your Honor, if there are any

13    results that were determined at the DNA lab in McAllen, even

14    though they didn't turn out the way we expected, I think we

15    should have a copy of those results.  And when he refers to

16    future results, as far as the DNA testing up in Austin, I'm

17    not sure what he means by that.

18            MR. THOMPSON:  Judge, we'll make available to

19    defense any expert reports that we have regarding these

20    results.  They've -- they shipped a hood, a cap, some

21    clothes, and something else up there.  And then in Austin

22    they went through and said, This looks like a bloodstain,

23    this looks like this, this looks like that, and I have a

24    report that I can give Ms. Garza a copy of.  But it is going

25    to take more time.  If they're going to seek a mitigation

1   expert, it doesn't seem like it would be any harm to them if

2   we keep doing this.  Of course, if it doesn't turn out to be

3   his DNA, all the more to him.

4                   THE COURT:  There were some problems with the

5   McAllen lab supposedly.  Is that going to impact this case?

6                   MR. THOMPSON:  I think -- I think it's already

7   impacted it the most that it's going to.

8                   THE COURT:  Okay.

9                   MS. GARZA:  If they have results of any kind

10  of testing, I think we're entitled to those.

11                  THE COURT:  That's what you're going to give

12  her a copy of, correct?

13                  MR. THOMPSON:  Right.

14                  THE COURT:  You already have the results from

15  the McAllen lab?

16                  MR. THOMPSON:  No, it was never tested at the

17  McAllen lab.

18                  THE COURT:  Okay.

19                  MS. GARZA:  Is there a report that was made

20  from the McAllen lab as to anything that was submitted?  If

21  there's any kind of notations as to what they did or didn't

22  do on evidence submitted to them, we'd like any kind of

23  report.

24                  THE COURT:  That'll be ordered discoverable.

25  May 27th.  Will that be enough time?

1              MS. GARZA:  That will be fine, Judge.  Judge,

2   the reason I wanted a status hearing probably in a couple of

3   weeks is because by then hopefully I'll have a mitigating

4   specialist, you know, that I'm trying to locate.  You know,

5   I'd like an order signed as to that.

6              THE COURT:  About two weeks down the road,

7   Joel.

8              MR. ESPINOZA:  May 13th, Judge -- the 6th

9   or 13th.

10             THE COURT:  Okay.  The 13th.

11             MS. GARZA:  Thank you, Judge.

12             THE COURT:  All right.  Mr. Ramirez, you're

13  excused.

14             MR. THOMPSON:  May I be excused, Your Honor?

15             THE COURT:  Yes, sir.

16             (Proceedings concluded.)

17

18

19

20

21

22

23

24

25

1    THE STATE OF TEXAS

2    COUNTY OF HIDALGO:

3                    CERTIFICATE OF COURT REPORTER

4         I, JACQUELINE INKS, Official Court Reporter in and for

5    the 93rd Judicial District Court of Hidalgo County, State of

6    Texas, do hereby certify that the above and foregoing

7    contains a true and correct transcription of all portions of

8    evidence and other proceedings requested in writing by

9    counsel for the parties to be included in this volume of the

10   Reporter's Record, in the above-entitled and numbered cause,

11   all of which occurred in open court or in chambers and were

12   reported by me.

13        I further certify that this Reporter's Record of the

14   proceedings truly and correctly reflects the exhibits, if

15   any, admitted by the respective parties.

16        I further certify that the total cost for the

17   preparation of this Reporter's Record is $40.00 and will be

18   paid by THE COUNTY OF HIDALGO.

19        WITNESS MY OFFICIAL HAND on this the 16th day of

20   October, 2014.

21                      /s/ Jacqueline Inks
                        JACQUELINE INKS, CSR
22                      Official Court Reporter
                        93rd District Court
23                      100 N. Closner
                        Edinburg, Texas 78539
24                      (956) 318-2255
                        Cert. No. 5162; Expires: 12/31/14
25

EXHIBIT 6

*REPORTER'S RECORD*
*VOLUME 001 OF 001 VOLUME*
*TRIAL COURT CAUSE NO. CR-0956-03-G*

*THE STATE OF TEXAS          *     IN THE DISTRICT COURT OF*
*                            **
*VS.                         *    93RD JUDICIAL DISTRICT*
*                            **
*JUAN RAUL NAVARRO RAMIREZ    *    HIDALGO COUNTY, TEXAS*
_____



*PRETRIAL PROCEEDINGS*




_____

*On the 27th day of May, A.D., 2004, the*

*foregoing proceedings came on to be heard outside the*

*presence of a jury, in the above-entitled and enumerated*

*cause; and the following proceedings were had before the*

*Honorable Rodolfo Delgado, Judge Presiding, held in*

*Edinburg, Hidalgo County, Texas, USA;*

*Proceedings reported by computerized integrated*

*courtroom realtime, stenotype machine; Reporter's Record*

*produced by computer-assisted transcription.*

*JACQUELINE INKS, Texas CSR #5162*
*Official Court Reporter - 93rd District Court*
*Hidalgo County courthouse*
*100 North Closner, Second Floor*
*Edinburg, Texas  78539 USA*
*956.318.2255*

2

```
1                  A-P-P-E-A-R-A-N-C-E-S

2      MR. CREGG THOMPSON
       SBOT NO. 19898100
3      MS. ROXANNA SALINAS
       SBOT NO. 50511582
4      Assistant District Attorneys
       District Attorney's Office
5      Hidalgo County Courthouse
       100 N. Closner
6      Edinburg, Texas   78539
       Telephone:   956.318.2300
7      Facsimile:   956.318.2301

8          ATTORNEYS FOR THE STATE OF TEXAS

9

10     MS. ALMA R. GARZA
       SBOT NO. 07727900
11     Law Office of Alma R. Garza
       320 W. McIntyre, Ste. 3
12     Edinburg, Texas   78541-8715
       Telephone:   956.383.8131
13     Facsimile:   956.383.6603
       E-Mail:   argarzalaw@sbcglobal.net
14
           ATTORNEY FOR THE DEFENDANT
15

16

17

18

19

20

21

22

23

24

25
```

```
1                           VOLUME 1

2                       CHRONOLOGICAL INDEX

3    MAY 27, 2004                          PAGE    VOL

4    Appearances                            2       1

5    Case called                            4       1

6    Adjourn                                5       1

7    Certificate of Court Reporter          6       1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1    MAY 27, 2004

2                    P-R-O-C-E-E-D-I-N-G-S

3                    THE COURT:  Ms. Garza, let's take up your

4    other matter.  I want to get these prisoners out of here.

5                    MS. GARZA:  Your Honor, on that, we have

6    nothing to pretry today.

7                    THE COURT:  Name and case number?

8                    MS. GARZA:  And that particular case is

9    CR-0551-04-B, State versus Juan Raul Navarro Ramirez.

10                   MR. THOMPSON:  He has the other case,

11   CR-0956-03-B also, Your Honor.

12                   THE COURT:  Okay.

13                   MR. THOMPSON:  We've continued discovery.

14   We've tendered some expert reports to defense just this

15   morning, but we've given them copies.  We know they've had

16   the opportunity to look at that.  Our discovery's continuing

17   on.  If we could have a date in August at the end of the

18   summer, beginning of the fall, I think we may be about ready

19   to do this thing.

20                   THE COURT:  Okay.  I believe I've given

21   you-all an August setting.  Do you remember what it was?

22   Well, get it from Joel later on this afternoon.

23                   MR. THOMPSON:  The same date as the other

24   case?

25                   THE COURT:  Yes.

5

1                    MR. THOMPSON:  We'll do that.

2                    MS. GARZA:  We just received the latest

3     reports.

4                    THE COURT:  Discovery's ongoing.

5                    MS. GARZA:  Yes, Your Honor.

6                    THE COURT:  Deputy, thank you.

7                    (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF HIDALGO:

3                    CERTIFICATE OF COURT REPORTER

4        I, JACQUELINE INKS, Official Court Reporter in and for

5   the 93rd Judicial District Court of Hidalgo County, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13       I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16       I further certify that the total cost for the

17  preparation of this Reporter's Record is $30.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19       WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21                       /s/ Jacqueline Inks
                         JACQUELINE INKS, CSR
22                       Official Court Reporter
                         93rd District Court
23                       100 N. Closner
                         Edinburg, Texas 78539
24                       (956) 318-2255
                         Cert. No. 5162; Expires: 12/31/14

25

# EXHIBIT 7

REPORTER'S RECORD
VOLUME 001 OF 001 VOLUME
TRIAL COURT CAUSE NO. CR-0956-03-B

THE STATE OF TEXAS          *     IN THE DISTRICT COURT OF
                            *
VS.                         *     93RD JUDICIAL DISTRICT
                            *
JUAN RAUL NAVARRO RAMIREZ    *     HIDALGO COUNTY, TEXAS
_____


PRETRIAL PROCEEDINGS


_____

On the 12th day of August, A.D., 2004, the

foregoing proceedings came on to be heard outside the

presence of a jury, in the above-entitled and enumerated

cause; and the following proceedings were had before the

Honorable Rodolfo Delgado, Judge Presiding, held in

Edinburg, Hidalgo County, Texas, USA;

Proceedings reported by computerized integrated

courtroom realtime, stenotype machine; Reporter's Record

produced by computer-assisted transcription.

JACQUELINE INKS, Texas CSR #5162
Official Court Reporter - 93rd District Court
Hidalgo County courthouse
100 North Closner, Second Floor
Edinburg, Texas  78539 USA
956.318.2255

2

1                    A-P-P-E-A-R-A-N-C-E-S

2        MR. CREGG THOMPSON
         SBOT NO. 19898100
3        MS. ROXANNA SALINAS
         SBOT NO. 50511582
4        Assistant District Attorneys
         District Attorney's Office
5        Hidalgo County Courthouse
         100 N. Closner
6        Edinburg, Texas  78539
         Telephone:  956.318.2300
7        Facsimile:  956.318.2301

8            ATTORNEYS FOR THE STATE OF TEXAS

9
         MS. ALMA R. GARZA
10       SBOT NO. 07727900
         Law Office of Alma R. Garza
11       320 W. McIntyre, Ste. 3
         Edinburg, Texas  78541-8715
12       Telephone:  956.383.8131
         Facsimile:  956.383.6603
13       E-Mail:  argarzalaw@sbcglobal.net

14       MR. ROLANDO GARZA
         SBOT NO. 24004665
15       Attorney at Law
         310 W. University Drive
16       Edinburg, Texas  78539
         Telephone:  956.318.1102
17
             ATTORNEYS FOR THE DEFENDANT
18

19

20

21

22

23

24

25

3

1                        VOLUME 1

2                    CHRONOLOGICAL INDEX

3    AUGUST 12, 2004                      PAGE     VOL

4    Appearances                           2       1

5    Case called                           4       1

6    Adjourn                              20       1

7    Certificate of Court Reporter        21       1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    AUGUST 12, 2004

2                    P-R-O-C-E-E-D-I-N-G-S

3              THE COURT:  Ms. Garza, your client?

4              MR. THOMPSON:  Your Honor, this is on that

5    capital case.

6              THE COURT:  Correct.

7              MS. GARZA:  That's correct.

8              THE COURT:  CR-0551-04-B, State versus Juan

9    Raul Navarro Ramirez; and CR-0956-03-B, also State versus

10   Juan Raul Navarro Ramirez.  Let the record reflect that

11   defense counsel is present, as well as the prosecutor, as

12   well as the defendant.  Discovery issues?

13             MS. GARZA:  A little bit, Your Honor.  This is

14   a pretrial matter.  We're asking for a few things at this

15   point.  We're asking for -- I did not see a written

16   statement or a written affidavit on Roberto Cantu.  I

17   believe that there's a recorded statement and we would like

18   for that to be made available to us.  Whether it's

19   transcribed or not, you know, we need to listen to that.

20   That's not in our client's file.

21             THE COURT:  Cantu?  Did you say Cantu?

22             MS. GARZA:  Yes.  And for that matter, Your

23   Honor, any recorded statements of any of the other

24   co-defendants also.

25             THE COURT:  How's the district attorney's

1  office handling that, Mr. Thompson?

2              MR. THOMPSON:  They can listen to those

3  statements.  I wish they would tell me which ones they think

4  there are, but they can listen to those statements at our

5  office.

6              THE COURT:  Okay.  Do you-all have a room

7  whereby they can take their own equipment, or do you have

8  your own equipment that --

9              MR. THOMPSON:  We will go in there and sit in

10  the conference with them and play it on the tape recorder so

11  that they can hear it.

12              THE COURT:  Okay.  Does that satisfy the

13  defense?

14              MS. GARZA:  Yeah, I guess, Your Honor, at this

15  point.  Yes.

16              THE COURT:  Okay.

17              MS. GARZA:  The other thing we're asking --

18              THE COURT:  Do you give them copies of the

19  recording?

20              MR. THOMPSON:  No.  As they're witness

21  statements, they're not entitled to them until after the

22  witness testifies, but we'll allow them to listen to them

23  and take all their notes.  If it becomes an issue, then I

24  guess they can bring that matter up to the Court at the

25  appropriate time.

1          MS. GARZA:  Your Honor, and coming up to that,

2    there are a lot of affidavits from different witnesses.

3    Some are extensive.  We're -- I mean, we can sit there and

4    copy those while we are there at the D.A.'s office visiting.

5    I think last week we were there two or three days going

6    through those, co-counsel and I were.  One of the things we

7    were going to ask the Court is if we could just take a tape

8    recorder and record those statements, go back to our office

9    and transcribe them.  It's the same thing if we copy them

10   there in writing or if we record them and take them back to

11   our office and transcribe them except that we're at our

12   office, at our leisure transcribing them.  And we'd ask the

13   Court to allow us to do that.

14          THE COURT:  From a practical point, it becomes

15   a matter of defense counsel taking notes and not knowing how

16   long these tape-recordings may be.  Those notes could,

17   indeed, be voluminous because how do you go back to the

18   county jail and talk to your client and tell him, "Cantu

19   said this about you," if this case is ever going to be

20   resolved other than through a jury trial.  So, I do like

21   that idea.

22          MS. GARZA:  The problem is --

23          MR. THOMPSON:  I don't think -- it's a policy

24   matter that we should be passing out witness statements in

25   capital murder cases for them to take to their clients at

1    the county jail to pass around and see what witnesses out

2    there are saying.  I'm very uncomfortable with that.  As far

3    as them dictating the contents of our file into a dictaphone

4    and making a transcript after that, I think that -- that

5    doesn't serve any purpose -- you know, that's up to them if

6    they want to do that.  But generally what we do is allow

7    them to go and take notes of the contents of the file and

8    for them to, again, read out the contents of a file and put

9    it on a tape someplace.  We think it's the same thing as

10   giving them a copy of our file before our witnesses testify,

11   before any of those things that would be, you know, required

12   in the rules of evidence.

13              MS. GARZA:  Judge, when we go in there, we've

14   got about, I'd say, close to 50 different affidavits.  Some

15   of them are seven to eight pages long.  And I think instead

16   of sitting there and copying each one, one by one, we can

17   just put them in a recorder, take them to our office, and

18   when we get a chance, you know, we transcribe them.  Other

19   than that, we're going to be sitting at the D.A.'s office

20   for days at a time; and sometimes they're not available to

21   do that.  You know, we've sat with the secretary also, but

22   she doesn't always know where everything is.  That way we

23   can do that at our leisure in our office and take the time

24   that, when we are there, to do things like the recorded

25   statements that we have to listen to them.  You know, we're

1    running short on time.  It's an extensive file, Judge.

2    Other than that, we wouldn't ask for this.  I mean, most

3    other files contain, five, six, maybe ten affidavits at

4    most, which, you know, we can handle.  But the affidavits

5    are not as long as some of the affidavits in this particular

6    case.  Some of the witnesses or prospective witnesses are

7    people that gave affidavits, gave two or three affidavits

8    also; and that makes it more difficult to put the case

9    together.

10            MR. THOMPSON:  Your Honor, they're going to

11   have to read that file into a transcript, or they're going

12   to have to read it and take notes.  We're just saying as a

13   policy matter that you shouldn't -- we don't give copies of

14   our files to defense attorneys.  We could go through and

15   have the Court order us, as you see fit, to give -- allow

16   them access to read the file.  We provide them the

17   opportunity to come in and read the whole file without going

18   through hearings about, I want this statement or I want that

19   statement.  We think they can go in there and take their

20   notes without having to transcribe the whole State's file.

21            MS. GARZA:  I mean, we get to sit there and

22   you know, write out -- it's the same result at the end if we

23   go in and write out each affidavit or if we record it and

24   take it to our office and transcribe it.  It's going to be

25   the same result at the end, Judge.  That's why we're asking

1    that we be able to record those statements for our own use

2    so that when we go see our clients, we can, you know, talk

3    to them about everything that we have.

4                 MR. THOMPSON:  They can talk to their client

5    about everything that they have whether they record the

6    statements or not, Your Honor.  They shouldn't be writing

7    down word for word.  That's not what the policy is, and they

8    shouldn't need to anyway.

9                 MS. GARZA:  Well, Judge, I don't think that

10   the D.A.'s office should need to tell us how -- you know,

11   what we can write down or not write down or how we should

12   handle our cases.  I think we should be able to handle our

13   cases in the most practical manner, you know, that we can do

14   to resolve any issues that might come up.

15                MR. THOMPSON:  Your Honor, just to review,

16   Article 39 of the Code of Criminal Procedure that deals with

17   discovery says that they're not entitled to witness

18   statements until after the witness testifies.  And we're

19   saying, Hey, come in and look at all the statements that we

20   have and take notes on them so you can see what's up.  And

21   so that's why I'm telling her that she shouldn't be sitting

22   there writing them all down because then they can be in a

23   situation where we have to come back to you.

24                THE COURT:  Well, I don't -- I don't believe

25   that there's any authority for me to order at this juncture

1   that you actually be permitted to record the recordings that

2   the district attorney already has.  There are some

3   considerations out there with respect to actual voices and

4   what could be done with those.  So, note-taking will

5   continue to be permitted in the discovery process.

6              MS. GARZA:  Judge, at this time we're also

7   asking that if there's any deals with any of the

8   co-defendants, that the D.A.'s office let us know at this

9   date.

10             MR. THOMPSON:  There's no deals.

11             THE COURT:  Okay.

12             MS. GARZA:  Also, Judge, in reviewing the

13  evidence, there's a computer that was taken into -- as part

14  of the evidence.  We'd like to have access to that computer.

15  In reviewing the file, we found that they had only printed

16  out, or, you know, exited one letter out of that computer.

17  We'd like to know what else is in the computer and, if need

18  be, that we be allowed to hire an expert to go into the

19  computer and retrieve whatever may be in there that might be

20  exculpatory to our client.

21             MR. THOMPSON:  Judge, and I think that may be

22  an issue that we need to have a hearing about.  This

23  defendant's computer wasn't seized.  It was computers from

24  two co-defendants that were seized.  They were sent for

25  analysis to see if there was anything relevant to the case,

1   and they came up with whatever they came up with.  But there

2   may be volumes and volumes and volumes of other things on

3   those computers that become voluminous and they spend money

4   on an expert to look at that stuff that we don't even know

5   of.  Before we order something like that, we ought to see --

6   I think it's a fishing expedition to have --

7                    THE COURT:  What do you have?

8                    MR. THOMPSON:  The letters that we have are

9   like letters to prisoners and things like that.

10                   MS. GARZA:  There was one letter printed out

11  of there having to do with, you know, gangs, and things like

12  that.  And I'd like to know what else is in there.  I think

13  we should be allowed to look at all the evidence, Judge.

14  You know, what if it's exculpatory to my client, and the

15  least they should do is let us look at it.

16                   MR. THOMPSON:  Does she want me to produce the

17  hard drive and let her look at that, or does she want me to

18  pull out every piece of information that's in the computer

19  and provide it to her so that she can --

20                   THE COURT:  Well, my first question is what

21  all is in there that your expert or your analyst is going to

22  be able to find.  Obviously there could be stuff in there

23  about people's birthdays, people's automobile records, and

24  then a letter to some gang-related activity, which maybe

25  that would be relevant.  But at least if you know that it

1    has to do with automobiles, which has nothing to do with

2    gangs, just people's recordkeeping, you could make Ms. Garza

3    aware of that.  But, you know, I'm not a computer person at

4    all, and so I don't know about these computer experts.  And

5    maybe your expert was unable to break a certain code; and

6    what if there is something in that computer, which, yes, it

7    may be a fishing expedition, but there could be something

8    that some wizard would be able to find out about there, and

9    then we would all know about the assassination of Abraham

10   Lincoln, who really did it.

11            MR. THOMPSON:  You know, that's always a

12   possibility that that's what turns up after the defense

13   loses the computer.  But what I think Ms. Garza is saying is

14   what our expert came up with as being relevant in the case.

15   That's attached to the report.  As I say, my experience with

16   computers is that there could be, you know, advertisements

17   for Viagra and whatever, whatever, whatever.  We could go

18   into millions and millions and millions of documents and all

19   these kind of things that --

20            MS. GARZA:  Judge, that's if you go on AOL.

21   We don't want to go on AOL.  We want to know what's actually

22   in the hard drive as to what's been put into the computer,

23   whether it's in the trash bin or it's there on a disk or if

24   it's in the hard drive.  Whatever they have, we'd like to be

25   able to take a look at it.  For all we know, you know, they

1    might have a blueprint of what happened and we'd like access

2    to that.

3              THE COURT:  Well, I would order that the State

4    categorize for me what it is that you have found so I can at

5    least know what's in there and then rule accordingly.  Now,

6    whether I'm going to order that it be -- that the computer

7    itself, what's in there, that it be provided to you for you

8    to have an expert look at it.  I don't know that I'll go

9    there until such time as I at least know what it is that

10   they do have and what you have already been given in

11   discovery.

12             MS. GARZA:  Judge, we don't know how expert

13   their expert is.  There's hackers that are better than the

14   experts, and they could probably find more information than

15   an expert in the computer because they know how to break

16   codes, passwords, things like that.  That's what we're

17   looking for, Judge.

18             THE COURT:  And once I know at least what

19   they've been able to find, then I can rule accordingly.

20             MR. THOMPSON:  And, Judge, my understanding

21   from reading the lab reports is that they were asked to find

22   documents or evidence relevant to gang activity and to this

23   case.  And what they did is the lab people produced certain

24   documents or came up with certain documents that were

25   downloaded from the computer or whatever.  But they didn't

1    go through and say, We found 150 addresses, we found 230

2    documents dealing with shopping lists.  And they didn't

3    break it down what they found, We found this.  What they did

4    was they returned what they thought dealt with gang

5    activity.  So, I would have to go back and I would have to

6    say, Reexamine this and please break down for us what it is

7    that's on this computer.

8              THE COURT:  I'm not ordering you to do that

9    yet.  I'm just telling you to go back and see what it is

10   that you have, share that with Ms. Garza, and then you-all

11   come back to me.  That may answer some of your questions.

12   And even an expert may be able to deduce from what

13   Mr. Thompson provides you, that, in fact, there's nothing

14   else in there, and that ends that.  But if an expert could

15   tell you, Well, there's a possibility that there is

16   something else in there, then we go forward with this

17   argument.

18             MS. GARZA:  Well, Judge, my concern is that

19   there was only one letter that they came back with.  I can't

20   believe in a whole computer, the only thing that's in the

21   computer is one letter.  That doesn't make sense.

22             MR. THOMPSON:  And I'm not saying that there's

23   only one letter.  I'm saying that they screened it looking

24   for evidence of gang activity or evidence of the people

25   whose name we gave them -- and that was why that came

1  back -- rather than download a thousand documents that had

2  nothing to do with anything involved in the case.

3          MS. GARZA:  Well, it doesn't have anything to

4  do with the case, you know, if that's what they're saying,

5  why don't they let us look at it.  All we have to do is look

6  at it and go through it.

7          THE COURT:  Well, let me give you an example.

8  If their analysis for the State of Texas found subject

9  matter on dogs sand cats and worms and gangs, I at least

10  want them to be able to tell you, We found out about cats

11  and dogs and worms, but we didn't go after that any further.

12  That way you at least know, because it could be that they

13  found, dogs, cats, worms and gangs, and then left-handed

14  gangsters; and that may be something relevant if, in fact,

15  there is that.  So, I need to know what it is that you-all

16  are talking about before I can rule.  So, at least look at

17  that, see what you come to an agreement or disagreement

18  about, and then come back to me on that issue.

19          MR. GARZA:  Your Honor, if I may, I think at

20  this point what we'd like is to at least have access to the

21  computer so maybe we can go in there with a police officer

22  or someone and start looking through it ourselves.

23          THE COURT:  Well, I've already said that I'm

24  not going there yet until I know what it is that they do

25  have.

1          MR. THOMPSON:  And realize, Your Honor, this
2    isn't the defendant's computer.  This wasn't seized from
3    him.  This was seized from two other people.
4          THE COURT:  I got that.
5          MS. GARZA:  Who are the co-defendants who
6    they're alleging are some of the planners in this particular
7    offense.
8          THE COURT:  I got that, too.  If there's some
9    letter that talks about the planning of the offense and this
10   charge, well, clearly that may well be relevant and I'll
11   rule on that accordingly.  What else?
12         MS. GARZA:  We were requesting -- I think we
13   had talked about the booking video before.
14         MR. THOMPSON:  I believe I told Mr. Garza that
15   there was no video at the time that they were booked because
16   they were booked at --
17         MS. GARZA:  They were booked at Edinburg P.D.,
18   and I think on the report it says that there was a video; is
19   that correct?
20         MR. GARZA:  Your Honor, I'm not sure if the
21   report indicated there was a video or not.  But on the
22   booking report, I think a police officer even signed off on
23   one of them.
24         MR. THOMPSON:  We'll look into that again.  I
25   know that we've addressed the issue, but we'll look into

1    that again.  I don't know if there's a booking video.

2            THE COURT:  If there's a booking video, it

3    will be ordered produced.

4            MS. GARZA:  Judge, also since our last

5    pretrial, we're asking the D.A.'s office at this time if

6    there's any kind of Brady material, anything that they have

7    received since our last pretrial that they have not made

8    available to us, to tell us what they know, if they've

9    received anything.  I think he has passed one report to us

10   from the lab, an additional report since the last time.  But

11   if they received any kind of other reports, anything of any

12   sort...

13           THE COURT:  Have you?

14           MR. THOMPSON:  There's nothing that comes to

15   mind other than what we've already shown them, the lab

16   results on the DNA information.

17           MS. GARZA:  The only other thing would be

18   access to the physical evidence.  We need to go and review

19   that.  I know we set up one meeting before, but my

20   co-counsel had to be out of town on an appeal that he had to

21   do and so we didn't get together, Judge.

22           THE COURT:  Okay.  What do you want to look

23   at, clothing, guns, knives, what?

24           MS. GARZA:  Anything they have.

25           MR. THOMPSON:  There's a certain amount of

1    property, most of which wasn't analyzed.  It's at the

2    Edinburg Police Department.  Other property like weapons,

3    casings, and things of that nature are still at the DPS lab

4    in Austin.  They've been analyzed but they haven't -- we

5    haven't brought them down to merely look at them.  We can go

6    arrange a time any time to go look and see what's at

7    Edinburg P.D.

8                    But if they want to look at the guns, then

9    they'll have to be requested to bring them down ahead of

10   time and store them someplace and do all these things.  DNA,

11   bloody clothing, things of that nature would still be up in

12   the Austin laboratory.  That will be brought down at the

13   time of trial, Your Honor, and certainly they'll be able to

14   see those things ahead of trial, but --

15                    THE COURT:  Well, if you want me to order that

16   produced, I'll order it.  I'll give the State some time

17   because it will necessitate some time, the logistics of it

18   all.  I'll order it prior to the trial.  I don't believe it

19   would be fair to just let the counsel for defendant review

20   that immediately before trial; but if you want to do it 60

21   days before trial or you want to first go to Edinburg P.D.

22   and see what they have there by process of elimination, then

23   you can come back to me and say, Okay, Judge, now we really

24   want to go to Austin to see it over there, or we want them

25   to bring it back down to McAllen or Edinburg.  I'll at that

1    point then impose a deadline by which the State is required
2    to have it here locally.
3                    MS. GARZA:  Okay.
4                    THE COURT:  Is that it?
5                    MS. GARZA:  Judge, at this time, that's all we
6    have.  We'd ask for another pretrial to see where we are
7    along the way as far as what's been made available to us and
8    what else we're lacking as far as being able to review.
9                    THE COURT:  I want to see the lawyers next
10   week in my office, and we'll determine at that time a new
11   pretrial.  Because by then, I want Mr. Thompson to have
12   checked with Edinburg P.D. to see what it is that you'll be
13   able to get to over there.  And I'll impose a deadline next
14   week by when you go to Edinburg and see that stuff.  So, I
15   will see you-all on --
16                    THE COURT COORDINATOR:  Monday's the 16th,
17   and then we have criminal matters on the 19th.
18                    THE COURT:  I'll see you-all on the 19th at
19   1:30.
20                    MS. GARZA:  That's fine, Judge.
21                    MR. GARZA:  The 19th at 1:30?
22                    THE COURT:  Yes.
23                    MR. GARZA:  I have a Motion to Suppress in
24   Brownsville on that date in the morning, and I'm not sure --
25                    THE COURT:  That's fine.  It's just with the

1    Court in chambers.  So, Ms. Garza can be here.

2                  MR. GARZA:  Thank you, Your Honor.

3                  THE COURT:  All right.

4                  Deputy, thank you.  You may take him away.

5                  MS. GARZA:  Thank you.

6                  (Proceedings concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   THE STATE OF TEXAS

2   COUNTY OF HIDALGO:

3                    CERTIFICATE OF COURT REPORTER

4        I, JACQUELINE INKS, Official Court Reporter in and for

5   the 93rd Judicial District Court of Hidalgo County, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions of

8   evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13       I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16       I further certify that the total cost for the

17  preparation of this Reporter's Record is $105.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19       WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21               /s/ Jacqueline Inks_____
                 JACQUELINE INKS, CSR
22               Official Court Reporter
                 93rd District Court
23               100 N. Closner
                 Edinburg, Texas 78539
24               (956) 318-2255
                 Cert. No. 5162; Expires: 12/31/14

25

# EXHIBIT 8

*REPORTER'S RECORD*
*VOLUME 001 OF 001 VOLUME*
*TRIAL COURT CAUSE NO. CR-0956-03-G*

*THE STATE OF TEXAS          *     IN THE DISTRICT COURT OF*
                            *
*VS.                         *     93RD JUDICIAL DISTRICT*
                            *
*JUAN RAUL NAVARRO RAMIREZ    *     HIDALGO COUNTY, TEXAS*
_____

_____

*PRETRIAL PROCEEDINGS*

_____

On the 28th day of September, A.D., 2004, the

foregoing proceedings came on to be heard outside the

presence of a jury, in the above-entitled and enumerated

cause; and the following proceedings were had before the

Honorable Rodolfo Delgado, Judge Presiding, held in

Edinburg, Hidalgo County, Texas, USA;

Proceedings reported by computerized integrated

courtroom realtime, stenotype machine; Reporter's Record

produced by computer-assisted transcription.

*JACQUELINE INKS, Texas CSR #5162*
*Official Court Reporter - 93rd District Court*
*Hidalgo County courthouse*
*100 North Closner, Second Floor*
*Edinburg, Texas  78539 USA*
*956.318.2255*

1                    A-P-P-E-A-R-A-N-C-E-S

2       MR. CREGG THOMPSON
        SBOT NO. 19898100
3       MS. ROXANNA SALINAS
        SBOT NO. 50511582
4       Assistant District Attorneys
        District Attorney's Office
5       Hidalgo County Courthouse
        100 N. Closner
6       Edinburg, Texas  78539
        Telephone:  956.318.2300
7       Facsimile:  956.318.2301

8            ATTORNEYS FOR THE STATE OF TEXAS

9

        MS. ALMA R. GARZA
10      SBOT NO. 07727900
        Law Office of Alma R. Garza
11      320 W. McIntyre, Ste. 3
        Edinburg, Texas  78541-8715
12      Telephone:  956.383.8131
        Facsimile:  956.383.6603
13      E-Mail:  argarzalaw@sbcglobal.net

14

        MR. ROLANDO GARZA
15      SBOT NO. 24004665
        Attorney at Law
16      310 W. University Drive
        Edinburg, Texas  78539
17      Telephone:  956.318.1102

18           ATTORNEYS FOR THE DEFENDANT

19

20

21

22

23

24

25

3

```
 1                            VOLUME 1

 2                       CHRONOLOGICAL INDEX

 3     SEPTEMBER 28, 2004                    PAGE      VOL

 4     Appearances                            2         1

 5     Case called                            4         1

 6     Adjourn                                6         1

 7     Certificate of Court Reporter          7         1

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SEPTEMBER 28, 2004

2                        P-R-O-C-E-E-D-I-N-G-S

3                THE COURT:  CR-0551-04-B, State of Texas

4    versus Juan Raul Navarro Ramirez.

5                MR. THOMPSON:  State's present.

6                MS. GARZA:  Alma Garza for the defendant.

7                MR. GARZA:  And Rolando Garza for the

8    defendant, Your Honor.

9                THE COURT:  And also, CR-0956-03-B, State

10   versus Juan Raul Navarro Ramirez.  This case was set for

11   final pretrial today; is that correct -- or for a status?

12                MR. THOMPSON:  I believe it's a status

13   hearing, Your Honor.

14                THE COURT:  In the meanwhile, Mr. Ramirez,

15   there has been a development in your cases.  This Court was

16   assigned three of the cases arising out of this incident

17   which occurred in Edinburg, Hidalgo County, Texas, it is

18   alleged, wherein there are nine defendants altogether.

19                Is that correct?  Or is it six?

20                MR. THOMPSON:  There's six victims, Your

21   Honor.

22                THE COURT:  How many defendants?

23                MR. THOMPSON:  I believe there's ten.

24                THE COURT:  Ten defendants.  Okay.  At any

25   rate, pursuant to the filing system at the district clerk's

1    office, the 93rd Court ended up with three of these cases,

2    pursuant to the local rules and the agreement of the board

3    of judges and the proper administration of justice.  And the

4    reassignment of cases so that one particular court would not

5    be over-burdened on its docket, this case has been

6    transferred to the Honorable Judge Noe Gonzalez of the

7    370th District Court.

8              The order of transfer was signed by myself as

9    the Judge of the 93rd District Court, by Judge Gonzalez as

10   the Judge of the 370th District Court.  And, therefore, I

11   believe that Judge Gonzalez will be prepared to either hear

12   the next pretrial on this matter, any remaining pretrial

13   issues, and ultimately the jury selection, which I

14   anticipate will be in either late October or early November.

15   I believe you were already aware of this, counsel?

16              MS. GARZA:  That's correct, Your Honor.

17              THE COURT:  Mr. Garza also?

18              MR. GARZA:  Yes, Your Honor.

19              THE COURT:  Do you know, Mr. Thompson, when

20   Judge Gonzalez intends to try this case?

21              MR. THOMPSON:  I don't know the trial dates.

22   I understand that possibly we'll go downstairs and Judge

23   Gonzalez will address that this morning also, give us the

24   schedule.

25              MS. GARZA:  Your Honor, when are you

1  transferring us?  Today, right now, or do we wait for

2  another setting?

3              THE COURT:  I believe Judge Gonzalez' staff,

4  perhaps even Judge Gonzalez himself, are waiting for you to

5  go from here to there.  And by the way, there's also another

6  case in which the 275 District Court had jurisdiction of one

7  of these other individuals.

8              MR. THOMPSON:  That's correct.  That's

9  Humberto Garza, CR-0947-03-B.

10             THE COURT:  Okay.  Do we have enough deputies

11  for them to go ahead and take one of them down to Judge

12  Gonzalez?  Do you-all want to do it that way?

13             THE DEPUTY:  I would have to call downstairs.

14             THE COURT:  Let me finish up with the rest of

15  them and then you can take them all down for security

16  reasons and keep them together that way.

17             (Proceedings concluded.)

18

19

20

21

22

23

24

25

1  THE STATE OF TEXAS

2  COUNTY OF HIDALGO:

3               CERTIFICATE OF COURT REPORTER

4      I, JACQUELINE INKS, Official Court Reporter in and for

5  the 93rd Judicial District Court of Hidalgo County, State of

6  Texas, do hereby certify that the above and foregoing

7  contains a true and correct transcription of all portions of

8  evidence and other proceedings requested in writing by

9  counsel for the parties to be included in this volume of the

10  Reporter's Record, in the above-entitled and numbered cause,

11  all of which occurred in open court or in chambers and were

12  reported by me.

13      I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16      I further certify that the total cost for the

17  preparation of this Reporter's Record is $35.00 and will be

18  paid by THE COUNTY OF HIDALGO.

19      WITNESS MY OFFICIAL HAND on this the 16th day of

20  October, 2014.

21              /s/ Jacqueline Inks
                JACQUELINE INKS, CSR
22              Official Court Reporter
                93rd District Court
23              100 N. Closner
                Edinburg, Texas 78539
24              (956) 318-2255
                Cert. No. 5162; Expires: 12/31/14

25

EXHIBIT 9

Hidalgo County Auditor's Office
2808 S. Business Hwy 281
Edinburg TX 78539

# ATTORNEY VOUCHERS



*Not Scanned*

| DATE | CHECK | BATCH | V-NO | V-NAME | DESCRIPTION | CASE-NO | AMOUNT |
|------|-------|-------|------|--------|-------------|---------|--------|
| 11/9/2004 | | 42565 | 252743 | GARZA, ROLANDO | RAMIREZ, JUAN | CR-0551-04-G | 4,320.00 |
| 11/9/2004 | | 42565 | 252743 | GARZA, ROLANDO | RAMIREZ, JUAN | CR-0551-04-G | 4,850.00 |
| 11/23/2004 | | 42808 | 217859 | GARZA, ALMA R. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 16,489.91 |
| 1/25/2005 | | 43796 | 217859 | GARZA, ALMA R. | NAVARRO, JUAN RAUL RAMIREZ | CR-0551-04-G | 36,036.32 |
| 1/25/2005 | | 43796 | 252743 | GARZA, ROLANDO | RAMIREZ, JUAN | CR-0551-04-G | 22,255.00 |
| 1/17/2006 | | 58987 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 1,704.84 |
| 1/17/2006 | | 58987 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 3,884.00 |
| 2/7/2006 | | 69484 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 133.65 |
| 2/7/2006 | | 69484 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 408.00 |
| 6/20/2006 | | 61580 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 160.81 |
| 6/20/2006 | | 61580 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 1,650.00 |
| 7/3/2006 | | 61758 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 372.49 |
| 7/3/2006 | | 61758 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 1,450.00 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 943.37 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 115.28 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 38.25 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 8,160.00 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 5,940.00 |
| 12/12/2006 | | 63889 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 2,750.00 |
| 12/12/2006 | | 63889 | 253804 | WARNER, LARRY | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 17,760.00 |
| 10/23/2007 | | 78622 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 182.90 |
| 10/23/2007 | | 78622 | 289574 | SERGI & ASSOCIATES P.L.L.C. | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 1,730.00 |
| 1/30/2008 | | 8587 | 253804 | WARNER, LARRY | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 5,000.00 |
| 1/30/2008 | | 8587 | 253804 | WARNER, LARRY | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 10,000.00 |
| 7/7/2009 | | 97972 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 3,000.00 |
| 7/7/2009 | | 97972 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 170.51 |
| 7/7/2009 | | 97972 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 3,200.00 |
| 8/11/2009 | | 98500 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 2,700.00 |
| 8/11/2009 | | 98500 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 761.57 |
| 11/24/2009 | | 9344 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 2,375.00 |
| 11/24/2009 | | 9344 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 50.00 |
| 5/25/2010 | | 03777 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 4,300.00 |
| 5/25/2010 | | 03777 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 3,781.26 |
| 5/25/2010 | | 03777 | 370959 | MANSUR, PAUL EDWARD | RAMIREZ, JUAN RAUL NAVARRO | CR-0551-04-G | 33,370.00 |

*2/20/18* (handwritten)

# EXHIBIT 10

## CR-0551-04-G; The State of Texas vs. Juan Raul Navarro Ramirez

| Date | Type of Work | In Court | Out of Court | Total |
|------|--------------|----------|--------------|-------|
| 29-Oct-04 | Drafted and filed sealed Ex Parte Motions for Expert Assistance (Child Developmental Expert) | | 2.5 | $ 100.00 |
| 29-Oct-04 | Jury Selection/Indi Voir Dire | 5.0 | | $ 350.00 |
| 29-Oct-04 | Prep for Voir Dire | | 4.0 | $ 160.00 |
| 1-Nov-04 | Jury Selection/Indi Voir Dire | 5.5 | | $ 385.00 |
| 1-Nov-04 | Reviewed D.A.'s File | | 5.0 | $ 200.00 |
| 2-Nov-04 | Prep For Voir Dire | | 1.3 | $ 52.00 |
| 2-Nov-04 | Jury Selection/Indi Voir Dire | 4.5 | | $ 315.00 |
| 2-Nov-04 | Prep for Trial/ Conf with M/Sp/Conf with family/ Rev'd add'l info to file, conf with co-counsel/research | | 4.5 | $ 180.00 |
| 3-Nov-04 | Prep For Voir Dire | | 6.0 | $ 240.00 |
| 3-Nov-04 | Jury Selection/Indi Voir Dire | 6.5 | | $ 455.00 |
| 4-Nov-04 | Prep For Voir Dire/Conf with Expert | | 3.0 | $ 120.00 |
| 4-Nov-04 | Jury Selection/Indi Voir Dire | 7.0 | | $ 490.00 |
| 4-Nov-04 | Prep For Trial | | 4.5 | $ 180.00 |
| 5-Nov-04 | Jury Selection/Indi Voir Dire | 7.5 | | $ 525.00 |
| 5-Nov-04 | Rev'd video tape w/client/ Prep for Trial and Ind Voir Dire/ conf with prospective witnesses | | 0.5 | $ 20.00 |
| 5-Nov-04 | Prep For Trial and Voir Dire | | 4.5 | $ 180.00 |
| 6-Nov-04 | Prep For Trial and Voir Dire/Research | | 6.5 | $ 260.00 |
| 7-Nov-04 | Prep For Trial and Research | | 6.0 | $ 240.00 |
| 8-Nov-04 | Rev'd questions w/client | | 1.5 | $ 60.00 |
| 8-Nov-04 | Drft'd Orders | | 0.5 | $ 20.00 |
| 8-Nov-04 | Jury Selection/Indi Voir Dire | 7.0 | | $ 490.00 |
| 8-Nov-04 | Prep for Trial, Ind.Voir Dire/ Witnesses | | 4.0 | $ 160.00 |
| 9-Nov-04 | Jury Selection/Indi Voir Dire | 6.0 | | $ 420.00 |
| 9-Nov-04 | Rev'd questions w/client/Prep for Trial and Ind Voir Dire/ Talked to Prospective Witnesses/ locating propective witnesses/ Conf with client/Order Funding Motion for Expert Assistance | | 6.5 | $ 260.00 |
| 10-Nov-04 | Jury Selection/Indi Voir Dire | 5.0 | | $ 350.00 |
| 10-Nov-04 | Prep for Trial/ Conf with co-counsel, rev'f case file/ Pre for Ind Voir Dire/ Conf on Expert Witnesses | | 6.5 | $ 260.00 |
| 14-Nov-04 | Prep for Voir Dire/ prep for trial, research and review fo on spoilage and destruction of brady material/ drafted and rev'd add'l motions | | 8.5 | $ 340.00 |
| 15-Nov-04 | Jury Selection/Indi Voir Dire | 4.5 | | $ 315.00 |

# CR-0551-04-G; The State of Texas vs. Juan Raul Navarro Ramirez

| Date | Description | | | | |
|---|---|---|---|---|---|
| 15-Nov-04 | Prep for Trial/Ind Voir Dire/ Research and Located Prospective Witnesses/ reviewed add'l notes to file in prep for trial / conf. With co-counsel | | 7.5 | $ | 300.00 |
| 16-Nov-04 | Jury Selection/Indi Voir Dire | 7.5 | | $ | 525.00 |
| 16-Nov-04 | Prep for Ind Voir Dire/Witnesses/Prep for Trial | | 5.5 | $ | 220.00 |
| 17-Nov-04 | Jury Selection/Indi Voir Dire | 8.0 | | $ | 560.00 |
| 17-Nov-04 | Prep for Trial, Ind.Voir Dire Research/surplusage/ Witnesses | | 6.0 | $ | 240.00 |
| 18-Nov-04 | Jury Selection/Indi Voir Dire | 3.0 | | $ | 210.00 |
| 18-Nov-04 | Prep for Trial, Witnesses, Reviewed File,Research | | 7.0 | $ | 280.00 |
| 19-Nov-04 | Prep For Trial/Located Witnesses for Suppression hearing/Went to Arrest Scene | | 6.5 | $ | 260.00 |
| 20-Nov-04 | Prep for Trial/Research | | 7.0 | $ | 280.00 |
| 21-Nov-04 | Prep for Trial/ Review Pretrial Motions in prep for hearing/ conf with co-counsel | | 8.5 | $ | 340.00 |
| 22-Nov-04 | Pre-Trial Hearing | 3.0 | | $ | 210.00 |
| 22-Nov-04 | Prep For Trial/ Sent out Subpeonas/ legal research/ located witnesses/ conf with co-counsel/ Prep trial notebooks/ spoke to Experts/Drafted and filed Add'l Motions, App for Probation, Mtn to Strike Surplusage | | 10.0 | $ | 400.00 |
| 23-Nov-04 | Pre-Trial Hearing | 6.0 | | $ | 420.00 |
| 23-Nov-04 | Prep For Trial/legal sersearch,conferred with co-counsel/Prep trial notebooks | | 8.0 | $ | 320.00 |
| 24-Nov-04 | Prep For Trial/conf withco-counsel/rev'd file/worked on trial notebook/ | | 8.0 | $ | 320.00 |
| 25-Nov-04 | Prep for Trial/ Organized Info for Trial | | 2.0 | $ | 80.00 |
| 26-Nov-04 | Prep for Trial/Conf with Experts/worked on trial notebook/ organized info/ conf with expert | | 7.5 | $ | 300.00 |
| 27-Nov-04 | Prep for Trial/ reviewed notes and affidavits | | 6.5 | $ | 260.00 |
| 28-Nov-04 | Prep for Trial/ legal researech on duplicity/ conf with co-counsel | | 7.0 | $ | 280.00 |
| 29-Nov-04 | Trial | 7.5 | | $ | 525.00 |
| 29-Nov-04 | Prep For Trial/ Reviewed notes and ffidavits/ Reviewed Mtns. To be urged/ rev'd and prep for brief in support of Suppression hearing/Drafted and filed Motion in Limine | | 2.5 | $ | 100.00 |

# CR-0551-04-G; The State of Texas vs. Juan Raul Navarro Ramirez

| Date | Description | Hours | Hours | | Amount |
|------|-------------|-------|-------|---|--------|
| 30-Nov-04 | Trial | 8.0 | | $ | 560.00 |
| 30-Nov-04 | Prep For Trial/ Conf with co-counsel/ reviewed trial notebook | | 2.0 | $ | 80.00 |
| 1-Dec-04 | Trial | 7.5 | | $ | 525.00 |
| 1-Dec-04 | Conf with client | | 4.5 | $ | 180.00 |
| 2-Dec-04 | Prep For Trial/ reviewed lab reports in prep for expert testimony/ legal research on Expert testimony | | 6.5 | $ | 260.00 |
| 3-Dec-04 | Prep For Trial/ checked to see what witnesses have been subpeona in prep for cross/ legal  research | | 6.5 | $ | 260.00 |
| 4-Dec-04 | Prep For Triallegal research on jury chargeand requested instructions | | 6.5 | $ | 260.00 |
| 5-Dec-04 | Prep For Trial | | 4.5 | $ | 180.00 |
| 6-Dec-04 | Trial | 1.0 | | $ | 70.00 |
| 6-Dec-04 | Prep For Trial | | 7.5 | $ | 300.00 |
| 7-Dec-04 | Prep For Trial | | 2.0 | $ | 80.00 |
| 7-Dec-04 | Trial | 4.0 | | $ | 280.00 |
| 7-Dec-04 | Prep For Trial/ Sent out Subpeonas | | 4.0 | $ | 160.00 |
| 8-Dec-04 | Trial | 9.0 | | $ | 630.00 |
| 8-Dec-04 | Prep For Trial | | 4.5 | $ | 180.00 |
| 9-Dec-04 | Trial | 7.0 | | $ | 490.00 |
| 9-Dec-04 | Prep For Trial/Sent out Subpeonas/ Reviewed reports on Ballistics/ conf with co-counsel | | 5.0 | $ | 200.00 |
| 10-Dec-04 | Trial | 6.5 | | $ | 455.00 |
| 10-Dec-04 | Prep for Trial/conf with Experts on docs needed./Sent out Subpeonas/ legal research on witness invoking 5th and potential prejudices | | 5.0 | $ | 200.00 |
| 11-Dec-04 | Prep for Trial-Conferred with Prospective witnesses and Experts/ Research and review of Case law on Gang Expert | | 6.5 | $ | 260.00 |
| 12-Dec-04 | Prep for Trial-Prospective witnesses/trying to Located witnesses/Rev'd Case law on 1st Amendment/ conf with Co-counsel/Sent  out Subpeonas | | 7.5 | $ | 300.00 |
| 13-Dec-04 | Trial | 7.0 | | $ | 490.00 |
| 13-Dec-04 | Prep for Trial-Conferred with Prospective witnesses and Experts/ conf with co-counsel/ conf with witnesses0 | | 6.0 | $ | 240.00 |
| 14-Dec-04 | Trial | 8.0 | | $ | 560.00 |

# CR-0551-04-G; The State of Texas vs. Juan Raul Navarro Ramirez

| | | | | | |
|---|---|---|---|---|---|
| 14-Dec-04 | Prep for Trial & Research on Charge/ legal research and review of Rule 615 and case law/ conf with co-counsel/ Sent out add'l Subpeonas | | 10.0 | $ | 400.00 |
| 15-Dec-04 | Trial | 14.0 | | $ | 980.00 |
| 16-Dec-04 | Drafted requests for Jury Requests for Charge/Conferred with Experts/ conferred with prospective witnesses/ | | 4.5 | $ | 180.00 |
| 16-Dec-04 | Trial | 7.5 | | $ | 525.00 |
| 17-Dec-04 | Prep For Trial/Conferred with Expert/Rev'd Experts Info/reviewed expert testimony | | 8.0 | $ | 320.00 |
| 18-Dec-04 | Trial | 10.0 | | $ | 700.00 |
| 20-Dec-04 | Drafted, Rev'd & Filed Add'l motions | | 2.5 | $ | 100.00 |
| 22-Dec-04 | Mtns to Withdraw & Appeal | 1.0 | | $ | 70.00 |
| | **Total** | **184.0** | **278.8** | **$ 24,032.00** | |
| | **Total In Court Hours** | **184.0** | | **$ 12,880.00** | |
| | **Total Out of Court Hours** | | **278.8** | **$ 11,152.00** | |
| | **Total** | | | **$ 24,032.00** | |
| | **Expenses** | | | | |
| | **Mitigating Specialist Bill** | | | **$2,548.45** | |
| | **Expert Witness Testimony-Larry Fitzgerald (TDCJ Classification Expert** | | | **$1,851.15** | |
| | **Expert Witness Testimony-Dwight Stewart (Gang Expert** | | | **$1,726.92** | |
| | **Expert Witness Testimony-Dr. Kate Allen(Child Developmental Expert)** | | | **$ 2,282.75** | |
| | **Private Investigator Juan Castillo** | | | **$2,462.50** | |
| | **Private Process Server (Ruben Rodriguez)** | | | **$ 531.00** | |
| | **Total Expenses** | | | **$ 35,434.77** | |

# IOLTA ACCOUNT- LAW OFFICES OF ALMA R. GARZA
## Item Profit Detail
### All Transactions

06/28/05

| Type | Date | Num | Name | Memo | Qty | Amount | Balance |
|------|------|-----|------|------|-----|--------|---------|
| **No item** | | | | | | | |
| Deposit | 10/20/2004 | | Juan Raul Ramirez ... | Attys' Fees | | 10,265.23 | 10,265.23 |
| Check | 10/21/2004 | 2219 | Juan Raul Ramirez ... | Atty's Fees/J... | | -8,000.00 | 2,265.23 |
| Check | 11/1/2004 | 2220 | Juan Raul Ramirez ... | Atty's Fees/J... | | -1,600.00 | 665.23 |
| Check | 11/9/2004 | 2221 | Juan Raul Ramirez ... | Atty's Fees/J... | | -665.00 | 0.23 |
| Deposit | 11/29/2004 | | Juan Raul Ramirez ... | Ct. Appt./ | | 16,489.91 | 16,490.14 |
| Check | 11/29/2004 | 2223 | Juan Raul Ramirez ... | Atty's Fees/J... | | -5,000.00 | 11,490.14 |
| Check | 12/16/2004 | 2224 | Juan Raul Ramirez ... | Atty's Fees/J... | | -1,133.00 | 10,357.14 |
| Check | 12/20/2004 | 2226 | Juan Raul Ramirez ... | Atty's Fees/J... | | -1,000.00 | 9,357.14 |
| Check | 12/27/2004 | 2227 | Juan Raul Ramirez ... | Atty's fees | | -2,000.00 | 7,357.14 |
| Check | 12/29/2004 | 2228 | Juan Raul Ramirez ... | Atty's Fees | | -2,000.00 | 5,357.14 |
| Check | 1/13/2005 | 2230 | Juan Raul Ramirez ... | Atty's fees Ju... | | -2,000.00 | 3,357.14 |
| Deposit | 1/27/2005 | | Juan Raul Ramirez ... | Ct. Appt. | | 36,036.32 | 39,393.46 |
| Check | 1/27/2005 | 2231 | Juan Raul Ramirez ... | Juan Raul Ra... | 0 | 0.00 | 39,393.46 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -3,223.45 | 36,170.01 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -1,851.15 | 34,318.86 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -1,726.92 | 32,591.94 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -2,209.30 | 30,382.64 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -2,462.50 | 27,920.14 |
| Check | 1/27/2005 | 2232 | Juan Raul Ramirez ... | Juan Raul Ra... | | -531.00 | 27,389.14 |
| Check | 1/27/2005 | 2233 | Juan Raul Ramirez ... | Atty's Fees/J... | | -2,389.14 | 25,000.00 |
| Check | 2/1/2005 | 2234 | Juan Raul Ramirez ... | Atty's Fees/J... | | -6,000.00 | 19,000.00 |
| Check | 2/8/2005 | 2235 | Juan Raul Ramirez ... | Juan Raul Ra... | | -2,000.00 | 17,000.00 |
| Check | 2/11/2005 | 2236 | Juan Raul Ramirez ... | Atty's Fees/J... | | -2,000.00 | 15,000.00 |
| Check | 3/4/2005 | 2239 | Juan Raul Ramirez ... | Atty's Fees | | -500.00 | 14,500.00 |
| Check | 3/8/2005 | 2240 | Juan Raul Ramirez ... | Atty's Fees/J... | | -3,500.00 | 11,000.00 |
| Check | 3/24/2005 | 2243 | Juan Raul Ramirez ... | ATty's Fees/J... | | -1,000.00 | 10,000.00 |
| Check | 3/29/2005 | 2248 | Juan Raul Ramirez ... | Atty's Fees/J... | | -2,000.00 | 8,000.00 |
| Check | 4/18/2005 | 2253 | Juan Raul Ramirez ... | Atty's Fees/J... | | -2,000.00 | 6,000.00 |
| Check | 5/9/2005 | 2254 | Juan Raul Ramirez ... | Atty's Fees/J... | | -1,000.00 | 5,000.00 |
| Check | 5/24/2005 | 2256 | Juan Raul Ramirez ... | Atty's Fees/J... | | -3,000.00 | 2,000.00 |
| Check | 6/28/2005 | 2261 | Juan Raul Ramirez ... | Atty's Fees/J... | | -2,000.00 | 0.00 |
| Total no item | | | | | | 0.00 | 0.00 |
| **TOTAL** | | | | | | **0.00** | **0.00** |

# EXHIBIT 11

CR-0956-03-B

| STATE OF TEXAS | ) | IN THE 93RD |
| VS. | ) | DISTRICT COURT |
| JUAN RAMIREZ | ) | HIDALGO COUNTY, TEXAS |

Detailed Hours Worked

| Date | court hrs | reg hrs | activity |
|------|-----------|---------|----------|
| 8-28-03 | 1 | 1.5 | appointed on appeal; met with co-counsel to discuss the case; pre-trial hearing |
| 8-30-03 | | 3.5 | reviewed two video tapes, reviewed co-counsel's file |
| 9-2-03 | | 1.5 | made copies of file; took orders for court to sign |
| 9-3-03 | | 1.5 | returned co-counsel's file; reviewed autopsy reports |
| 9-5-03 | | 2 | took diligent notes of the State's file |
| 9-8-03 | | 2.5 | took diligent notes of the State's file; took audiotape to get copy of clients statement |
| 9-10-03 | | 3 | took diligent notes of the State's file |
| 9-16-03 | | 5 | took diligent notes of the State's file; conferred with co-counsel; jail visit |
| 10-5-03 | | 1.5 | listened to clients taped statement and tried to decipher it |
| 11-12-03 | | 1 | conferred with co-counsel; attempted to locate an independent investigator |
| 11-13-03 | 1.5 | 1 | conferred with co-counsel; called copy zone about |

1

| | | |
|---|---|---|
| | | pictures; conferred with the State; pre-trial court hearing |
| 11-15-03 | 1 | reviewed notes from prior pre-trial hearing; prepared an order for the court to sign as to a transcript of clients statement and access to co-defendants recorded statements and transcripts thereof; reviewed state's witness lists for witnesses to request criminal histories of |
| 11-17-03 | 4 | located an independent investigator; conferred with the investigator; conferred with co-counsel; picked up check from co-counsel for photographs; picked up photographs in McAllen; reviewed the photographs; prepared bill |
| 11-18-03 | 1 | took order to the State for review; took order to court |

Total hours:  Reg 30hrs @ $40.00hr =    $1,200.00

In Ct. 2.5hrs @ $70.00hr =  $175.00

TOTAL: $1,375.00

CR-0551-04-B

| STATE OF TEXAS | ) | IN THE 93RD |
| VS. | ) | DISTRICT COURT |
| JUAN RAMIREZ | ) | HIDALGO COUNTY, TEXAS |

<u>Detailed Hours Worked</u>

| Date | court hrs | reg hrs | activity |
|------|-----------|---------|----------|
| 6-17-04 | | 4 | legal research; printed out cases |
| 7-5-04 | | 5 | reviewed case law; shepardized case law; reviewed lab reports to match up items |
| 7-20-04 | | 1.5 | reviewed clients last letter; sent a reply letter; conferred with co-counsel |
| 8-4-04 | | 6 | conferred with co-counsel; conferred with investigator; legal research |
| 8-5-04 | | 5 | reviewed sate's file and took diligent notes; prepared and filed motions |
| 8-6-04 | | 3 | confered with co-counsel; reviewed sate's file |
| 8-8-04 | | 3.5 | jail visit; reviewed own file reports |
| 8-9-04 | | .5 | sent client letter informing him of status |
| 8-11-04 | | 4 | reviewed assault file; conferred with state; legal research; prepared for pre-trial hearing |
| 8-12-04 | 1.5 | 1 | pre-trial hearing; conferred with client, co-counsel, and clients family; prepared bill |

Total hours:   Reg 33.5hrs @ $40.00hr = $1,340.00
In Ct. 1.5hrs @ $70.00hr =  $105.00
Total: $1,445.00

CR-0551-04-B

| STATE OF TEXAS | ) | IN THE 93RD |
|---|---|---|
| VS. | ) | DISTRICT COURT |
| JUAN RAMIREZ | ) | HIDALGO COUNTY, TEXAS |

<u>Detailed Hours Worked</u>

| Date | court hrs | reg hrs | activity |
|---|---|---|---|
| 9-2-04 | | 6 | reviewed state's file; worked on trial notebook |
| 9-3-04 | | 8 | reviewed state's file; worked on trial notebook |
| 9-20-04 | | 7 | legal research; reviewed printed case law |
| 9-21-04 | | 5 | conferred with co-counsel; legal research |
| 9-22-04 | | 7 | conferred with co-counsel; set up assault case for trial; prepared for trial |
| 9-23-04 | 2 | 2 | court hearing on assault case; announced ready for trial; conferred with co-counsel |
| 9-24-04 | | 8 | legal research; reviewed printed case law |
| 9-27-04 | | 7 | confered with co-counsel; went to armory to review physical evidence |
| 9-28-04 | 2 | 7 | court hearing; case transferred; went to review State's file; conferred with co-counsel; went to the armory in Edinburg to review the physical evidence |

Total hours:   Reg 57 hrs @ $40.00hr = $2,280.00
                    In Ct. 4 hrs @ $70.00hr =   $280.00

Total: $2,560.00

7 +8

CR-0551-04-G

| STATE OF TEXAS | ) | IN THE 370TH |
| VS. | ) | DISTRICT COURT |
| JUAN RAMIREZ | ) | HIDALGO COUNTY, TEXAS |

<u>Detailed Hours Worked</u>

| Date | court hrs | reg hrs | activity |
|------|-----------|---------|----------|
| 10-19-04 | | 5 | conferred with co-counsel; reviewed state's file; conferred with witnesses |
| 10-20-04 | 4 | 8 | jury selection at the auditorium; conferred with co-counsel; went over jury list; conferred with witnesses; jail visit |
| 10-21-04 | | 7 | conferred with co-counsel; conferred with witnesses; reviewed case law; jail visit |
| 10-22-04 | 8.5 | 5 | prepared for hearing on motion to suppress; hearing on motion to suppress; conferred with co-counsel; conferred with witnesses; drove witness home |
| 10-23-04 | 8 | 3 | prepared for hearing on motion to suppress; hearing on motion to suppress; conferred with co-counsel; prepared for jury selection |
| 10-24-04 | | 6 | legal research on suppression issues; drafted response to State's suppression claims; prepared for jury selection; conferred with co-counsel |
| 10-25-04 | 7.5 | 3 | jury selection; conferred with co-counsel; legal research; prepared request for transcript; prepared for jury selection |

1

| | | | |
|---|---|---|---|
| 10-26-04 | 2 | 4 | jury selection; conferred with co-counsel; prepared for jury selection; conferred with witness |
| 10-27-04 | 6 | 3 | jury selection; conferred with co-counsel |
| 10-28-04 | 7 | 2 | jury selection; conferred with co-counsel; prepared for jury selection |

Total hours:  Reg 46 @ $40.00hr = $1,840.00
In Ct. 43.5hrs @ $70.00hr = $3,045.00

Total: $4,885.00

2

CR-0551-04-G

| STATE OF TEXAS | ) | IN THE 370TH |
|---|---|---|
| VS. | ) | DISTRICT COURT |
| JUAN RAMIREZ | ) | HIDALGO COUNTY, TEXAS |

<u>Detailed Hours Worked</u>

| Date | court hrs | reg hrs | activity |
|---|---|---|---|
| 10-29-04 | 5 | 4 | jury selection; prepared for further jury selection; trial preparation; conferred with co-counsel |
| 11-1-04 | 5.5 | 5 | jury selection; prepared for further jury selection; trial preparation; conferred with co-counsel |
| 11-2-04 | 4.5 | 6 | jury selection; reviewed courts file; made copies of notes for co-counsel; conferred with co-counsel; research on stipulations of evidence |
| 11-3-04 | 6.5 | 3 | jury selection; prepared for further jury selection; trial preparation; conferred with co-counsel |
| 11-4-04 | 7 | 3 | jury selection; prepared for further jury selection; conferred with co-counsel |
| 11-5-04 | 7.5 | 4 | jury selection; prepared for further jury selection; trial preparation; tracked phone records; called witnesses; conferred with co-counsel |
| 11-6-04 | | 5 | prepared for further jury selection; trial preparation; reviewed cases on independent impulse; called witnesses |

1

| 11-7-04 | | 5 | trial preparation; sought jury charge on independent impulse; reviewed caselaw on use of jury strikes and preservation of error |
| 11-8-04 | 7 | 4.5 | jury selection; tracked phone records; called witnesses; prepared for further jury selection; conferred with co-counsel |
| 11-9-04 | 6 | 5 | jury selection; prepared for further jury selection; trial preparation; tracked phone records; conferred with client in holding cell over lunch; conferred with witnesses; conferred with co-counsel |
| 11-10-04 | 5 | 5 | jury selection; prepared for further jury selection; trial preparation; conferred with co-counsel; reviewed states file |
| 11-11-04 | | 5 | trial preparation; reviewed supreme court briefs on executing 17 years olds and evolving standards of decency |
| 11-12-04 | | 6 | trial preparation; further review of supreme court briefs on executing 17 years olds and evolving standards of decency; research on juvenile adjudications |
| 11-13-04 | | 6 | trial preparation; research on spoliation and destruction of brady material |
| 11-14-04 | | 7 | prepared for further jury selection; trial preparation; further research on spoliation and destruction of brady material; drafted motion to dismiss due to the destruction of brady material |
| 11-15-04 | 4.5 | 6 | jury selection; prepared for further jury selection; trial preparation; reviewed states file; made copies of notes for co-counsel; conferred with co-counsel |

2

| | | | |
|---|---|---|---|
| 11-16-04 | 7.5 | 5.5 | jury selection; reviewed states file; prepared for further jury selection; conferred with co-counsel |
| 11-17-04 | 8 | 5 | jury selection; prepared for further jury selection; trial preparation; research on surplusage; conferred with co-counsel; summarized case law for co-counsel |
| 11-18-04 | 3 | 7 | jury selection; reviewed states file, research on surplusage, prepared for trial; drafted motion to strike surplusage from indictment; legal research as to 5th amendment and expert testimony/client interview; conferred with co-counsel |
| 11-20-04 | | 6 | read suppression transcripts; legal research; drafted bench brief; trial preparation |
| 11-21-04 | | 5 | further review of suppression transcripts; legal research; worked on bench brief; trial preparation; reviewed statutes on expert testimony |
| 11-22-04 | 3.5 | 9.5 | pre-trial; finalized and filed defendant's bench brief in support of suppression; trial preparation; reviewed drafted motion as to destruction of brady material; reviewed motion to strike surplusage from indictment; conferred with co-counsel |
| 11-23-04 | | 6 | legal research on subpoenas and federal inmates; tracked down witness; conferred with local and federal authorities; conferred with co-counsel; trial preparation |
| 11-24-04 | | 4 | prepared and filed application for writ of habeas corpus ad testificandum; conferred |

3

| | | | |
|---|---|---|---|
| | | | with co-counsel; trial preparation; conferred with local and federal authorities |
| 11-26-04 | | 4.5 | trial preparation; reviewed affidavits; reviewed notes; worked on trial notebook |
| 11-27-04 | | 5 | trial preparation; reviewed notes and affidavits; worked on trial notebook; reviewed use of peremptory strikes |
| 11-28-04 | | 5 | trial preparation; legal research on duplicity; further review of peremptory strikes |
| 11-29-04 | 7.5 | 5 | trial; trial preparation; prepared to urge bench brief is support of suppression; reviewed motion in limine concerning violence acts by others; reviewed motion to require state to identify mental health expert and to limit the scope of examination and other relief; conferred with co-counsel |
| 11-30-04 | 8 | 6 | trial preparation; trial; conferred with co-counsel; reviewed trial notes; reviewed clients notes; worked through lunch |
| 12-1-04 | 7.5 | 4 | trial; trial preparation; conferred with co-counsel; worked through lunch |
| 12-2-04 | | 5 | trial preparation; reviewed lab reports; legal research on experts testifying on legal conclusions |
| 12-3-04 | | 3 | reviewed courts file; trial preparation; checked on subpoenas; re-organized trial notebook |
| 12-4-04 | | 4 | trial preparation; legal research on jury charges and special requested instructions; |

4

| | | | |
|---|---|---|---|
| | | | reviewed trial notes and affidavits |
| 12-5-04 | | 4 | trial preparation; further legal research on jury charges and special requested instructions; reviewed form jury charges |
| 12-6-04 | 1 | 6 | trial; obtained copy of criminal histories on the deceased; checked subpoenas; tracked down witnesses, obtained and reviewed copy of state's opening; conferred with co-counsel |
| 12-7-04 | 4 | 5 | trial preparation; reviewed trial notes; reviewed affidavits; conferred with co-counsel; trial |
| 12-8-04 | 9 | 4 | trial; trial preparation; reviewed requested criminal files; worked through lunch; conferred with co-counsel |
| 12-9-04 | 7 | 5 | trial; trial preparation; conferred with co-counsel; reviewed ballistic reports; bought clothing for client; picked up clients clothing from dry cleaners |
| 12-10-04 | 6.5 | 5 | trial preparation; legal research on subpoenaed witness ordered to testify, assertion of 5th amendment right, and potential prejudices; trial; worked through lunch; conferred with co-counsel |
| 12-11-04 | | 5 | legal research on 1st amendment and testimony covering gang affiliation; printed out case law and made copies; research as to specific acts of gang introduced into evidence |
| 12-12-04 | | 2 | reviewed case law on 1st amendment; conferred with co-counsel |

| | | | |
|---|---|---|---|
| 12-13-04 | 7 | 6 | trial preparation; trial; worked through lunch; conferred with co-counsel; called witnesses; went to witnesses address; legal research on routine booking questions |
| 12-14-04 | 8 | 9 | trial; preparation for presentation of defense; legal research on rule 615 and past recollection recorded; conferred with co-counsel; made copies of caselaw for co-counsel and prepared a summary; picked up clients clothing from dry cleaners |
| 12-15-04 | 14 | 2 | trial preparation; finalized and filed requested jury instruction; trial; waited for verdict; conferred with co-counsel |
| 12-16-04 | 7.5 | 4 | trial preparation; trial; conferred with co-counsel; research on punishment evidence; prepared sworn written motion for continuance |
| 12-17-04 | | 5 | conferred with co-counsel; further research on punishment evidence and dismissed cases; trial preparation; reorganized trial notebook |
| 12-18-04 | 10 | 6 | trial preparation; conferred with co-counsel; finalized and filed requested jury instructions; trial; worked through lunch; waited for verdict |
| 12-20-04 | | 2 | conferred with co-counsel; prepared and filed motion to withdraw and appoint appellate counsel and certificate of appealability |
| 12-22-04 | 1 | 2 | court hearing on judgments and motion to withdraw; conferred with co-counsel and client as to appellate process; filed prose |

6

|          |   | notice of appeal; worked on bill |
| 12-27-04 | 3 | sought appellate and writ lawyers; conferred with co-counsel; prepared bill |

Total hours:  Reg 244hrs @ $40.00hr = $9,760.00
                    In Ct. 178.5hrs @ $70.00hr = $12,495.00

Total: $22,255.00

# EXHIBIT 12

*May 20, 2009*

COUNTY AUDITOR'S FORM
HIDALGO COUNTY TEXAS
REV 20 05

# ATTORNEY FEES EXPENSE CLAIM FORM
UNDER ARTICLE 26.05. CODE OF CRIMINAL PROCEDURE AS AMENDED

| CASE INFORMATION | FEE SCHEDULE | | | |
|---|---|---|---|---|
| *(SHOW ONLY ONE DEFENDANT PER CLAIM)* | DESCRIPTION | RATE | HOURS | AMOUNT |
| RAMIREZ | OUT OF COURT | $40 | | |
| | IN COURT | $70 | | |
| CASE NUMBER(S)   *LIST ALL CASES RELATED TO THIS CLAIM* | OTHER LEGAL SERVICES REIMBURSEMENT REQUIRE PROPER DOCUMENTATION | | | |
| | ☑ INVESTIGATOR  ☐ EXPERT  ☐ OTHER | | | |
| | FEES SET BY COURT | | **TOTAL** | 3,370.51 |
| COURT NUMBER 370th Judicial District | ☐ COMPLEXITY OF THE CASE AND/OR COUNSEL'S EXPERIENCE | | ☐ OTHER | |
| **Choose a Court** | JUSTIFICATION FOR ADJUSTMENT AS PER ARTICLE 26.05 (4)(C) | | | |

| DATE | TYPE OF WORK | IN COURT HOURS | OUT OF CT HOURS |
|---|---|---|---|
| | SEE ATTACHED | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **TOTAL HOURS** | |

## PERSONAL INFORMATION

VENDOR NUMBER          TELEPHONE NUMBER          BAR CARD NUMBER

MAILING ADDRESS

## CERTIFICATION

I, Paul E. Mansur , Attorney at Law, swear or affirm to the Court and to the County Auditor that the information contained above is true and correct, and payment would not be contrary to the fee schedule adopted by the Board of Judges pursuant to Article 26.05 Code of Criminal Procedure effective September 1, 1987. I further swear or affirm that I have not received nor will receive any money or anything else of value for representing the accused, and I further affirm or swear that I have not submitted duplicate time charges for the same hours charged in any other case.

_____
ATTORNEY AT LAW (SIGNATURE)

APPROVED _____
PRESIDING JUDGE (SIGNATURE)          THE _____ DAY OF _____ A.D. 20

### FOR USE OF AUDITOR'S OFFICE ONLY

APPROVED _____          COUNTY AUDITOR          Account No. 1100-412-30-115-016-0-333

Billing Statement

May 20, 2009


Attorney:      Paul Mansur
Client Name:  ███████ Ramirez

This itemized billing includes mitigation work time and reimbursements.  The
travel to Corpus Christi and Livingston to meet with ██████ Ramirez ██████ and his family is
also included.

October 2008
          10-23-08      Meeting Attorney                    100 min

November 2008
          11-08-08      Mitigation Research                 120 min
          11-12-08      Mitigation Research                 180 min
          11-17-08      Mitigation Research                 225 min
          11-22-08      Mitigation Strategies,
                        Collateral Norma Villanueva,         95 min
          11-22-08      Communication attorney               35 min
          11-24-08      Communication attorney                6 min
          11-26-08      Mitigation Research                 125 min

December 2008
          12-17-08      Meeting, Richard Reyna               15 min
          12-18-08      Communication Attorney                3 min
          12-19-08      Communication Attorney               30 min
          12-22-08      Mitigation, research interviews     270 min
          12-22-08      Travel time Corpus Christi          360 min
          12-22-08      Gas Reimbursement                  $ 26.00
          12-22-08      Meal Reimbursement                 $ 15.42
          12-23-08      Return Rental Car                    45 min
          12-30-08      Communication Attorney               23 min

January 2009
          1-2-09        Communication Attorney               17 min
          1-5-09        Travel Time Livingston              810 min
          1-5-09        Mitigation research, client
                        interview                           240 min
          1-5-09        Car Rental Reimbursement           $ 68.29
          1-5-09        Meal Reimbursement                 $ 10.79
          1-5-09        Gas Reimbursement                  $ 50.01
          1-9-09        Document of interviews              180 min
          1-25-09       Communication Attorney               25 min

February
| | | |
|---|---|---|
| 2-9-09 | Telephone Call, ██████████ | 19 min |
| 2-13-09 | Mitigation Research, interview | 120 min |
| 2-17-09 | Documentation of interview | 60 min |

April 2009
| | | |
|---|---|---|
| 4-2-09 | Mitigation Research, interview | 60 min |
| 4-3-09 | Telephone call, J██ R█ R████████ | 4 min |
| 4-4-09 | Telephone call, J██ R█ R████████ | 8 min |
| 4-4-09 | Mitigation Research, interviews | 135 min |
| 4-4-09 | Telephone call, Attorney | 33 min |
| 4-9-09 | Mitigation Research, interviews | 120 min |
| 4-30-09 | Documentation of interviews | 300 min |

May 2009
| | | |
|---|---|---|
| 5-15-09 | Communication with Attorney | 27 min |
| 5-21-09 | Telephone call, Richard Reyna | 7 min |
| 5-22-09 | Telephone call, ██████████ arrange affidavit | 9 min |
| 5-22-09 | Communication with Attorney | 28 min |
| 5-22-09 | Telephone call, Richard Reyna | 6 min |

| | | |
|---|---|---|
| Total Time: | 64 hrs @ $50 = | $ 3,200.00 |
| Total Expenses: | | $   170.51 |
| | | |
| Total Fee: | | $ 3,370.51 |

Note:  for tax purposes the payment should be made out to:
        Gloria Rodriguez
        Tax ID# ██████████

Gloria Rodriguez
Monthly Time Record

Case: ▓▓▓▓▓ Ramirez   Attorney: Paul Monsur
Month: October - November 2008

| DATE | TIME BEGAN | TIME ENDED | Work |
|------|-----------|-----------|------|
| | | | Comfort inn - |
| 10/23/08 | 8:15 pm | 9:55 Am | Meeting - Re Client Ramirez Funding motion for mitigation Specialist + order from clifens with - Paul Monsur |
| 11-8-08 | 4:30 pm | 8:30 pm | Review Client's info/reports by Gilda Bauer |
| 11-12-08 | 6:35 pm | 9:30 pm | Review Client's TYC Records |
| 11-17-08 | 4:45 pm | 10:30 pm | Cont Review Client's TYC Records + School Records |
| 11-22-08 | 10:40 Am | 12:15 pm | Collateral meeting T Norma Villanueva re: Mitigation Strategies - documents forms, etc. |
| 11-22-08 | 1:40 pm | 2:20 pm | Telephone Call T Attn. Monsur re. planning + travel to interview client's family |
| 11-24-08 | 11:30 Am | 11:36 Am | Telephone Call c attorney Monsur re. Client Ramirez |
| 11-26-08 | 7:00 pm | 9:05 pm | Review Client's mental health records |
| | | | |
| | | | |
| | | | |
| | | | |

Total Hours: 14 hours 4 min  @  $50.00  for  $ _____

Gloria Rodriguez

**Monthly Time Record**

Case: ████████  Ramirez   Attorney: Paul Monsur

Month: December 2008

| DATE | TIME BEGAN | TIME ENDED | Work |
|---|---|---|---|
| 12-17-08 | 11:05 AM | 11:20 AM | Meeting ε Richard Reyna re mitigation interview strategy |
| 12-18-08 | 7:32 pm | 7:35 pm | Telephone Call with attorney Paul Monsur re: outcome of meeting ε Richard |
| 12-19-08 | 8:45 pm | 9:15 pm | Telephone call with attorney Paul Monsur re: trip to Corpus Christi meeting with clients family |
| 12-22-08 | 8:30 am | 11:00 AM | Travel time from Edinburg, Tx to Corpus Christi |
| 12-22-08 | 1:00 pm | 1:30 pm | Travel time from ██JOR██ s hot. to Pentecostal church for interview |
| 12-22-08 | 1:30 pm | 3:20 pm | Interview ██JNR██ Clients mother |
| 12-22-08 | 3:20 pm | 4:45 pm | Interview ██JOR██ Clients sister |
| 12-22-08 | 4:45 pm | 6:00 pm | Interview B████ R██ Clients sister |
| 12-22-08 | 6:00 pm | 9:00 pm | Travel time from Corpus Christi to Edinburg, Tx |
| 12-23-08 | 7:45 AM | 8:30 am | Return Rental Car - Travel time to Rental Agency. |
| 12-30-08 | 11:55 AM | 12:18 pm | Telephone Call with attorney Paul Monsur - Re trip Polunsky Unit |
| | | | |
| | | | |
| | | | |

Total Hours: 12 hours 26 min   @   $50.00   for   $ _____

Gloria Rodriguez
**Monthly Time Record**

Case: ███████ Ramirez   Attorney: Paul Mansur
Month: January - February 2009

| DATE | TIME BEGAN | TIME ENDED | Work |
|---|---|---|---|
| 1-2-09 | 10:49 AM | 11:08 AM | Telephone Call with attorney Paul Mansur Confirmism of trip to Polunsky Unit via Car. |
| 1-5-09 | 1:30 AM | 8:00 am. | Travel time from Edinburg, TX to Livingston (Polunsky Unit) |
| 1-5-09 | 8:00 am | 12:00 pm | Interview Client ████ Ramirez Clearance infout of Polunsky unit |
| 1-5-09 | 12:00 pm | 7:00 pm | Travel time from Livingston-Polunsky Unit to Edinburg - Return Rental Car |
| 1-9-09 | 6:00 pm | 9:00 pm | Prepared - Transcribed interviews of Client + family interviews |
| 1-25-09 | 5:30 pm | 5:59 pm | Telephone Call with attorney - Paul Mansur re interview of possible contacts |
| 2-9-09 | 8:49 pm | 9:05 pm | Telephone Call with ████████ Clients wife - setup interview appt |
| 2-13-09 | 8:30 am | 10:30 am | Interview ████ Clients wife |
| 2-17-09 | 7:00 pm | 8:00 pm | Prepared - Transcribed interview of ██████████ |
| | | | |
| | | | |
| | | | |

Total Hours: 24 hours 32 min @ $50.00 for $ _____

Gloria Rodriguez
Monthly Time Record

Case: ▮▮▮▮▮▮ Ramirez   Attorney: Paul Mansur

Month: April 2009

| DATE | TIME BEGAN | TIME ENDED | Work |
|------|-----------|-----------|------|
| 4-2-09 | 8:30 am | 10:30 am | Interview ▮▮▮▮▮ - one of clients best friends |
| 4-3-09 | 3:30 pm | 3:34 pm | Telephone call with J▮ K▮ K▮▮▮ Clients father - confirm interview am. |
| 4-4-09 | 12:00 pm | 12:05 pm | Telephone call with J▮ K▮ K▮▮▮ - clients father ? gas # |
| 4-4-09 | 4:05 pm | 4:10 pm | Telephone call with attorney Paul Mansur re. interview clients father |
| 4-4-09 | 4:15 pm | 5:45 pm | Interview clients father - J▮ K▮ |
| 4-4-09 | 5:45 pm | 6:30 pm | Interview ▮▮▮▮▮ Clients Stepmother |
| 4-4-09 | 6:30 pm | 6:31 pm | left message for attorney re. J▮ K▮ gt. re. gas reimbursement |
| 4-4-09 | 6:35 pm | 7:02 pm | Telephone call with attorney Paul Mansur re. outcome y interview + gas reimbursement |
| 4-4-09 | 7:02 pm | 7:05 pm | Telephone call with J▮ K▮ K▮▮▮ instructions gas reimbursement |
| 4-9-09 | 9:00 am | 9:35 am | Interview ▮▮▮▮▮ Clints godmother |
| 4-9-09 | 9:35 am | 10:15 am | Interview - clients god father |
| 4-9-09 | 10:45 am | 11:30 am | Interview - ▮▮▮▮▮ godmother |
| 4-30-09 | 4:00 pm | 9:00 pm | Prepared transcribed interviews of 4-2-09, 4-4-09 + 4-9-09 |

Total Hours: 11 Hours   @ $50.00 for $ _____

Gloria Rodriguez
**Monthly Time Record**

Case: ▓▓▓▓▓ _Ramirez_   Attorney: _Paul Monsur_
Month: _May 2009_

| DATE | TIME BEGAN | TIME ENDED | Work |
|------|-----------|-----------|------|
| 5-15-09 | 11.35 AM | 12.02 pm | Telephone call with attorney - Paul Monsur - Status on case |
| 5-21-09 | 8.22 pm | 8.24 pm | Telephone call with Richard Reyna asst. with contacts [w/interview] for wk |
| 5-21-09 | 8.30 pm | 8.32 pm | left message for attorney - Paul Monsur |
| 5-22-09 | 9.21 AM | 9.44 AM | Telephone call with Attorney - Paul Monsur Status on case + interviews |
| 5-22-09 | 4.51 pm | 5.00 pm | Telephone call with ▓▓▓▓ - afficent - Out of town N.Y |
| 5-22-09 | 5.00 pm | 5.03 pm | Telephone call with Paul Monsur notified ▓▓▓▓ in N.Y |
| 5-22-09 | 5.03 pm | 5.09 pm | Telephone call with Richard Reyna - notified of ▓▓▓▓ |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Total Hours: _1 hour 17 min_   @  $50.00  for  $ _____

```
        TAQUERIA
      JALISCO  #4
4330 EVERHART RD. C.C. TX.

     /22/2008    000000
     1:51PM SERV.0010001

 3                $6.25
                  $6.25
   TEA            $1.50
   ST            $14.00
                  $1.16

   H             $15.16

PH.  992-1472
   THANK YOU
```

My 1 person = $8.39

WELCOME TO
OUR STORE

THANKS-COME AGAIN

Total $35.42

```
SALES RECEIPT REPRINT
SF 542 183405
SHELL
1502 E UNIVERSITY DRIVE
EDINBURG        TX  78539


DATE12/23/08  9:50AM
INVOICE# 781732
AUTH#    697018
PIN USED
  Debit
ACCOUNT NUMBER
████████████████

PUMP PRODUCT    $/G
02   UNLD   $1.449

GALLONS   FUEL TOTAL
4.142       $  6.00
```



Shepherd

.8-23

20.5

CHICKEN CLUB TOASTER                    +.19

MOZZARELLA STICKS                      $2.79
  + MARINARA

EX-LG  CHEESE CONEY                     $4.99
  + MAYO

STALL #6

Tax                                    $0.82

Total                                  $

Balance Due                            $
Change

CONNER'S CORNER
102 E. HOUSTON HWY.
EDNA, TX 77957

CONNER, 100
102 E. HOUSTON HWY.
EDNA TX 57

05 4 51.02 A
27 8

CASHIER: Ruben

Subtotal = $15.01
Tax = $0.00

Total    $15.01

WE APPRECIATE
OUR BUSINESS !!

217 N ALAMO
REPUBLIC, TX

01/05/09    15:52
PUMP 4

FUEL    $15.00

TL AND TAX    $15.00

RECEIPT NO  2-7418

STRIPES #9688
1816 S 10TH
MCALLEN TX
78501
TP48571174-001  PCC 9688
1816 S 10TH ST
MCALLEN    TX 78503

| Descr. | qty | amount |
|---|---|---|
| Prepay CA#02 | | 20.00 |

Sub Total    20.00
Tax    0.00
TOTAL    20.00
CASH $    20.00

THANKS , COME AGAIN
REG# 0003 CSH# 009 DR# 01  TRAN# 32030
01/05/09  18:46:03    ST# 9688

Total: $50 01

EXHIBIT 13

# RENE GUERRA

August 14, 2006

David K. Sergi
David K. Sergi & Associates, P.C.
P.O. Box 1409
San Marcos, Texas  78667

RE:  Copy of the second brief which Larry Warner filed in the
     direct appeal of the Juan Raul Navarro Ramirez case

Dear Mr. Sergi:

     Enclosed please find a copy of another brief in the above-
referenced case which I received by mail on August 10, 2006.

     You will notice that Larry Warner calls this brief, like the
one he submitted earlier, a "preliminary brief".

     You will also notice that this brief is very hard to follow,
with the most difficult part to read being the "Summary of the
Evidence" on pages 7-28, which merely contains record references
followed by shorthand phrases describing parts of the record.

     I am also not sure why pages 32-34 consist of only a few
phrases surrounded by blank space.

Respectfully,

*Theodore C. Hake*

THEODORE C. HAKE, Assistant
Criminal District Attorney
Hidalgo County, Texas

Date Received: 8/17/06
File Name: 04218
cc: client: _____ Cal: _____
Scanned: ✓ (mw) Fxd: _____
file: _____ Lnk: _____
c: DKS mw

EXHIBIT 14

```
=================================================================================
              E D I N B U R G   P O L I C E   D E P A R T M E N T
===============================SUPPLEMENTAL REPORT===============================
```

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 1 of 18
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101
Occurrence Date: 01/05/03-          Day: Sunday   -          Time: 00:45-01:10
Status: PD  PENDING ASSN          Closing Officer: 211028 SOTO JOSE LUI
Location: 2915 E. MONTE CRISTO RD., ED                           RD:  338

```
======================= INVOLVED PERSONS =======================================
```
REPORTING PAR SOTO JOSE LUIS                   DOB:              Race: H  Sex: M
    100 E. FREDDY GONZALEZ DR., ED
    Apt:       State: TX  Zip: 78539      Phone: 956 381-9825   Adu/Juv: A
    POB:              Hair:    Eye:    Hgt:     Wgt:            Bld:
Business Name: EDINBURG POLICE DEPT
    100 E. FREDDY GONZALEZ                              Phone: 956 383-7411
    EDINBURG,TX 78539

```
======================== NARRATIVE =============================================
```
ON SUNDAY, JANUARY 5, 2003, AT ABOUT 1:35 A.M., I RECEIVED A PAGE FROM THE
EDINBURG POLICE DEPARTMENT DISPATHCH, WHICH INDICATED THAT THERE HAD BEEN A
SHOOTING AT 2915 EAST MONTE CHRISTO IN EDINBURG, HIDALGO COUNTY, TEXAS.
UPON ARRIVAL I MET WITH INVESTIGATOR FRANK GARZA WHO REPORTED THAT THE FEMALE
WHO WAS CRYING WAS ROSIE GUTIERREZ THE ONLY SURVIVING VICTIM. I ASKED HIM IF
HE HAD OBTAINED A STATEMENT FROM HER. INVESTIGATOR GARZA STATED THAT HE HAD
NOT, THAT ROSIE GUTIERREZ WAS HYSTERICAL AND COULD NOT OBTAIN MUCH INFORMATION
FROM HER. I INSTRUCTED INVESTIGATOR GARZA TO TRANSPORT ROSIE GUTIERREZ TO
THE OFFICE WHERE HE COULD OBTAIN ALL THE NECESSARY INFORMATION TO ASSIST IN
THE INVESTIGATION. INVESTIGATOR GARZA DID TRANSPORT ROSIE GUTIERREZ TO THE
POLICE DEPARTMENT AND PROCEEDED TO OBTAIN A STATEMENT FROM HER.

I THEN MET WITH EDINBURG POLICE OFFICER WILLIAM WALLS WHO REPORTED THAT THE
EASTSIDE RESIDENCE HAD ONE MALE OUTSIDE THE RESIDENCE WHO APPEARED TO BE DEAD
AND FOUR OTHERS INSIDE THE RESIDENCE WHO ALSO APPEARED TO BE DEAD. OFFICER
WALLS ALSO INDICATED THAT IN THE MAIN RESIDENCE THERE WAS ANOTHER MALE WHO
ROSIE GUTIERREZ IDENTIFIED AS HER SON JERRY HIDALGO. ACCORDING TO OFFICER
WALLS, JERRY HIDALGO WAS TIED AND APPEARED TO BE DEAD ON THE KITCHEN FLOOR
FROM THE GUN SHOTS HE HAD RECIEVED.

I HAD LEARNED THAT DETECTIVE SERGEANT REYES RAMIREZ WAS NOT RESPONDING SO
I TOOK CHARGE. LIEUTENANT BEN GARZA AND CHIEF Q. MUNOZ WERE PRESENT AND HAD
BEEN THROUGH THE CRIME SCENE. INVESTIGATOR RAMIRO RUIZ INQUIRED WHO WAS
HANDLING THE CASE. I INSTRUCTED INVESTIGATOR RAMIRO RUIZ AND INVESTIGATOR
EDGAR RUIZ TO TAKE CARE OF THE CRIME SCENE BEFORE ANY OTHERS ENTERED.
INVESTIGATOR EDGAR RUIZ AND INVESTIGATOR RAMIRO RUIZ ENTERED THE CRIME SCENE.
CHIEF MUNOZ AND LIEUTENANT GARZA ALSO FOLLOWED INSIDE. INVESTIGATORS DANIEL
OCHOA, ROBERT ALVAREZ AND SANDRA SALINAS WERE SUMMONED TO THE CRIME SCENE.
DETECTIVE SERGEANT REYES RAMIREZ ARRIVED SHORTLY THERE AFTER CAME IN AND
TOOK CHARGE OF THE CRIME SCENE. THE EDINBURG FIRE DEPARTMENT HAD BEEN
SUMMONED TO THE CRIME SCENE TO LIGHT UP THE AREA FOR BETTER VIEWING OF THE
CRIME SCENE FROM THE OUTSIDE. SERGEANT JAIME ROSA ALSO ARRIVED AT THE SCENE
AND PROCEEDED TO PREPARE THE EQUIPMENT TO VIDEO TAPE THE CRIME SCENE.
SERGEANT JAIME ROSA AND I PROCEEDED TO THE CRIME SCENE AFTER INVESTIGATOR

```
=============================CRIME REPORT REVIEW================================
```
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39

==================================================================================
              E D I N B U R G   P O L I C E   D E P A R T M E N T
================================CONTINUATION PAGE=============================

Reported Date: 01/05/03  Time: 01:10       Case: 03-000479 (007)PAGE: 2 of 18
Code: 1903 CF PC         Crime: CAPITAL MURDE Class: 010101

EDGAR RUIZ AND INVESTIGATOR RAMIRO RUIZ HAD MARKED THE EVIDENCE. I PROCEEDED
TO PHOTOGRAPH THE CRIME SCENE, STARTING WITH THE WESTSIDE RESIDENCE AND THEN
PROCEED TO THE EXTERIOR OF THE PROPERTY. I THEN PROCEEDED TO THE EASTSIDE
RESIDENCE WHERE I ALSO PHOTOGRAPHED THE RESIDENCE. THE PHOTOGRAPHS WERE LATER
DOWN LOADED AT THE EDINBURG POLICE DEPARTMENT IDENTIFICATION SECTION COMPUTER.
I PROCEEDED BACK TO THE CRIME SCENE WHERE I CONTINUED PHOTOGRAPHING THE CRIME
SCENE. JUSTICE OF THE PEACE CHARLIE ESPINOZA WAS SUMMONED TO THE CRIME SCENE
WHERE HE PRONOUNCED THE SIX MALES DEAD. TWO OF THE MALES WERE INDETIFIED AS
JERRY HIDALGO AND RAY HIDALGO. ELIZONDO'S EMBALMBING WAS REQUESTED AND THEY
LATER ARRIVED AND TOOK ALL SIX BODIES TO THIER LOCATION IN MISSION, TEXAS.

ON MONDAY, JANUARY 6, 2003, EDINBURG POLICE INVESTIGATORS MET AT THE
EDINBURG POLICE ARMORY FOR BRIEFING. SERGEANT RAMIREZ HEADED THE BRIEFING
AND WE WERE ASSISTED BY OTHER AGENCIES (TEXAS RANGERS, TEXAS DEPARTMENT OF
PUBLIC SAFETY NARCOTIC DIVISION, FBI, MCALLEN POLICE, PHARR POLICE, ATF,
TEXAS DEPARTMENT OF PUBLIC SAFETY LAB, DEA, AND THE HIDALGO COUNTY SHERIFF
OFFICE.

ON MONDAY, JANUARY 6, 2003, AT ABOUT 2:25 P.M., I RECEIVED A CALL FROM
OFFICER FLORES OF THE EDINBURG CONSOLIDATED INDEPENDANT SCHOOL DISTRICT
POLICE DEPARTMENT. OFFICER FLORES STATED THAT HE HAD RECEIVED INFORMATION
THAT A MR. VELA HAD INFORMED HIM THAT HE RECEIVED A CALL FROM A JOSE LIRA
AND INFORMED HIM THAT A MICHELLE REYNA (BUS MONITOR) WAS PRESENT AT THE
SCENE WHEN THE SHOOTING OCCURRED. I RELAYED THE INFORMATION TO DETECTIVE
SERGEANT REYES RAMIREZ RIGHT AFTER I RECEIVED THE INFROMATION.

ON MONDAY, JANUARY 6, 2003, AT ABOUT 7:40 P.M., I RECEIVED A CALL FROM A
FEMALE WHO IDENTIFIED HERSELF AS MARY SAENZ MOLINA WHO STATED THAT SHE WAS
THE COUSIN TO ROSIE GUTIERREZ. MARY SAENZ MOLINA STATED THAT SHE WAS
CALLING FROM GALVESTON, TEXAS AND WANTED TO KNOW WHETHER HER BROTHER JAIME
SAENZ WAS ONE OF THE MALES IN THE RESIDENCE. I INFORMED HER THAT ALL THE
BODIES HAD NOT BEEN IDENTIFIED AND THAT ONCE WE HAD ANY INFORMATION
THAT SHE WOULD BE CONTACTED. MARY SAENZ MOLINA DID LEAVE HER NUMBERS WHERE
SHE COULD BE REACHED. THE HOME NUMBER SHE PROVIDED WAS 281-424-2778 AND
THE WORK NUMBER WAS 281-420-4670.

ON TUESDAY, JANUARY 7, 2003, AT ABOUT 8:22 A.M., I RECEIVED A CALL FROM
JOE SEGUNDO OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICE WHO INFORMED
ME THAT THE LAB PERSONNEL WERE COMING IN ON THURSDAY OR FRIDAY TO ASSIST
IN THE INVESTIGATION. I RELAYED THE INFORMATION TO DETECTIVE SERGEANT
REYES RAMIREZ.

ON TUESDAY, JANUARY 7, 2003, AT ABOUT 8:24 A.M., I RECEIVED A CALL FROM A
STEVE OUT OF MCALLEN TEXAS. STEVE STATED THAT HE HAD BEEN INFORMED THAT A
VEHICLE RENTED TO LOUIS HARTMAN HAD BEEN IMPOUNDED BY THE EDINBURG POLICE
DEPARTMENT. I INFORMED STEVE THAT THE RED FORD ESCORT BEARING TEXAS
LICENSE PLATES N59-TMC HAD BEEN IMPOUNDED AND THAT THE VEHICLE WAS TO
REMAIN IN IMPOUNDMENT UNTIL IT WAS CLEARED IN THE INVESTIGATION OR

==================================================================================
                 CONTINUATION PAGE - CRIME REPORT REVIEW
==================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
        Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39

```
===================================================================================
        E D I N B U R G    P O L I C E    D E P A R T M E N T
===================================CONTINUATION PAGE==============================
```

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479 (007)PAGE: 3 of 18
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

AUTHORIZED BY DETECTIVE SERGEANT REYES RAMIREZ. STEVE ASKED THAT HE BE
KEPT ABREAST ON THE STATUS OF THE VEHICLE. I INFORMED HIM THAT HE WOULD.

ON TUESDAY, JANUARY 7, 2003, AT ABOUT 2:40 P.M., RACHEL HARTMAN CAME IN
AND INQUIRED ON HER CELL PHONE AND HER RED FORD ESCORT VEHICLE. I INFORMED
HER THAT ENTERPRISE RENT A CAR HAD BEEN NOTIFIED THAT THE VEHICLE THAT HAD
BEEN RENTED WAS IN IMPOUNDMENT AT THE EDINBURG POLICE DEPARTMENT AND FOR
HER TO GO BACK AND SPEAK TO STEVE ABOUT REMOVING HER FROM THE RENTAL
AGREEMENT. I ALSO INFORMED HER THAT THE CELL PHONE COULD NOT BE RELEASED
AT THAT TIME AND AUTHORIZATION WOULD HAVE TO COME FROM DETECTIVE SERGEANT
REYES RAMIREZ.

ON TUESDAY, JANUARY 7, 2003, AT ABOUT 5:13 P.M., INVESTIGATOR SANDRA
SALINAS AND I MET WITH BLANCA JO GARCIA (AKA BLANCA JO SAN MIGUEL) IN THE
BACK OFFICE OF THE EDINBURG POLICE DEPARTMENT (CID OPEN OFFICE SPACE BELONGING
TO FOUR INVESTIGATORS.) WE WERE WITH BLANCA JO GARCIA WAITING FOR FURTHER
WORD FROM DETECTIVE SERGEANT REYES RAMIREZ THE PERSON WHO ASKED US TO
STAND BY WITH HER. WHILE WITH BLANCA JO GARCIA SHE WENT ON TO MENTION THAT
SHE HAD BEEN AT THE GRAHAM CLUB ON THAT SATURDAY PRIOR TO THE SHOOTING AND
THAT SHE WAS NOT PRESENT WHEN IT OCCURRED. BLANCA JO GARCIA STATED THAT
LUIS VILLA THE PERSON THAT SHE WAS STAYING WITH AT THE ECHO TOLD HER THAT
RUBEN CASTILLO WAS THE PERSON THAT WENT OUTSIDE TO TAKE A LEAK WHEN HE WAS
SHOT. ACCORDING TO BLANCA JO GARCIA LUIS VILLA TOLD HER THAT HE HEARD HEY
PUTO TO CAES PRIMERO AND THEN HE HEARD THREE SHOTS AFTER THAT. BLANCA JO
GARCIA THEN ADDED THAT LUIS VILLA TOLD HER THAT REY HIDALGO RAN TO THE
DOOR AND SAID TO JUAN DELGADO JR. THAT THERE WERE ALOT OF VATOS OUTSIDE WITH
GUNS. THAT THERE ABOUT TWENTY TO THIRTY GUYS. BLANCA JO GARCIA STATED THAT
LUIS VILLA TOLD HER THAT HE THEN JUMPED OUT OF WINDOW AND HE HULLED ASS.
BLANCO JO GARCIA THEN STATED THAT LUIS VILLA TOLD HER THAT JUAN DELGADO JR.
WENT BACK TO CALL HIS BROTHER JUAN DELGADO III, BUT IT WAS APPARENT THAT THEY
DID NOT MAKE IT. ACCRODING TO BLANCO JO GARCIA, LUIS VILLA THEN TOLD HER THAT
HE THEN HEARD SEVERAL SHOTS AFTER THAT. BLANCO JO GARCIA STATED THAT LUIS
VILLA HAD TOLD HER THAT WHEN HE FIRST TRIED TO JUMP OUT HE BOUNCED BACK AND
HAD TO TRY AGAIN BEFORE HE WAS ABLE TO GET OUT OF THE WINDOW. BLANCO JO
GARCIA WAS THEN RELEASED AFTER DETECTIVE SERGEANT REYES RAMIREZ INFORMED HER
THAT HE DID NOT NEED TO SPEAK WITH HER ANYMORE. BLANCO JO GARCIA WAS THERE
ON A VOLUTARY BASIS AND INVESTIGATOR SANDRA SALINAS AND I STOOD BY WITH HER.

ON WEDNESDAY, JANUARY 8, 2003, 9:00 A.M., EDINBURG POLICE INVESTIGATORS
MET AT THE ARMORY. DETECTIVE SERGEANT REYES RAMIREZ REQUESTED THAT I
OBTAIN A CONSENT TO SEARCH THE PROPERTY AT 2915 EAST MONTE CHRISTO ROAD IN
EDINBURG, TEXAS FROM ROSIE GUTIERREZ.

ON WEDNESDAY, JANUARY 8, 2003, AT ABOUT 9:20 A.M., INVESTIGATOR SANDRA
SALINAS AND I MET WITH ROSIE GUTIERREZ AT 515 EAST MAHL IN EDINBURG,
TEXAS. I ASKED THAT SHE CONSENT FOR HER PROPERTY TO BE SEARCH AGAIN FOR
ANY EVIDENCE, WHICH COULD ASSIST US IN THE APPREHENSION OF THE ASSAILANTS
WHO COMMITTED THE DEATHS OF ALL SIX VICTIMS. ROSIE GUTIERREZ STATED THAT

```
===================================================================================
                CONTINUATION PAGE - CRIME REPORT REVIEW
===================================================================================
```
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39

```
================================================================================
           E D I N B U R G   P O L I C E   D E P A R T M E N T
=================================CONTINUATION PAGE=============================
```

Reported Date: 01/05/03  Time: 01:10      Case: 03-000479 (007)PAGE: 4 of 18
Code: 1903 CF PC        Crime: CAPITAL MURDE Class: 010101

SHE WOULD GIVE CONSENT AND THAT SHE WOULD ASK THAT SHE BE ABLE TO OBTAIN
SOME CLOTHING FROM HER RESIDENCE. I INFORMED HER THAT ONCE WE HAD THE
SEARCH CONDUCTED THAT I WOULD OBTAIN SOME CHANGE OF CLOTHING FOR HER. (SEE
CONSENT TO SEARCH PROVIDED BY ROSIE GUTIERREZ FOR MORE DETAIL
INFORMATION.)

ON WEDNESDAY, JANUARY 8, 2003, AT ABOUT 9:40 A.M., I WENT BACK TO THE
ARMORY WHERE I MET WITH DETECTIVE SERGEANT REYES RAMIREZ. AT THAT POINT
JOE MARCHAN OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY LAB OFFICE ASKED THAT
I OBTAIN A EVIDENTIARY SEARCH WARRANT FOR THE PROPERTY, SINCE ROSIE
GUTIERREZ WAS BEING LOOKED AT AS A POSSIBLE SUSPECT.

ON WEDNESDAY, JANUARY 8, 2003, AT ABOUT 10:53 A.M., I RECEIVED A CALL FROM
INVESTIGATOR LOREDO OF THE SOUTH TEXAS AUTO TASK FORCE. INVESTIGATOR
LOREDO STATED THAT HE HAD HEARD THAT WE WERE SEEKING TO LOCATE A RED
TRUCK WHICH HAD A TAZ DEVIL BUMPER STICKER ON IT. I INFORMED INVESTIGATOR
LOREDO THAT SAID DESCRIPTION HAD ALREADY BEEN MENTIONED AND THAT SAID
TRUCK HAD BEEN CLEARED FROM THE INVESTIGATION.

ON WEDNESDAY, JANUARY 8, 2003, AT ABOUT 2:00 P.M., JUDGE NOE GONZALEZ OF
THE 370 DISTRICT COURT SIGNED A EVIDENTIARY SEARCH WARRANT FOR 2915 EAST
MONTE CHRISTO IN EDINBURG, TEXAS.

ON WEDNESDAY, JANUARY 8, 2003, AT ABOUT 4:17 P.M., I PROCEEDED TO 2915
EAST MONTE CHRISTO ROAD IN EDINBURG TEXAS WITH THE TEXAS DEPARTMENT OF
PUBLIC SAFETY LAB TEAM ALEX MADRIGAL, THE TEXAS RANGERS, AND TEXAS
DEPARTMENT OF PUBLIC SAFETY NARCOTIC OFFICERS.

TEXAS D. P. S. LAB
ALEX MADRIGAL
RAMIRO VALDEZ

TEXAS RANGERS
ROLANDO CASTANEDA
CHANCE COLLINS

TEXAS D. P. S. NARCOTIC OFFICERS
ANDY RIVAS
JOE SEGUNDO

AS INVESTIGATORS WENT OVER THE SCENE IT WAS DETERMINED BY ALEX MADRIGAL
THAT THE TEXAS DEPARTMENT OF PUBLIC SAFETY TEAM FROM AUSTIN, TEXAS WOULD
BE NEEDED TO PHOTOGRAPH AND OBTAIN LATENT PRINTS AND COLLECT ANY AND ALL
EVIDENCE PERTINENT TO THE CASE. ALEX MADRIGAL STATED THAT THE AUSTIN TEAM
SHOULD ARRIVE THE FOLLOWING MORNING. OFFICER JAMES DANIELS ARRIVED AT 8:00
P.M., AND RELIEVED ME AND STOOD BY THE LOCATION PENDING THE EXECUTION OF
THE SEARCH WARRANT THE FOLLOWING DAY. OFFICER DANIELS WAS INSTRUCTED NOT
TO ALLOW ANYONE TO ENTER THE PREMISES AND NEVER TO LEAVE THE PREMISES

```
================================================================================
               CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
```
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39

```
=================================================================================
             E D I N B U R G   P O L I C E   D E P A R T M E N T
===============================CONTINUATION PAGE=================================
```

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 5 of 18
Code: 1903 CF PC        Crime: CAPITAL MURDE Class: 010101

WITHOUT BEING PROPERLY RELIEVED.

ON THURSDAY, JANUARY 9, 2003, AT ABOUT 10:30 A.M., THE TEXAS D. P. S.
CRIME LAB OUT FROM AUSTIN TEXAS AND OTHER FELLOW OFFICERS ARRIVED AT THE
CRIME SCENE, WHERE THE EVIDENTIARY SEARCH WARRANT WAS EXECUTED BY THE
FOLLOWING INVESTIGATORS AND LAB TECHNICIANS.

```
TEXAS D. P. S. LAS (AUSTIN, TEXAS)
BRYAN STRONG                            512-424-2105
MISSEY MICHELETTI                       512-424-2105

TEXAS D. P. S.  (MCALLEN, TEXAS)
ALEX MADRIGAL                           956-984-5624
RAMIRO VALDEZ                           956-984-5624

EDINBURG POLICE DEPARTMENT
DETECTIVE SANDRA SALINAS                956-388-0511
CORPORAL JOSE LUIS SOTO                 956-388-0511
DAVID VALDEZ                            956-388-0511
JOSE FRANK GARZA                        956-388-0511
DAVID PUENTE (NON-LAW ENFORCEMENT)      956-388-0511
```

THE EVIDENCE COLLECTED WAS TAGGED BY BRYAN STRONG AND MISSEY MICHELETTI
AND THEY KEPT POSSESSION OF SAID EVIDENCE. THE RETURN WAS LATER DROPPED
OFF WITH JUDGE NOE GONZALEZ OF THE 370 DISTRICT COURT.

THE SCENE WAS STILL SECURED AND NO ONE WAS ALLOWED BACK INSIDE.

ON FRIDAY, JANUARY 10, 2003, AT ABOUT 9:15 A.M., EDINBURG POLICE INVESTIGATORS
AND INVESTIGATORS FROM OTHER AGENCIES MET AGAIN AT THE ARMORY FOR
BREIFING.

ON FRIDAY, JANUARY 10, 2003, AT ABOUT 11:45 A.M., EDINBURG POLICE
INVESTIGATORS DANIEL OCHOA, ROBERT ALVAREZ DAVID VALDEZ, DETECTIVE
SERGEANT REYES RAMIREZ, TEXAS D. P. S. (LAB TECH.) ALEX MADRIGAL AND
RAMIRO VALDEZ AND MYSELF. DETECTIVE SERGEANT REYES RAMIREZ WANTED TO
REENACT THE CLAIM MADE BY LUIS VILLA, A MALE WHO CLIAMED HE HAD BEEN
INSIDE THE RESIDENCE AT THE TIME THE SHOOTING STARTED, BUT WAS ABLE TO
JUMP OUT OF THE RESIDENCE PRIOR TO BE CAPTURED. I WAS VIDEO TAPING THE
EXTERIOR OF THE RESIDENCE AS DAVID VALDEZ VIDEO TAPED THE INTERIOR OF THE
RESIDENCE. THE TAPES WERE KEPT BY INVESTIGATOR DAVID VALDEZ AS EVIDENCE.

ON FRIDAY, JANUARY 10, 2002 AT ABOUT 8:15 P.M., SERGEANT REYES RAMIREZ
ASKED THAT I ACCOMPANY SERGEANT JAVIER LOPEZ TO OBTAIN THE ADDRESS OR
LOCATION WHERE A MALE INDIVIDUAL LIVED AT. THE MALE ACCORDING TO DETECTIVE
SERGEANT REYES RAMIREZ WAS IDENTIFIED AS NOE MACIAS. INVESTIGATOR SANDRA
SALINAS AND I WERE DRIVEN TO THE AREA OF THE 3500 BLOCK OF EFRAIN STREET IN
EDINBURG, TEXAS. SERGEANT LOPEZ INFORMED THAT HIS SOURCE HAD INDICATED THAT

```
=================================================================================
                 CONTINUATION PAGE - CRIME REPORT REVIEW
=================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
        Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39
```

```
=================================================================================
          E D I N B U R G   P O L I C E   D E P A R T M E N T
==================================CONTINUATION PAGE=============================
```

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 6 of 18
Code: 1903 CF PC         Crime: CAPITAL MURDE Class: 010101

NOE MACIAS WAS STAYING AT SAID RESIDENCE, WHICH WAS DESCRIBED AS A BEIGE
BLOCK HOME WITH A GREEN FAMILY SWING IN THE FRONT YARD. SERGEANT LOPEZ STATED
THAT HIS SOURCE INDICATED THAT NOE MACIAS WAS STAYING AT THE REAR SHED. WE
PROCEEDED BACK TO THE ARMORY.

ON FRIDAY, JANUARY 10, 2003, AT ABOUT 3:14 P.M., I RECEIVED A CALL FROM
INVESTIGATOR JESSIE BROWN OF THE HIDALGO COUNTY SHERIFF OFFICE WHO
INFORMED ME THAT A DEPUTY IDENTIFIED AS DEPUTY ARRENDONDO WAS OUT TAKING A
REPORT FROM AN INFORMANT WHO REPORTED THAT A LALO SALINAS WAS THE
BOYFRIEND TO THE BIG LADY FROM THE RESIDENCE WHERE THE SIX MALES WERE SHOT
AND THAT HE HAD BEEN DEALING ALOT OF DRUGS. INVESTIGATOR JESSIE BROWN
STATED THAT THE LALO SALINAS LIVES IN THE AREA OF MILE 17 AND TOWER ROAD
IN EDINBURG, TEXAS. INVESTIGATOR JESSIE BROWN STATED THAT THE REPORT WOULD
BE READY ON SATURDAY, JANUARY 11, 2003, AND A COPY COULD BE OBTAINED FROM
THEM. I INFORMED DETECTIVE SERGEANT REYES RAMIREZ ABOUT THE INFROMATION
RECEIVED.

ON SATURDAY, JANUARY 11, 2002, AT ABOUT 10:00 A.M., INVESTIGATORS MET
AGAIN AT THE ARMORY FOR BRIEFING. I LEARNED THEN FROM DETECTIVE SERGEANT
REYES RAMIREZ THAT PHARR POLICE DEPARTMENT HAD ARRESTED A COUPLE OF GUYS
FOR WEAPON VIOLATIONS. DETECTIVE SERGEANT RAMIREZ REQUESTED THAT I PROCEED
TO PHARR POLICE DEPARTMENT AND OBTAIN THE INFORMATION FROM THE INDIVIDUALS
THAT WERE ARRESTED.

INVESTIGATOR FRANK GARZA AND I PROCEEDED TO THE PHARR POLICE DEPARTMENT
AND ARRIVED AT ABOUT 11:10 A.M., WE ARRIVED AT THE PHARR POLICE DEPARTMENT
WHERE WE MET WITH PHARR INVESTIGATOR HECTOR DE JESUS. INVESTIGATOR DE
JESUS STATED THAT THE MALE WHO WAS CHARGED WITH THE WEAPON OFFENSE WAS
IDENTIFIED AS LEO RAMIREZ DATE OF BIRTH AUGUST 25, 1980 OF 220 WEST CANTU
PHARR, TEXAS. INVESTIGATOR DE JESUS ALSO INDICATED THAT THE DRIVER WAS
IDENTIFIED AS MARCELLO GUERRERO HAVING A DATE OF BIRTH OF NOVEMBER 19,
1981. TWO OTHER MALES IN THE VEHICLE WERE IDENTIFIED AS BERNABE POLANCO
HAVING A DATE OF BIRTH OF APRIL 24, 1975 AND JUAN GARCIA HAVING DATE OF
BIRTH OF JANUARY 11, 1980. ACCORDING TO INVESTIGATOR DE JESUS LEO RAMIREZ
WAS ARRESTED FOR POSSESSING THE WEAPON SINCE THE WEAPON WAS UNDER THE SEAT
(FRONT RIGHT) WHERE HE WAS SEATING. MARCELLO GUERRERO WAS ARRESTED FOR
OUTSTANDING UNPAID TICKETS AND THE TWO OTHERS WERE RELEASED AT THE SCENE.
ACCORDING TO INVESTIGATOR DE JESUS THE VEHICLE WAS IMPOUNDED BY TEXAS.
INVESTIGATOR DE JESUS DESCRIBED THE VEHICLE AS A BLACK FORD CROWN
VICTORIA. INVESTIGATOR DE JESUS STATED THAT THE WEAPON AND ALL EVIDENCE
RECOVERED IN SAID CASE WOULD BE RELEASED TO ME. WHILE IN HIS OFFICE
INVESTIGATOR DE JESUS WAS CALLED AND INFORMED THAT THE JUDGE WAS READY TO
ARRAIGN LEO RAMIREZ.

WE PROCEEDED TO THE COURT ROOM WHERE LEO RAMIREZ WAS ARRAIGNED. AFTER THE
ARRAIGNMENT WE WENT BACK TO THE OFFICE WHERE I TOOK POSSESSION OF THE
EVIDENCE COLLECTED IN THEIR CASE. THE WEAPON WAS A 9MM RUGER HAND GUN
MODEL P93DC HAVING SERIAL NUMBER 306-16989, THERE WERE THREE 9MM CLIPS

```
=================================================================================
               CONTINUATION PAGE - CRIME REPORT REVIEW
=================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39
```

```
================================================================================
             E D I N B U R G   P O L I C E   D E P A R T M E N T
===============================CONTINUATION PAGE=================================
```

Reported Date: 01/05/03  Time: 01:10          Case: 03-000479 (007)PAGE: 7 of 18
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

(TWO SILVER AND ONE BLACK ONE), ONE BLACK 7.62 RIFLE MAGAZINE, ONE BLACK
KERSHAW POCKET KNIFE, TEN 7.62 LIVE ROUNDS, THIRTY THREE 9MM LIVE ROUNDS,
AND FORTY TWO .45 CALIBER LIVE ROUNDS IN A BOX. I SIGNED THE PROPERTY
RELEASE FORM PROVIDED BY INVESTIGATOR DE JESUS. I ALSO OBTAINED A COPY OF
THE PHARR POLICE ARREST REPORT. (SEE COPY OF PHARR POLICE REPORT FOR MORE
DETAIL INFORMATION.)

I PROCEEDED TO THE TEXAS WRECKER YARD WHERE I STARTED TO PHOTOGRAPH THE
BLACK CROWN VICTORIA. THE BLACK CROWN VICTORIA WAS BEARING ALABAMA LICENSE
PLATES 11G215D AND I ALSO NOTICED THAT IT WAS BEARING MISSISSIPPI
INSPECTION STICKERS. I ALSO NOTICED THAT THE BACK OF THE CROWN VICTORIA
INDICATED THAT IT WAS A POLICE INTERCEPTOR. I CALLED INVESTIGATOR DE JESUS
AND ASKED HIM IF HE COULD ORDER A HOLD ON THE VEHICLE SINCE IT HAD
STICKERS FROM MISSISSIPPI AND ALABAMA LICENSE PLATES UNTIL IT WAS
DETERMINED WHETHER IT WAS STOLEN OR NOT. INVESTIGATOR DE JESUS SPOKE WITH
THE TEXAS WRECKER DRIVER AND ASKED HIM TO PLACE A HOLD ON THE VEHICLE.
INVESTIGATOR FRANK GARZA AND I PROCEEDED BACK TO THE ARMORY WHERE WE MADE
CONTACT WITH DETECTIVE SERGEANT REYES RAMIREZ. DETECTIVE SERGEANT RAMIREZ
ASKED INVESTIGATOR FRANK GARZA TO HAVE THE VEHICLE RELEASED TO HIM BY
INVESTIGATOR DE JESUS AND HAVE THE WRECKER BRING THE VEHICLE TO THE ARMORY
PENDING FURTHER INVESTIGATION. INVESTIGATOR FRANK GARZA DID PROCEED BACK
TO TEXAS WRECKER AND MADE ARRANGEMENTS WITH INVESTIGATOR DE JESUS AND A
WRECKER TO BRING THE VEHICLE BACK TO THE ARMORY. (SEE FOLLOW UP REPORT BY
INVESTIGATOR FRANK GARZA FOR MORE DETAIL INFORMATION.)

ON SATURDAY, JANUARY 11, 2003, AT ABOUT 5:15 P.M., I TURNED THE EVIDENCE
COLLECTED FROM THE PHARR POLICE DEPARTMENT OVER TO TEXAS RANGER CHANCE
COLLINS. THE EVIDENCE WAS TURNED OVER SINCE HE WAS TAKING THE EVIDENCE
ALONG WITH OTHER EVIDENCE TO THE TEXAS DEPARTMENT OF PUBLIC SAFETY LAB
OFFICE IN AUSTIN, TEXAS FOR ANALYSIS.

ON MONDAY, JANUARY 13, 2003, AT ABOUT 8:30 A.M., BRIEFING STARTED AT THE
ARMORY. INVESTIGATOR EDGAR RUIZ AND I WERE ASKED TO LOOK FOR NOE MACIAS
AND MARIO PENA.

ON MONDAY, JANUARY 13, 2003 AT ABOUT 9:55 A.M., INVESTIGATOR EDGAR RUIZ
AND I WENT TO 3606 EFRAIN IN EDINBURG, TEXAS. WE MET WITH MARIO PENA, A
PERSON THAT DETECTIVE SERGEANT REYES RAMIREZ REQUESTED THAT WE LOOK FOR.
ARRANGEMENTS WERE MADE WITH MARIO PENA (DATE OF BIRTH 01-19-1960, TEXAS
DRIVERS LICENSE NUMBER 09417559), TO COME IN TO THE POLICE DEPARTMENT TO
SPEAK WITH DETECTIVE SERGEANT REYES RAMIREZ. THE RESIDENCE, WHICH WAS
POINTED OUT BY SERGEANT JAVIER LOPEZ WAS LOOKED AT BEFORE, HEADING BACK TO
THE POLICE DEPARTMENT AND WE COULD NOT SEE THE SHED THAT WAS INDICATED BY
HIS SOURCE WHERE NOE MACIAS WAS STAYING. WE HEADED BACK TO THE ARMORY AND
MET WITH MARIO PENA AND ESCORTED HIM TO THE ARMORY WHERE HE MET WITH
DETECTIVE SERGEANT REYES RAMIREZ.

ON MONDAY, JANUARY 13, 2003, AT ABOUT 11:30 A.M., INVESTIGATOR EDGAR RUIZ

```
================================================================================
                 CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
        Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39
```

```
========================================================================================
         E D I N B U R G   P O L I C E   D E P A R T M E N T
=================================CONTINUATION PAGE==============================
```

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 8 of 18
Code: 1903 CF PC         Crime: CAPITAL MURDE Class: 010101

AND I WENT TO 114 EAST SAMANO APARTMENT #8 WHERE CONTACT WAS MADE WITH
LAURA CHAVEZ. LAURA CHAVEZ WAS ASKED TO ALLOW US TO SPEAK WITH NOE MACIAS.
LAURA CHAVEZ STATED THAT NOE MACIAS DID NOT RESIDE AT SAID RESIDENCE AND
THAT HE WAS LIVING AT 610 EAST SAMANO EDINBURG, TEXAS WITH HIS WIFE.

ON MONDAY, JANUARY 13, 2003, AT ABOUT 11:36 A.M., INVESTIGATOR EDGAR RUIZ
AND I WENT TO 610 EAST SAMANO WHERE WE MET WITH NOE MACIAS. NOE MACIAS
STATED THAT HE HAD BEEN EXPECTING US AND THAT HE WAS WILLING TO DISCUSS
ANYTHING WITH INVESTIGATORS. I ASKED NOE MACIAS TO ACCOMPANY US TO THE
POLICE DEPARTMENT TO DISCUSS THE CASE WITH HIM. NOE MACIAS ASKED THAT HE
BE ALLOWED TO BATHE, CHANGE AND GET SOMETHING TO EAT, BECAUSE HE HAD JUST
GOTTEN UP FROM BED. NOE MACIAS STATED THAT HE WAS NOT GOING TO HIDE FROM
THE INVESTIGATORS AND THAT HE WAS WILLING TO DISCUSS THE MATTER WITH THE
INVESTIGATORS. NOE MACIAS ASSURED ME THAT HE WOULD BE IN AT 1:00 P.M.,
THIS SAME DATE. INVESTIGATOR EDGAR RUIZ AND I LEFT AND RELAYED THE
INFORMATION TO DETECTIVE SERGEANT REYES RAMIREZ.

ON MONDAY, JANUARY 13, 2003, AT ABOUT 2:14 P.M., I RECEIVED A CALL FROM
MARCELO GUERRERO THE OWNER OF THE BLACK FORD CROWN VICTORIA, WHICH HAD
BEEN TAKEN FROM THE PHARR POLICE DEPARTMENT. I INFORMED MARCELO GUERRERO
THAT I WOULD HAVE TO CONTACT HIM LATER AFTER I SPOKE WITH DETECTIVE
SERGEANT REYES RAMIREZ. MARCELO GUERRERO STATED THAT THE VEHICLE WAS THE
ONLY VEHICLE HE HAD TO GET AROUND IN AND HE NEEDED IT. I INFORMED HIM THAT
I WOULD CONTACT HIM LATER.

ON MONDAY, JANUARY 13, 2003, AT ABOUT 8:30 P.M., INVESTIGATOR DAVID VALDEZ
AND I LEFT EDINBURG, TEXAS AND HEADED TO AUSTIN TEXAS TO DROP OFF THE EVIDENCE.
THE LIST OF EVIDENCE WAS FAXED TO AGENT BELL OF THE UNITED STATES BORDER
PATROL FOR CLEARANCE AT THE FALFURRIAS CHECK POINT.

THE EVIDENCE WAS DROPPED OFF AT THE TEXAS DEPARTMENT OF PUBLIC SAFETY LAB
OFFICE IN AUSTIN, TEXAS ON TUESDAY, JANUARY 14, 2003.

ON WEDNESDAY, JANUARY 15, 2003, AT ABOUT 7:10 P.M., I MET WITH MARCELO
GUERRERO AT THE POLICE DEPARTMENT AFTER ARRANGEMENTS WERE MADE FOR HIM TO
COME TO RECOVER HIS VEHICLE. I OBTAINED FROM HIM THE RECEIPT WHERE HE PAID
FOR TEXAS WRECKER. (SEE RECEIPT FOR MORE DETAIL INFORMATION.) I RELEASED
THE 1998 FORD CROWN VICTORIA TO MARCELO GUERRERO AFTER HE SIGNED THE
PROPERTY RELEASE FORM. (SEE PROPERTY RELEASE FORM FOR MORE DETAIL
INFORMATION.)

ON THURSDAY, JANUARY 16, 2003, AT ABOUT 8:30 A.M., WE MET AT THE ARMORY
FOR BRIEFING AGAIN. I WAS INFORMED BY DETECTIVE SERGEANT REYES RAMIREZ
THAT SURVEILLANCE HAD BEEN DONE ON A RESIDENCE IN BROWNSVILLE, TEXAS AND
FOR ME TO OBTAIN THE NECESSARY INFORMATION TO OBTAIN A SEARCH WARRANT FOR
THE RESIDENCE LOCATED AT 3755 B CATTADORI IN BROWNSVILLE, CAMERON COUNTY,
TEXAS. INFORMATION FOR THE SEARCH WARRANT WAS OBTAINED AND PRESENTED TO
TEXAS DISTRICT COURT JUDGE NOE GONZALEZ OF THE 370TH DISTRICT COURT AT

```
=================================================================================
                CONTINUATION PAGE - CRIME REPORT REVIEW
=================================================================================
```

Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
          Typed by: SOTOJL        Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39

```
==================================================================================
          E D I N B U R G   P O L I C E   D E P A R T M E N T
================================CONTINUATION PAGE=============================
```

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479 (007)PAGE: 9 of 18
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

ABOUT 9:38 A.M. THIS SAME DATE. JUDGE NOE GONZALEZ SIGNED THE SEARCH
WARRANT, ALLOWING MY FELLOW OFFICERS AND ME TO SEARCH FOR MARCIAL
BOCANEGRA AND ANY PHYSICAL EVIDENCE AT SAID LOCATION.

ON THURSDAY, JANUARY 16, 2003, AT ABOUT 11:00 A.M., INVESTIGATOR DAVID
VALDEZ AND I PROCEEDED TO THE BROWNSVILLE POLICE DEPARTMENT WHERE WE ME
WITH COMMANDER ABRAHAM DELGADO. ARRANGEMENTS WERE MADE WITH HIS SWAT TEAM
TO MEET A LOCATION CLOSE TO THE RESIDENCE WHERE MARCIAL BOCANEGRA WAS.
THE SWAT TEAM THEN PROCEEDED TO ENTER THE RESIDENCE LOCATED AT 3755 B
CATTADORI IN BROWNSVILLE, TEXAS. MARCIAL BOCANEGRA WAS TAKEN INTO CUSTODY
AND INVESTIGATOR DAVID VALDEZ AND I TOOK CHARGE OF THE RESIDENCE. THE
RESIDENCE WAS SECURED PENDING THE ARRIVAL OF THE TEXAS DEPARTMENT OF
PUBLIC SAFETY LAB TEAM TO ARRIVE. TWO OCCUPANTS OTHER THAN MARCIAL
BOCANEGRA WERE IDENTIFIED AS ELIZABETH RAMOS AND MELISSA MICHELLE RAMOS.
MELISSA M. RAMOS IS THE WIFE TO MARCIAL BOCANEGRA. ELIZABETH AND MELISSA
M. RAMOS WERE ASKED IF THEY WOULD ACCOMPANY EDINBURG POLICE INVESTIGATORS
TO THE EDINBURG POLICE DEPARTMENT TO BE INTERVIEWED. MELISSA M. RAMOS AND
ELIZABETH RAMOS STATED THAT THEY WOULD. INVESTIGATOR ARTURO MONTEMAYOR AND
INVESTIGATOR EDGAR RUIZ TRANSPORTED MELISSA M. RAMOS AND ELIZABETH RAMOS
TO THE EDINBURG POLICE DEPARTMENT. INVESTIGATOR DAVID VALDEZ VIDEO TAPED
THE EXTERIOR OF THE RESIDENCE WHILE I PHOTOGRAPHED THE SAME.

ALEX MADRIGAL AND RAMIRO VALDEZ OF THE TEXAS D. P.S. LAB ARRIVED AND
STARTED TO PROCESS THE RESIDENCE. ALEX AND RAMIRO TOOK PHOTOGRAPHS OF THE
RESIDENCE PRIOR TO STARTING TO PROCESS OR COLLECT ANYTHING. I COLLECTED
FROM THE RESIDENCE SEVERAL ITEMS WHICH ALL ARE LISTED ON THE EVIDENCE/
INVENTORY CONTROL SHEET. ALEX MADRIGAL TOOK CUSTODY OF ONE ITEM, WHICH
WERE THE BLACK PAIR OF ROUTE 66 SHOES WHICH WERE RECOVERED FROM THE
LIVINGROOM BEHIND THE SOFA. THE OTHER ITEMS WHICH I TOOK CUSTODY OF WERE
RECOVERED FROM BEDROOMS AND LIVINGROOM. THE ITEMS I TOOK CUSTODY OF WERE
MAINLY PHOTOGRAPHS AND TWO CELL PHONES. THE ITEMS RECOVERED BY ME WERE
TAGGED AS EVIDENCE. THE VEHICLE WHICH A 1996 PINK/PURPLE COLORED CHEVROLET
CAVALIER BEARING TEXAS LICENSE PLATES P14-WFL WAS IMPOUNDED BY BERT ODGEN
WRECKER FOR PROCESSING AT THE ARMORY. I FOLLOWED BERT ODGEN WRECKER TO THE
ARMORY FROM BROWNSVILLE, TEXAS. THE VEHICLE WAS LATER PROCESSED BY ALEX
MADRIGAL AND RAMIRO VALDEZ IN THE ARMORY. THE VEHICLE WAS LATER RELEASED
TO MELISSA RAMOS THE OWNER OF THE VEHICLE AFTER SHE SIGNED THE PROPERTY
RELEASE FORM. THE VEHICLE WAS RELASED BY INVESTIGATOR EDGAR RUIZ.

ON FRIDAY, JANAURY 17, 2003, AT ABOUT 11:45 A.M., INVESTIGATOR DANIEL
OCHOA CAME INTO MY OFFICE WHERE HE INFORMED ME THAT HE HAD BEEN IN THE
FINGER PRINT ROOM STANDING BY WHILE THE KILO UNIT OFFICER LEFT TO OBTAIN
SOMETHING. ACCORDING TO INVESTIGATOR OCHOA DURING THE TIME HE WAS STANDING
BY MARCIAL BOCANEGRA STRUCK UP A CONVERSATION WITH HIM NOT RELATED TO THE
CASE. INVESTIGATOR OCHOA ADDED THAT WHILE IN THE FINGERPRINT ROOM,
INVESTIGATOR RAMIRO RUIZ CAME AND TOLD INVESTIGATOR OCHOA NOT TO BE
QUESTIONING SINCE HE HAD ALREADY ASKED FOR AN ATTORNEY. INVESTIGATOR OCHOA
TOLD INVESTIGATOR RAMIRO RUIZ THAT HE WAS NOT ASKING HIM ANY QUESTIONS

```
==================================================================================
               CONTINUATION PAGE - CRIME REPORT REVIEW
==================================================================================
```
Reporting Officer: SOTO JOSE LUI   Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39

```
================================================================================
          E D I N B U R G   P O L I C E   D E P A R T M E N T
===================================CONTINUATION PAGE============================
```

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 10 of 1
Code: 1903 CF PC         Crime: CAPITAL MURDE Class: 010101

ABOUT THE CASE. INVESTIGATOR OCHOA WENT ON TO SAY THAT MARCIAL BOCANEGRA
HAD MENTIONED TO HIM THAT HE WAS A COOL INVESTIGATOR AND WOULD WANT TO SPEAK
WITH HIM LATER. INVESTIGATOR OCHOA STATED THAT AFTER THE KILO OFFICE CAME
BACK HE CAME TO MY OFFICE TO INFORM ME HIS IMMEDIATE SUPERVISOR ABOUT MARCIAL
BOCANEGRA'S COMMENT. I GAVE INVESTIGATOR OCHOA MY BUSINESS CARD AND ASKED HIM
TO GIVE IT TO MARCIAL BOCANEGRA AND HAVE HIM CONTACT ME TO MAKE ARRANGEMENTS
TO MEET WITH HIM. INVESTIGATOR OCHOA WENT AND GAVE MARCIAL BOCANEGRA MY BUSINESS
CARD.

ON FRIDAY, JANUARY 17, 2003, AT ABOUT 3:35 P.M., I RELEASED A BLACK AND
RED LADIES PURSE, A POCKET PLANNER, 13 PHOTOGRPAHS, TWO LETTERS ADDRESSED
TO ELIZABETH RAMOS, A H.E.B. PHOTOGRAPH PACKAGE (WITH PHOTOGRPAHS) A BLACK
C.D. CASE AND TWO PHOTO ALBUMS. THE PROPERTY WAS RELEASED TO ELIZABETH AND
MELISSA RAMOS AFTER THEY BOTH SIGNED THE PROPERTY RELEASE FORM. (SEE
PROPERTY RELEASE FORM FOR MORE DETAIL INFORMATION.)

ON MONDAY, JANUARY 20, 2003, AT ABOUT 10:30 A.M., INVESTIGATOR SANDRA
SALINAS AND I WERE SENT TO THE EMBASSY HOTEL LOCATED IN MCALLEN, TEXAS BY
DETECTIVE SERGENT REYES RAMIREZ. DETECTIVE SERGEANT RAMIREZ REQUESTED THAT
WE LOOK FOR A MAROON DENALI AND A RED OLDER MODEL CHERVOLET CORVETTE. THE
AREA WAS CHECKED AND NEITHER OF THE ABOVE VEHICLES COULD BE LOCATED. THE
SURROUNDING HOTELS IN THE AREA AND ON SOUTH 10TH STREET IN MCALLEN, TEXAS
WERE CHECKED FOR THE ABOVE VEHICLES. NEITHER OF THE VEHICLES COULD BE
SEEN.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 9:20 A.M., I RECEIVED A CALL FROM
WARDEN BRAVO OF THE LA VILLA DETECTION CENTER WHILE I WAS OUT ON THE ROAD.
I WAS PLACED ON A CONFERENCE CALL WITH WARDEN BRAVO. I LEARNED FROM WARDEN
BRAVO THAT MARCIAL BOCANEGRA HAD BEEN ASKING TO SPEAK WITH ME SINCE SUNDAY,
JANUARY 19, 2003. I INFORMED WARDEN BRAVO THAT I WOULD MAKE ARRANGEMENTS
WITH DETECTIVE SERGEANT REYES RAMIREZ TO GO BY HIS OFFICE AND TO SPEAK
WITH MARCIAL BOCANEGRA.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 10:25 A.M., A BRIEFING WAS HELD AT
THE ARMORY. DETECTIVE SERGEANT REYES RAMIREZ WAS INFORMED OF THE REQUEST
THAT MARCIAL BOCANEGRA HAD.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 12:15 P.M., INVESTIGATOR DANIEL
OCHOA AND I MET WITH WARDEN BRAVO AT THE LA VILLA DETENTION CENTER. WARDEN
BRAVO STATED THAT MARCIAL BOCANEGRA HAD BEEN ASKING FOR US SINCE SATURDAY
THE DAY THAT HE HAD BEEN SENT FROM THE HIDALGO COUNTY JAIL. WARDEN BRAVO
ADDED THAT HE WAS UNDER THE BELIEVE THAT WE WERE OFF THE WEEKEND AND THE
HOLIDAY. WARDEN BRAVO STATED THAT HE WOULD ALLOW US TO USE THE CONFERENCE
ROOM NEXT TO HIS OFFICE. MARCIAL BOCANEGRA WAS BOUGHT INTO THE CONFERENCE
ROOM WHERE WE INTRODUCED OURSELVES TO HIM. MARCIAL BOCANEGRA WAS ALREADY
FAMILIAR WITH INVESTIGATOR DANIEL OCHOA. MARCIAL BOCANEGRA WAS ASKED WHY
HE HAD BEEN ASKING FOR US. MARCIAL BOCANEGRA STATED THAT HE WANTED TO DISCUSS
THE MATTER WITH US, BUT WANTED TO KNOW WHAT HE COULD RECEIVE IN RETURN. I

```
================================================================================
                 CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
        Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39
```

```
================================================================================
               E D I N B U R G   P O L I C E   D E P A R T M E N T
================================CONTINUATION PAGE==============================
```

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479 (007)PAGE: 11 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

ASKED HIM IF HE HAD SPOKEN WITH HIS ATTORNEY. MARCIAL BOCANEGRA STATED THAT
HE HAD NOT. I ASKED HIM IF HE WANTED TO CALL HIS ATTORNEY BEFORE SPEAKING
WITH US ABOUT THE CASE. MARCIAL BOCANEGRA STATED THAT HE DID NOT. I ASKED
HIM IF HE WAS SURE. MARCIAL BOCANEGRA STATED THAT HE DID NOT WANT TO SPEAK
WITH HIS ATTORNEY AT THAT TIME, THAT HE WANTED TO TALK TO US ABOUT THE CASE.
I ASKED MARCIAL BOCANEGRA A COUPLE OF TIMES IF HE WAS SURE THAT HE DID NOT
WANT HIS ATTORNEY WITH HIM. MARCIAL BOCANEGRA STATED THAT HE WAS SURE THAT
HE WAS WILLING TO DISCUSS THE MATTER WITH US. I INFORMED MARCIAL BOCANEGRA
THAT I COULD AND WOULD NOT MAKE ANY PROMISES IN EXCHANGE FOR THE
INFORMATION HE WAS ABOUT TO PROVIDE US WITH. MARCIAL BOCANEGRA STATED THAT
HE WANTED TO KNOW WHY HE COULD NOT HAVE HIS MOTHER VISIT HIM AND WHO HIS
ATTORNEY WAS? I ASKED HIM IF HE HAD AN ATTORNEY APPOINTED BY THE COURT AS
OF YET. MARCIAL BOCANEGRA STATED THAT HE DID NOT. MARCIAL BOCANEGRA STATED
THAT HE KNEW WHO THE SHOT CALLER WAS AND WAS WILLING TO PROVIDE ALL THE
INFORMATION THAT HE KNEW IF HE WAS INFORMED THAT HE WAS GOING TO HAVE
PROTECTION FOR HIS FAMILY. MARCIAL BOCANEGRA STATED THAT HE HAD BEEN
PICKED UP BY A MALE HE KNOWS AS GALLO THAT HE HAD KNOWLEDGE OF THE
MURDERS. MARCIAL BOCANEGRA STATED THAT HE DID HAVE FIRST HAND KNOWLEDGE
AND THAT HE WAS AWARE OF THE HIT THAT WAS ABOUT TO HAPPEN THAT NIGHT.
MARCIAL BOCANEGRA STATED THAT HE WOULD BE WILLING TO PROVIDE THE PLANNING
STAGE OF THE SHOOTING AND WILLING TO GIVE NAMES OF THE HEAD HANCHOS. WE
INFORMED MARCIAL BOCANEGRA THAT WE WOULD CONTACT THE DISTRICT ATTORNEY'S
OFFICE RIGHT AFTER WE LEFT THE CENTER AND THAT WE WOULD COME STRAIGHT BACK
TO DISCUSS THE MATTER WITH HIM.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 2:00 P.M., INVESTIGATOR DANIEL
OCHOA AND I MET WITH ASSISTANT DISTRICT ATTORNEY HOMER VASQUEZ WHO HAD
BEEN INVOLVED WITH THE CASE ALONG WITH JANE ALONZO. WE INFORMED HOMER
VASQUEZ OF THE INFORMATION PROVIDED BY MARCIAL BOCANEGRA. HOMER VASQUEZ
STATED THAT HE WOULD HAVE TO SPEAK WITH RENE GUERRA THE DISTRICT ATTORNEY
BEFORE A DECISION COULD BE REACHED. WE ALL MET WITH RENE GUERRA AND HE
STATED THAT THE DEAL WAS THAT IF MARCIAL BOCANEGRA PROVIDED DETAILS IN THE
CASE THAT HE WOULD DO AWAY WITH THE DEATH PENALTY AND LIFE SENTENCE
AND WOULD START THE SENTENCE AT 50 YEARS. RENE GUERRA STATED THAT THE
INFORMATION WOULD HAVE TO FIRST BE CHECKED OUT AND THAT THE INFORMATION
WOULD HAVE TO HELP IN THE ARREST AND CONVICTION OF THE PERSON(S) INVOLVED
IN THE CRIME. I INFORMED RENE GUERRA THAT I WOULD RELAY THE INFORMATION TO
MARCIAL BOCANEGRA.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 4:30 P.M., WE MET WITH MARCIAL
BOCANEGRA AGAIN AT THE LA VILLA DETENTION CENTER. I WAS ABOUT TO RECORD
THE INTERVIEW WITH MARCIAL BOCANEGRA BUT HE INDICATED THAT HE DID NOT WANT
ANY OF HIS CONVERSATION WITH US RECORDED. I TOOK THE MICRO CASSETTE
RECORDER AND PLACED IT ON TOP OF THE TANLE WITH THE CASSETTE HOLDER OPEN.
I DID THIS SO THAT MARCIAL BOCANEGRA COULD SEE THAT I WAS NOT RECORDING
THE INTERVIEW. WE INFORMED MARCIAL BOCANEGRA OF THE OFFER MADE BY RENE GUERRA.
MARCIAL BOCANEGRA WAS NOT TOO HAPPY WITH THE 50 YEARS AND STATED THAT HE
NEEDED SOMETHING BETTER THAT THE 50 YEARS. I INFORMED HIM THAT THE OFFER IS

```
================================================================================
                CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI   Number: 211028   Date: 01/07/03   Time: 14:00
         Typed by: SOTOJL          Number: 211028   Date: 01/07/03   Time: 13:52
Approving Officer: RAMIREZ REYES    Number: 211022   Date: 03/19/03   Time: 11:39
```

```
================================================================================
        E D I N B U R G   P O L I C E   D E P A R T M E N T
==================================CONTINUATION PAGE=============================
```

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479 (007)PAGE: 12 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

WHERE IT STARTED AND THAT DEPENDING ON THE INFORMATION THE YEARS COULD BE
REDUCED. MARCIAL BOCANEGRA STARTED TO TELL US ABOUT THE DETAILS OF THE DAY
WHEN HE WAS FIRST CONTACTED BY THE MALE HE IDENTIFIED AS GALLO. AS THE
INTERVIEW CONTINUED MARCIAL BOCANEGRA STARTED TO QUESTION THE 50 YEARS. I
AGAIN INFORMED HIM THAT THE 50 YEARS WAS WHERE RENE GUERRA WANTED TO START
TO NEGOTIATE WITH HIM. MARCIAL BOCANEGRA COULD BE SEEN TO BE NERVOUS BUT
WILLING TO DISCUSS THE CASE WITH US. MARCIAL BOCANEGRA WENT ON TO SAY THAT
HE HAD BEEN CONTACTED BY GALLO AT HIS MOTHER'S RESIDENCE IN PROGRESSO, TEXAS
BY TELEPHONE. MARCIAL BOCANEGRA STATED THAT ONCE HE HUNG UP WITH GALLO HE WAS
TO GO TO THE DAIRY QUEEN IN WESLACO TEXAS WHERE HE WAS TO BE PICKED UP BY
HIM. MARCIAL BOCANEGRA STATED THAT ONCE HE WAS PICKED UP HE LEFT WITH HIM
AND HEADED TO A RESIDENCE BELONGING TO JUANON IN SAN JUAN, TEXAS.
ACCORDING TO MARCIAL BOCANEGRA HE WAS WITH JUANON WHILE GALLO LEFT TO
UNKNOWN DESTINATION. MARCIAL BOCANEGRA STATED THAT WHILE AT JUANON'S HOUSE
HE ATE AND WAITED FOR GALLO TO COME BACK. ACCORDING TO MARCIAL
BOCANEGRA HE NOTICED THAT A MALE KNOWN TO HIM AS RICK (UNKNOWN LAST NAME)
ARRIVED FROM REYNOSA MEXICO AND SHORTLY AFTER THAT A LENNY (UNKNOWN LAST
NAME OR TRUE NAME ARRIVED.) MARCIAL BOCANEGRA THAT STATED THAT ANOTHER
MALE KNOWN TO HIM AS PERRO CAME OVER IN HIS BLUE CAR, WHICH HAD NICE
CHROME RIMS. THERE WERE TWO OTHER GUYS THAT SHOWED UP IN A GOLD SUV NEWER
MODEL. THERE WERE A COUPLE OF OTHER GUYS ACCORDING TO MARCIAL BOCANEGRA
THAT SHOWED UP. THE OTHER GUYS WERE BONES, KIDO, AND GALLO. IT WAS ALREADY
A LITTLE AFTER MIDNIGHT. ACCORDING TO MARCIAL BOCANEGRA HE KNEW THE TWO
GUYS IN THE GOLD SUV. MARCIAL BOCANEGRA STATED THAT THE TWO GUYS IN THE
GOLD SUV WERE GIVING GALLO THE INFORMATION ABOUT THE HOUSE THAT THEY WERE
GOING TO HIT.

GALLO THE STARTED TO GIVE THE ORDERS ON HOW THE HOUSE WERE GOING TO BE HIT
AND WHAT THEY WERE GOING FOR. MARCIAL BOCANEGRA STATED THAT THEY WERE
AFTER ONE THOUSAND POUNDS OF MARIJUANA IN ONE OF THE HOUSES. MARCIAL
BOCANEGRA STATED THAT ON THE WAY TO THE HOUSES HE TOLD GALLO THAT HE DID
NOT WANT TO GO WITH THE GROUP, TO DROP HIM OFF AT HIS BROTHERS HOUSE IN
EDINBURG. I ASKED MARCIAL BOCANEGRA WHY HE WAS DROPPED OFF WHEN GALLO HAD
MADE IT KNOWN THAT HE HAD NOT PARTICIPATED IN ANYTHING WITH THE MEMBERSHIP
IN THE PAST AND NEEDED TO BE A PARTICIPANT. MARCIAL BOCANEGRA CONTINUED TO
INSIST THAT HE HAD NOTHING TO DO WITH THE MURDERS AND THAT HE HAD NOT BEEN
AT THE HOUSES. MARCIAL BOCANEGRA STATED THAT HE ONLY HAD THE KNOWLEDGE OF
THE PLANNING STAGES. I INFORMED MARCIAL BOCANEGRA THAT I COULD NOT
BELIEVE THAT HE DID NOT PARTICIPATE IN THE HIT. MARCIAL BOCANEGRA WAS THEN
INFORMED THAT THE INVESTIGATION WAS GOING TO CONTINUE AND THAT IF THE
INFORMATION HE WAS PROVIDING WAS NOT TRUE THAT THE DISTRICT ATTORNEY COULD
REFUSE TO HELP HIM OUT. MARCIAL BOCANEGRA CONTINUES TO INSIST THAT HE HAD
NOTHING TO DO WITH THE MURDERS. I ASKED MARCIAL BOCANEGRA TO SERIOUSLY THINK
ABOUT WHAT HE WAS SAYING BEFORE HE HAD ANYTHING PUT IN WRITING. MARCIAL
BOCANEGRA STATED THAT HE WOULD. MARCIAL BOCANEGRA THEN STATED THAT HE WOULD
TELL US THE TRUTH. MARCIAL BOCANEGRA STATED THAT HE HAD GONE TO THE HOUSES
WITH THE GUYS HE HAD MENTIONED.

```
================================================================================
             CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39
```

```
================================================================================
          E D I N B U R G    P O L I C E    D E P A R T M E N T
===================================CONTINUATION PAGE=============================
```

Reported Date: 01/05/03   Time: 01:10          Case: 03-000479 (007)PAGE: 13 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

MARCIAL BOCANEGRA STATED THAT AFTER THAT THEY MADE THERE WAY TO THE HOUSES
ON MONTE CHRISTO ROAD IN EDINBURG. MARCIAL BOCANEGRA WENT ON TO SAY THAT
AFTER A DELAY THEY WENT ONTO THE PROPERTY AND WENT TO HIT THE HOUSES.
MARCIAL BOCANEGRA STATED THAT HE WENT WITH LENNY TO THE HOUSE ON THE WEST
SIDE OF THE PROPERTY WHERE HE HESITATED TO ENTER, BUT WAS APPROACHED BY
RICK FROM REYNOSA WHO TOLD HIM TO GO INSIDE. MARCIAL BOCANEGRA STATED THAT
HE DID GO INSIDE AND SAW THAT LENNY HAD TIED UP A GUY WITH AN ORANGE
EXTENSION CORD. MARCIAL BOCANEGRA STATED THAT LENNY TOLD HIM TO TIE THE
FEMALE UP. MARCIAL BOCANEGRA STATED THAT HE USED A TELEPHONE WIRE TO TIE
THE LADY UP, BUT HE DID SO IN A MANNER THAT THE WIRE WAS LOOSE. ACCORDING
TO MARCIAL BOCANEGRA LENNY CAME UP TO THE FEMALE AND BECAME UPSET WITH THE
FACT THAT THE LADY WAS NOT TIED UP VERY WELL. MARCIAL BOCANEGRA STATED
THAT HE SAW LENNY KICKING AND STRIKING THE MALE ON THE HEAD WITH A FRYING
PAN AND TOLD LENNY TO CALM DOWN. ACCORDING TO MARCIAL BOCANEGRA, LENNY
BECAME UPSET AND POINTED HIS RIFLE AT HIM AND TOLD HIM THAT HE WOULD DROP
HIM RIGHT THERE. MARCIAL BOCANEGRA WHO HAD INDICATED THAT HE WAS AFRAID OF
WHAT COULD HAPPEN TO HIM IF HE REFUSED TO PARTICIPATE, PULLED BACK AND DID
NOT DO ANYTHING ELSE TO AGGRAVATE LENNY. MARCIAL BOCANEGRA STATED THAT
LENNY THEN THREW A RAG ON THE HEAD OF THE GUY HE HAD BEEN HITTING ON THE
HEAD AND KICKING. ACCORDING TO MARCIAL BOCANEGRA LENNY HEARD GUN SHOTS AND
HE RAN OUTSIDE THE HOUSE AND THEN CAME BACK MINUTES AFTERWARDS. MARCIAL
BOCANEGRA STATED THAT HE HAD WALKED OUT AND LENNY HAD ASKED "QUE ONDA" AND
THEN WALKED INSIDE THE HOUSE WHERE HE HEARD SEVERAL GUN SHOTS. ACCORDING
TO MARCIAL BOCANEGRA LENNY WAS MAD THAT HE DID NOT KILL THE LADY AND THE
FACT THAT HE HAD LOST HIS CAP AS THEY RAN OUT THE BACK WAY. MARCIAL
BOCANEGRA STATED THAT HE GOT INTO THE TRUCK WHICH GALLO WAS DRIVING AS
THEY WERE LEAVING. BONES, PERRO, AND LENNY GOT IN TO THE SAME PICK UP WITH
HIM. BONES ACCORDING TO MARCIAL BOCANEGRA STARTED TO TELL THEM THAT HE HAD
KILLED THE GUY THAT CAME OUT THE HOUSE. LENNY ALSO CLAIMED THAT HE HAD
SHOT A GUY AT THE OTHER HOUSE WHEN HE RAN OUT AFTER HEARING THE SHOTS.
ACCORDING TO MARCIAL BOCANEGRA THEY ALL SPOKE OF THE THINGS THAT THEY HAD
DONE AT THE HOUSES AS THEY HEADED BACK TO JUANON'S HOUSE. MARCIAL
BOCANEGRA WENT ON WITH THE INTERVIEW AND HE STATED THAT HE WOULD PROVIDE A
STATEMENT REGARDING TO HIS KNOWLEDGE AND INVOLVEMENT IN THE CASE. I
INFORMED MARCIAL BOCANEGRA THAT I WOULD HAVE THE STATEMENT TYPED OUT AND
THAT WE WOULD RETURN IN THE MORNING TO HAVE HIM REVIEW IT. I INFORMED
MARCIAL BOCANEGRA THAT WE WOULD BE IN AROUND 9:00 A.M., OR SO, SO HE COULD
READ HIS STATEMENT. MARCIAL BOCANEGRA STATED THAT HE WOULD WAIT FOR US.

ON TUESDAY, JANUARY 21, 2003 AFTER TAKING THE NOTES FOR THE STATEMENT OF
ACCUSED FROM MARCIAL BOCANEGRA AND ARRIVING BACK AT THE OFFICE I BRIEFED
SERGEANT REYES RAMIREZ OF THE INTERVIEW. SERGEANT RAMIREZ TOLD ME TO TYPE
THE STATEMENT OUT RIGHT THEN AND THERE. I INFORMED SERGEANT RAMIREZ THAT
THE PLANS WERE TO TYPE THE STATEMENT OUT AND AROUND 9:00 OR 10:00 A.M.,
THAT WE WERE GOING TO MEET WITH MARCIAL BOCANEGRA BACK AT THE LA VILLA
DETENTION CENTER SO HE COULD GO OVER THE STATEMENT OF ACCUSED. SERGEANT
RAMIREZ STATED THAT HE WOULD RATHER THAT THE STATEMENT BE TYPED OUT RIGHT
THEN AND THERE. I INFORMED HIM AGAIN THAT THE STATEMENT WOULD BE TYPED OUT

```
================================================================================
                 CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES  Number: 211022  Date: 03/19/03  Time: 11:39
```

Case 7:18-cv-00386 Document 24-2 Filed on 11/30/18 in TXSD Page 143 of 155

Reported Date: 01/05/03  Time: 01:10        Case: 03-000479 (007)PAGE: 14 of 1
Code: 1903 CF PC         Crime: CAPITAL MURDE Class: 010101

AND DOWN LOADED TO A DISK AND ANY CORRECTIONS, CHANGES, OR ADDITIONS
WOULD BE MADE AT THE TIME AT THE LA VILLA DETENTION CENTER. I PROCEEDED TO
TYPE THE STATEMENT OF ACCUSED PROVIDED BY MARCIAL BOCANEGRA IN MY OFFICE.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 10:00 P.M., I LEARNED THAT SERGEANT
REYES RAMIREZ REQUESTED THAT MARCIAL BOCANEGRA BE BOUGHT TO THE EDINBURG
POLICE DEPARTMENT. DETECTIVE SERGEANT REYES RAMIREZ ALSO ASKED THAT I MEET
WITH MARCIAL BOCANEGRA AND HAVE HIM READ THE STATEMENT OF ACCUSED. I
INFORMED DETECTIVE SERGEANT REYES RAMIREZ THAT I HAD MADE THE ARRANGEMENTS
TO MEET WITH HIM IN THE MORNING AND NOT AT THAT TIME. DETECTIVE SERGEANT
REYES RAMIREZ STATED THAT HE WANTED THE STATEMENT OF ACCUSED NOW BEFORE
MARCIAL BOCANEGRA CHANGED HIM MIND.

ON TUESDAY, JANUARY 21, 2003, AT ABOUT 12:30 A.M., I MET WITH MARCIAL
BOCANEGRA IN MY OFFICE. I READ HIM HIS MIRANDA WARNING RIGHTS AND I ASKED
THAT HE INITIAL EACH RIGHT IF HE UNDERSTOOD HIS RIGHTS. MARCIAL BOCANEGRA
DID INITIAL EACH RIGHT INDICATING THAT HE UNDERSTOOD HIS RIGHTS. I ALSO
ASKED THAT HE READ THE STATEMENT OF ACCUSED, WHICH HAD BEEN TYPED OUT FOR
HIM. MARCIAL BOCANEGRA DID READ THE STATEMENT OF ACCUSED AND MADE SOME
CHANGES. MARCIAL BOCANEGRA READ THE CHANGED STATEMENT OF ACCUSED AND MADE
SOME MORE CHANGES.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 1:10 A.M., WHILE STILL IN THE
OFFICE MARCIAL BOCANEGRA WAS GIVEN A WHATABURGER BURGER WITH FRIES AND A
DRINK AS WE CONTINUED TO GO OVER THE STATEMENT OF ACCUSE. MARCIAL
BOCANEGRA AFTER A WHILE STATED THAT HE WAS TIRED AND SLEEPY. MARCIAL
BOCANEGRA STATED THAT HE ALSO HAD A HEADACHE. MARCIAL BOCANEGRA STATED THAT
HE WOULD PROVIDE THE STATEMENT BUT WOULD RATHER GET SOME SLEEP. I INFORMED
MARCIAL BOCANEGRA THAT I WOULD MEET WITH HIM LATER AT THE LA VILLA CENTER TO
HAVE HIM GO OVER HIS STATEMENT. MARCIAL BOCANEGRA ASKED THAT I MEET WITH HIM
SOME TIME AROUND LUNCH TIME SO HE COULD GET PLENTY OF SLEEP BETWEEN NOW AND
THEN. DETECTIVE SERGEANT REYES RAMIREZ WAS INFORMED OF THE SITUATION. DETECTIVE
SERGEANT REYES RAMIREZ WAS MAKING ARRANGEMENTS TO HAVE MARCIAL BOCANEGRA KEPT
IN THE EDINBURG CITY JAIL AND OR THE COUNTY JAIL INSTEAD OF HAVING HIM TAKEN
BACK TO LA VILLA DETENTION CENTER. ARRANGEMENTS WERE NOT REACHED AND MARCIAL
BOCANEGRA WAS TRANSPORTED BACK TO LA VILLA DETENTION CENTER.

THE TIME THAT MARCIAL BOCANEGRA REQUESTED THAT WE STOP GOING OVER THE
STATEMENT WAS AT ABOUT 3:35 A.M. AND REQUESTED THAT HE BE ALLOWED TO GET
SOME REST. DETECTIVE SERGEANT REYES RAMIREZ DID SHOW MARCIAL BOCANEGRA
SOME PHOTO LINE UPS IN MY OFFICE. MARCIAL BOCANEGRA IDENTIFIED SOME OF THE
INDIVIDUALS IN THE PHOTO LINE UPS AND DETECTIVE SERGEANT REYES RAMIREZ HAD
HIM SIGN THE PHOTO LINE UPS.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 9:00 A.M., I WAS INFORMED THAT A
JOE GUTIERREZ WAS IN THE FRONT LOBBY AND REQUESTED TO SPEAK WITH SOMEONE
ABOUT THE MURDER CASE. I MET WITH JOE GUTIERREZ AND HE STATED THAT HE WAS
AT THE POLICE DEPARTMENT BECUASE HE HAD BEEN INFORMED THAT THE F.B.I. HAD

```
===================================================================================
                CONTINUATION PAGE - CRIME REPORT REVIEW
===================================================================================
Reporting Officer: SOTO JOSE LUI   Number: 211028   Date: 01/07/03   Time: 14:00
         Typed by: SOTOJL          Number: 211028   Date: 01/07/03   Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022   Date: 03/19/03   Time: 11:39
```

```
=================================================================================
          E D I N B U R G   P O L I C E   D E P A R T M E N T
================================CONTINUATION PAGE=================================
```

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479 (007)PAGE: 15 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

BEEN LOOKING FOR HIM AT HIS RESIDENCE ON SEMINARY ROAD IN EDINBURG. I
ASKED INVESTIGATOR EDGAR RUIZ IF HE HAD KNOWLEDGE OF THE F. B. I. WANTING
TO SPEK WITH JOE GUTIERREZ. INVESTIGATOR EDGAR RUIZ STATED THAT IT WAS HIM
THAT HAD BEEN AT JOE GUTIERREZ RESIDENCE LOOKING FOR HIM. JOE GUTIERREZ
WAS THEN REFERRED TO INVESTIGATOR EDGAR RUIZ.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 12:45 P.M., I MET WITH WARDEN
BRAVO AT THE LA VILLA DETENTION CENTER. I INFORMED HIM THAT I NEEDED TO
VISIT WITH MARCIAL BOCANEGRA. I LEARNED FROM WARDEN BRAVO THAT
MARCIAL BOCANEGRA WAS NOT AT HIS FACILITY, THAT HE WAS AT THE HIDALGO
COUNTY JAIL. I CALLED DETECTIVE SERGEANT REYES RAMIREZ AND HE STATED THAT
HE WOULD CONTACT THE HIDALGO COUNTY SHERIFF OFFICE AND CONFIRMED WHETHER
HE WAS THERE OR NOT AND MAKE ARRANGEMENTS TO MEET WITH MARCIAL BOCANEGRA.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 12:55 P.M., I RECEIVED A CALL
FROM MELISSA RAMOS. MELISSA RAMOS STATED THAT SHE NEEDED TO GET BACK TO
BROWNSVILLE, TEXAS AND THAT SHE NEEDED HER PROPERTY BACK. I INFORMED HER
THAT I HAD NOT RECEIVED THE CLEARANCE FROM DETECTIVE SERGEANT REYES
RAMIREZ TO RELEASE THE PROPERTY. MELISSA RAMOS INDICATED THE URGENCY TO
GET HER AND ELIZABETH RAMOS' CELL PHONE BACK IN ORDER TO STAY IN
COMMUNICATION WITH FRIENDS AND LAW ENFORCEMENT. I INFORMED HER THAT I
WOULD MEET AND DISCUSS THE MATTER WITH DETECTIVE SERGEANT REYES RAMIREZ
AND THAT I WOULD HAVE A RESPONSE FOR HER SOMETIME THAT DAY OR THE
FOLLOWING DAY. MELISSA RAMOS WAS GIVEN MY CELL PHONE NUMBER AND I ASKED
HER TO CALL ME BACK LATER THAT DAY OR THE FOLLOWING DAY.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 1:00 P.M., I SPOKE WITH HIDALGO
COUNTY SHERIFF SERGEANT JERRY LOPEZ ABOUT MEETING WITH MARCIAL BOCANEGRA.
SERGEANT LOPEZ STATED THAT I COULD MEET WITH HIM AT ABOUT 2:00 P.M., AT
THIER OFFICE, AFTER THEY FINSIHED SPEAKING WITH HIM. I INFORMED SERGEANT
LOPEZ THAT I WOULD THEN MAKE MY WAY TO HIS OFFICE.

ON WEDNESDAY, JANUARY 22, 2003, AT ABOUT 2:05 P.M., I WENT AND MET WITH
RANGER PACHECO AT THE HIDALGO COUNTY SHERIFF OFFICE AFTER I ASKED FOR
SERGEANT LOPEZ. I LEARNED FROM RANGER PACHECO THAT MARCIAL BOCANEGRA WOULD
BE TRANSPORTED TO THE EDINBURG POLICE DEPARTMENT RIGHT AFTER THEY
FINISHED SPEAKING WITH HIM.

ON WEDNESDAY, JANUARY 23, 2003, AT ABOUT 3:00 P.M., SECREATRY DAVID PUENTE
AND I MET WITH MARCIAL BOCANEGRA AT THE EDINBURG POLICE DEPARTMENT IN MY
OFFICE. MARCIAL BOCANEGRA WENT OVER HIS STATEMENT OF ACCUSED AND HE MADE
SOME CORRECTIONS TO THE STATEMENT OF ACCUSE. MARCIAL BOCANEGRA AT ABOUT
3:30 P.M. SIGNED THE STATEMENT OF ACCUSED IN FRONT OF CRIMINAL INVESTIGATION
SECRETARY DAVID PUENTE JR. BEFORE SIGNING THE STATEMENT OF ACCUSED MARCIAL
BOCANEGRA STATED THAT HE WOULD HAVE RATHER RECORDED THE STATEMENT THEN HAVING
IT TYPED OUT. I INFORMED MARCIAL BOCANEGRA THAT I HAD THE RECORDING DEVICE
WITH ME THE FIRST TIME AND THAT I WAS WILLING TO RECORD HIM, BUT THAT I
RESPECTED HIS WISH NOT TO AUDIO TAPE HIS VOICE AND CONFESSION. I REMAINDED

```
=================================================================================
                  CONTINUATION PAGE - CRIME REPORT REVIEW
=================================================================================
```
Reporting Officer: SOTO JOSE LUI   Number: 211028  Date: 01/07/03   Time: 14:00
           Typed by: SOTOJL         Number: 211028  Date: 01/07/03   Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03   Time: 11:39

```
================================================================================
          E D I N B U R G   P O L I C E   D E P A R T M E N T
=================================CONTINUATION PAGE============================
```

Reported Date: 01/05/03   Time: 01:10          Case: 03-000479 (007)PAGE: 16 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

HIM THAT THE RECORDING DEVICE WAS LYING ON TOP OF THE TABLE OPEN SO HE COULD
SEE THAT HE WAS NOT BEING RECORDED. MARCIAL BOCANEGRA STATED THAT HE RECALLED
THE RECORDER BEING ON THE TOP OF THE TABLE.

IN THE STATEMENT OF ACCUSED MARCIAL BOCANEGRA IMPLICATES HIMSELF AS A
PERSON THAT HAD KNOWLEDGE OF THE PLAN PRIOR TO GOING TO THE HOUSES IN
EDINBURG, TEXAS. ACCORDING TO MARCIAL BOCANEGRA THE GROUP WAS TO GO RIP OFF
ONE THOUSAND POUNDS OF MARIJUANA FROM THE GUYS WHERE THE GUYS WERE SHOT.
MARCIAL BOCANEGRA WENT IN TO DETAIL ABOUT THE PLANNING BUT AT THE END OF THE
INTERVIEW STATED THAT HE WOULD HAVE RATHER RECORDED THE STATEMENT IN ORDER
TO PROVIDE FURTHER INFORMATION. I ASKED HIM IF THE STATEMENT OF ACCUSED WAS
ACCURATE OR NOT. MARCIAL BOCANEGRA STATED THAT THE STATEMENT OF ACCUSED
PROVIDED WAS ACCURATE, BUT THAT THERE WERE MORE DETAILS, WHICH COULD BE
ADDED. I ASKED HIM IF HE WANTED TO ADD THE INFORMATION TO THE STATEMENT.
MARCIAL BOCANEGRA STATED THAT HE DID NOT, THAT HE WOULD PROVIDE THE INFORMATION
AT HIS TRIAL. (SEE STATEMENT OF ACCUSED PROVIDED BY MARCIAL BOCANEGRA FOR
MORE DETAIL INFORMATION.)

ON WEDNESDAY, JANUARY 22, 2003, AFTER OBTAINING THE STATEMENT OF ACCUSED
FROM MARCIAL BOCANEGRA I MET WITH DETECTIVE SERGEANT REYES RAMIREZ AND
INFORMED HIM OF THE STATEMENT OF ACCUSED RECEIVED FROM MARCIAL BOCANEGRA.
A COPY OF THE STATEMENT OF ACCUSED PROVIDED BY MARCIAL BOCANEGRA WAS GIVEN
TO DETECTIVE SERGEANT REYES RAMIREZ.

ON THURSDAY, JANUARY 23, 2003, AT ABOUT 9:20 A.M., INVESTIGATOR DANIEL
OCHOA AND I MET WITH HOMER VASQUEZ OF THE DISTRICT ATTORNEY'S OFFICE. MR.
VASQUEZ WAS INFORMED OF THE STATEMENT OF ACCUSED PROVIDED BY MARCIAL
BOCANEGRA AND THAT HE HAD BEEN COOPERATING IN THE INVESTIGATION.

ON THURSDAY, JANUARY 23, 2003, AT ABOUT 12:27 P.M., I CALLED WARDEN BRAVO
AT HIS OFFICE. I LEFT A MESSAGE FOR HIM TO CONTACT ME ON MY MOBILE PHONE.

ON THURSDAY, JANUARY 23, 2003, AT ABOUT 2:10 P.M., RANGER PACHECO AND
DETECTIVE SERGEANT REYES RAMIREZ WERE DISCUSSING ISSUES OF THE CASE. I
OVERHEARD RANGER PACHECO MENTIONED THAT MARCIAL BOCANEGRA HAD BEEN ASKING
FOR HIS ATTORNEY. I ASKED RANGER PACHECO WHO THE ATTORNEY WAS. RANGER
PACHECO STATED THAT HE DID NOT KNOW THE ATTORNEY'S NAME. I ASKED HIM IF HE
KNEW THIS INFORMATION WHEN I WENT TO THE HIDALGO COUNTY JAIL TO LOOK FOR
MARCIAL BOCANEGRA. RANGER PACHECO STATED THAT HE DID.

ON THURSDAY, JANUARY 23, 2003, AT ABOUT 2:30 P.M., WARDEN BRAVO CALLED ME
BACK. I INFORMED HIM OF THE CIRCUMSTANCES WHICH LED ME TO CONTACT HIM.
WARDEN BRAVO STATED THAT HE WOULD PROVIDE THE STATEMENT REQUESTED. I DID
OBTAIN HIS INFORMATION TO PREPARE THE STATEMENT.

ON THURSDAY, JANUARY 23, 2003, AT ABOUT 3:30 P.M., I WENT TO THE LA VILLA
DETENTION CENTER WHERE I LEARNED THAT WARDEN BRAVO WAS CURRENTLY OUT OF
THE OFFICE. I WAITED FOR WARDEN BRAVO UNTIL HE CAME BACK TO THE OFFICE TO

```
================================================================================
                CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI   Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL          Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39
```

===================================================================================
                 E D I N B U R G   P O L I C E   D E P A R T M E N T
================================CONTINUATION PAGE=================================

Reported Date: 01/05/03   Time: 01:10         Case: 03-000479 (007)PAGE: 17 of 1
Code: 1903 CF PC        Crime: CAPITAL MURDE Class: 010101

REVIEW HIS STATEMENT.

ON FRIDAY, JANUARY 24, 2003, AT ABOUT 5:30 A.M., EDINBURG POLICE ALONG
WITH OTHER AGENCIES MET AT THE EDINBURG POLICE ARMORY WHERE TEAM MEMBERS
WERE MADE AWARE OF DIFFERENT LOCATIONS WHICH WERE TO BE TARGETS OF SEARCH
WARRANT AND OR ARREST WARRANTS. I RECEIVED WORD FROM DETECTIVE SERGEANT
REYES RAMIREZ THAT I WOULD HEAD ALONG WITH NOE CANALES OF THE HIDALGO
COUNTY SHERIFF OFFICE THE SEARCH WARRANT AND ARREST WARRANT ON A MALE
IDENTIFIED AS HUMBERTO GARZA III ALSO KNOWN AS GALLO. GALLO RESIDES AT
4317 NORTH BENTSEN ROAD IN MCALLEN, TEXAS. THE SEARCH WARRANT WAS EXECUTED
AT ABOUT 6:25 A.M., AND THE SWAT TEAM WITHOUT INCIDENT TOOK HUMBERTO GARZA
III INTO CUSTODY. HUMBERTO GARZA III WAS SERVED WITH THE ARREST WARRANT
ISSUED BY HIDALGO COUNTY JUSTICE OF THE PEACE MARY ALICE PALACIOS OF
PRECINCT 4 PLACE 2 BACK ON JANUARY 23, 2003 FOR CAPITAL MURDER. THE
INVESTIGATOR THAT APPLIED FOR THE ARREST WARRANT WAS DETECTIVE RAMIRO
RUIZ. HUMBERTO GARZA III WAS THEN TRANSPORTED TO THE EDINBURG POLICE
DEPARTMENT. I ASSISTED NOE CANALES OF THE HIDALGO COUNTY SHERIFF OFFICE TO
SEARCH THE RESIDENCE FOR ANY PROPERTY OF VALUE TO ASSIST IN THE CASE. (SEE
COPY OF SEARCH AND ARREST WARRANT SERVED ON THE ABOVE DATE AND TIME FOR
MORE DETAIL INFORMATION.) OFFICER ARACELI PENA TOOK THE INFORMATION OF THE
SUBJECTS WHO WERE PRESENT AT LOCATION AND DOCUMENTED THE VEHICLES ON THE
PREMISES. (SEE REPORT FILED BY EDINBURG POLICE OFFICER ARACELI PENA FOR
MORE DETAIL INFORMATION.)

ON FRIDAY, JANUARY 24, 2003, AT ABOUT 7:15 P.M., INVESTIGATOR SANDRA
SALINAS AND I ACCOMPANIED F. B. I. AGENT DAVID BOKASKI TO THE F. B. I.
OFFICE IN MCALLEN TEXAS. I HAD BEEN APPROVED BY DETECTIVE SERGEANT REYES
RAMIREZ TO HAVE HUMBERTO GARZA III A. K. A. GALLO, TRANSPORTED TO THE F.
B. I. OFFICE TO TAKE A POLYGRAPH EXAMINATION. THE POLYGRAPH EXAMINER WAS
IDENTIFIED AS ROBERT GUTIERREZ.

WHILE AT THE F. B. I. BUILDING HUMBERTO GARZA III WAS ALLOWED A PHONE CALL
AT ABOUT 8:20 P.M., TO HIS RESIDENCE BY F. B. I. AGENT DAVID BOKASKI.

AT ABOUT 8:28 P.M., ON THE SAME DATE I PURCHASED FROM THE CANDY MACHINE A
SNICKERS CANDY BAR FOR HUMBERTO GARZA III WHILE WE WAITED FOR HIS ATTORNEY
TO CONTACT THE OFFICE. THE ATTORNEY WAS IDENTIFIED AS CHARLES BANKER.
HUBERTO GARZA III DID FALL ALSEEP ON THE SOFA WHILE WAITING FOR HIS
ATTORNEY TO COME IN.

ON THE SAME DATE AT ABOUT 8:45 P.M., HUMBERTO GARZA III 'S ATTORNEY
CHARLES BANKER CALLED AND SPOKE WITH DAVID BOKASKI REGARDING THE
POLYGRAPH. CHARLES BANKER CAME IN AND DISCUSSED THE CASE WITH AGENT DAVID
BOKASKI. THE POLYGRAPH EXAM TOOK PLACE. HUMBERTO GARZA III WAS LATER
TRANSPORTED BACK TO THE EDINBURG POLICE DEPARTMENT WHERE HE WAS
INCARCERATED IN THE CITY JAIL.

ON WEDNESDAY, JANUARY 29, 2003, AT ABOUT 2:00 P.M., I MET WITH MELISSA

===================================================================================
                  CONTINUATION PAGE - CRIME REPORT REVIEW
===================================================================================
Reporting Officer: SOTO JOSE LUI   Number: 211028   Date: 01/07/03   Time: 14:00
           Typed by: SOTOJL        Number: 211028   Date: 01/07/03   Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022   Date: 03/19/03   Time: 11:39

================================================================================
              E D I N B U R G     P O L I C E     D E P A R T M E N T
================================CONTINUATION PAGE============================

Reported Date: 01/05/03   Time: 01:10        Case: 03-000479  (007)PAGE: 18 of 1
Code: 1903 CF PC          Crime: CAPITAL MURDE Class: 010101

MICHELLE RAMOS AND I RELEASED THE PROPERTY OBTAINED FROM HER RESIDENCE ON
THE DATE OF THE SEARCH WARRANT. I RELEASED THE PROPERTY AFTER SHE SIGNED
THE PROPERTY RELEASE FORM. (SEE PROPERTY RELEASE FORM FOR MORE DETAIL
INFORMATION.) THE ONLY PROPERTY NOT RELEASED WAS THE PHOTOGRAPHS WHICH AHD
TO BE DEVELOPED. I HAD THE DISPOSABLE CAMERA SENT TO WAL-MART THE ONE-HOUR
PROCESSING CENTER TO BE DEVELOPED.

ON WEDNESDAY, JANUARY 29, 2003, AT ABOUT 4:20 P.M., I RELEASED THE
PHOTOGRAPHS TO MELISSA M. RAMOS AND ADDED THE INFORMATION TO THE SAME
PROPERTY RELEASE FORM.

NOTE: THE COPIED INFORMATION WAS PLACED IN WITH THE EVIDENCE ENVELOPES
WHICH WERE LATER TURNED OVER TO DETECTIVE DAVID VALDEZ FOR SAFE KEEPING.

================================================================================
              CONTINUATION PAGE - CRIME REPORT REVIEW
================================================================================
Reporting Officer: SOTO JOSE LUI  Number: 211028  Date: 01/07/03  Time: 14:00
         Typed by: SOTOJL         Number: 211028  Date: 01/07/03  Time: 13:52
Approving Officer: RAMIREZ REYES   Number: 211022  Date: 03/19/03  Time: 11:39

# EXHIBIT 15

| | | | | Birdown | Race | |
|---|---|---|---|---|---|---|
| | Age | Birth Date | | | | |
| | | Phone | | Date | 10/22/84 | |

INS.

SPONSOR _____ Address _____

OCCUPATION _____ Ref By _____  ackn

COMPLAINT _____

I AUTHORIZE TO PROCESS THIS CLAIM
& REQUEST PAYMENT OF MEDICAL
BENEFITS FOR SERVICES RENDERED

**PAST HISTORY: PREGNANCY** _full - normal_

FEEDING _____

DEVELOPMENT _____

ILLNESSES _none_

**FAMILY HISTORY** F _2_   M _1_   Siblings _3_   Pregnancies _3_

Exposure _____ Allergy _____ no TBC _____ Diabetes _no_ Nervous _no_ Bleeders _____

**PRESENT STATUS** Temp _98_   Height _28_   Weight _19-8_   B/P _____ HC. 44 cm

OCT 22 1984   #1   7 mons.
   cough
   #2 loose stool

WBC- 13.600
Hgb- 12.2

| IMMUNIZATION | 1 | 2 | 3 | B | B | B | | | 1 | 2 | 3 | B | B | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D·P·T | | | | | | | MUMPS | | | | | | | |
| DIPH TETANUS | | | | | | | RUBELLA | | | | | | | |
| TUBERCULIN | | | | | | | POLIO | | | | | | | |
| | | | | | | | MEASLES | | | | | | | |

FOLLOW UP : LATER EXAMS, ETC

CONFIDENTIAL

Form 8080 Colwell Co. Champaign, Illinois

1

Ramirez,

OCT 24 1984

Two

T 98  W. 19.4  Ht 28

#1. EPSDT:                          HC 44cm
2 doing better
Bronchitis — Zyrtec
Emposed
✓ EO Inst —
EPS↑ — line

DEC 04 1984        9mo.

T 97¼  W 19.2  # 28
#1 Cough              HC 46 c
2 Cold 3 days.
3 fever
Bor Asthmea

1 - Alupent p.o.
Robitussin 5.c.   0.08
✓EO Inst.

FEB 2 2 1988

3yr 11mo
T. 102°  W 38  H 40½
#1. fever            HC 51 c
2 ear        4 dy
3 Cough
4 gum boil  c/o pain in (R) leg

Ⓓ① Bronchitis ⑥⑩
② Pharyngitis
Cont. Alupent, Augmentin
P.O., RX① Somophyllin RX TID
Unstructions ①

| FEB 2 3 1988 | 3yrs. 11mos |

T 99.
#1. re-check
2. cont. c̄ fever
3yrs old h. N O?
Bronchitis; was
given Augmentin by
other Dr. on five
days clyo
Was seen yest. due to
cont. fever and
cough. Mom brings him today
believe child cont.
c̄ cough and fever
cap ↓ cm
Has vomited x 3 this
P.M.
P.Ex.
emptem throat
THIS wk
Neck. supple
Chest: c̄ mild congest.
R: rate 92/min
Abd: soft
tender diffusely
good B.S.

X-RAYED TODAY #3390
interstitial infiltrate mainly
in RLL & RML
Consistent c̄ diagnosis as
pneumonia

Ⓐ Pneumonia
Ⓟ Ceclor
Ⓓald
cont. Somoph.
CPT Q 4 hrs
RTC Sat.

Next EPSD/

APR 1 1988    4 yrs    HC 50/7

T- 98.6    W- 40    Ht 40/7    FEB 2 6 1990    5 yrs

#1. EPSDT    Vision    T- 98.6    W-50    H -95
EPSDT    #1. ✓ (L) arm    HC-52

EPSDT    20/30    ① Unjung    ② left arm
✓ done    ① ② Rinse    Washer ③
Unjung

NOV 2 9 1988    4 yo

T- 100.²    W 41    H 43.    Rx
#1. fever    HC 57cm    ① Tylenol    codeine
2 phlegms    P 10
3 cough    ✓ tg q 6h

Pharynch    ② Allegrin
inst med

Allerg    ① grams sig
Vacd.

AUG 1 8 1988    9½/40    ③ Global    tid
99.6    5 yo    Augmentin
T- 99.6    W- 45½    Ht 44¼    250mg / 5cc
#1. fever    ③ ½ tid
Dr. Headache X blue    Reassurance
Pr. red throat ①    prn nkl
① Pharynges    next visit
② tonsillitis (5)    X ray
Pr. Rhinitis

Rx ① Amoxil 250
150    tg q 8 TID
Tylenol P. ..

3

CONFIDENTIAL    RP 1291C 9/87-CC



FEB 2 7 1990

WT 50 lbs

Follow up injury
@ arm
Still edematous.
Limited ROM
Imp Injury to (L) arm
w/ finger washer

Plan - Cont. meds
as noted.

MAR 0 8 1990   5½ yrs.
T - 98.6   wt - 51
1. ✓ up
2. ✓ (L)arm
follow-up injury @
arm ×
Still limited ROM
less edema to @
arm noted.

Imp. Follow-up
injury @ arm.

JAN 1 6 1990

T 103 4/° W 54¾ 48½

LEFT/RIGHT
EAR

RAMIREZ

RAMIREZ

LEFT/RIGHT
EAR

CENTRIFUGAL
HEMATOLOGY SYSTEM
Patient
Date
Capillary Sample

| | | |
|---|---|---|
| PLT | = 47 | x10⁹/L |
| HCT | = 32.1 | % |
| HGB | = 11.1 | g/dL |
| WBC | = 11.5 | x10⁹/L |
| # GRANS | = 8.6 | x10⁹/L |
| # LYMPH | = 2.9 | x10⁹/L |
| % GRANS | = 75 | %WBC |
| % LYMPH | = 25 | %WBC |

Mild Anemia
RTD in 2 days

CONFIDENTIAL

NAME _____

next EPS

JUN 2 2 1992

DATE _____ AGE 8y10
WT 162 HT 51½ HC ___ TEMP 98
BP 90/52 ALLERGIES NKDA
C/O Sore throat 2k: 0
cough
fever

GENERAL
HEENT Slight red ___ abnormal
RESP Clear pharynx
rhinorrhea CV
CNS ronchi bilaterally M&S
GI
OTHER
DX U.R.I / Bronchitis FU
RX
Amoxil - 250

CONFIDENTIAL



CONFIDENTIAL

6

Ramirez                                    84

DATE MAY 2 1 1993    AGE_____          10.7.3
WT 12 HT 32 HC____ TEMP 986
BP_____ ALLERGIES_____          FEB 1 5 1994
C/O Vaccine clue                       DATE_____ AGE 4yrs
                                       WT 96 HT 33 HC____ TEMP 98.6
                                       BP____ ALLERGIES____
GENERAL                                C/O (L) Vep.
HEENT
RESP                                   ROS  PE  MEDS:
                              CV       EENT            GEN: a few
CNS                           MSS      RESP              rhinorrhea
GI                                     CV
OTHER                                  GI
DX                            FU       GU
RX                                     M/S
                                       NEURO
                                       SKIN
JAN 0 5 1994                           DX:
DATE_____ AGE 4yrs                  Want (R) Reylie
WT 10 HT 32 HC____ TEMP 98             RX  URI
BP____ ALLERGIES____
C/O fever (L) vomiting                 Rynatan
   cough                                    II Bid
ROS    MEDS: Tylenol
       GEN:                            Insten care
EENT       mild rhinorrhea
RESP                                   Discussed the
CV
GI                                     removal
GU                                     of wart
M/S                                    (#30)
NEURO
SKIN
DX: Viral Syndrome                     Reassurance
RX: (1) TMST  skincare                      given
   (2) RTC                                       (A)
   (3) Rynatans 1 tsp bid
   (4) (tz) 150 bid
   (H)                         7

CONFIDENTIAL